# ATTACHMENT B

Dockets.Justia.com

Westlaw.

120 Fed.Appx. 440

Page 1

120 Fed.Appx. 440, 2005 Copr.L.Dec. P 28,946

**(Cite as: 120 Fed.Appx. 440)**

**H**
This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.
TELETRONICS INTERNATIONAL,
INCORPORATED, Plaintiff--Appellant,
v.
CNA INSURANCE
COMPANY/TRANSPORTATION INSURANCE
COMPANY, Defendant--Appellee.
**No. 04-1509.**

Argued: Oct. 28, 2004.
Decided: Jan. 20, 2005.

**Background:** Insured who was sued by a competitor for copyright infringement and related claims sued insurer, claiming that the insurer breached its duty to defend under an "advertising injury" provision of an insurance policy. The United States District Court for the District of Maryland, 302 F.Supp.2d 442, Alexander Williams, Jr., J., granted summary judgment for the insurer, and the insured appealed.

**Holding:** The Court of Appeals, Per Curiam, held that activities of the insured constituted "advertising," thus triggering insurer's duty to defend.
Reversed and remanded.

West Headnotes

Insurance ☜2298

217k2298 Most Cited Cases

**Insurance ☜2302**
217k2302 Most Cited Cases
Under Maryland law, activities of an insured sued for copyright infringement and related claims constituted "advertising," thus triggering insurer's duty to defend under an advertising injury provision of the policy; the insured referred potential customers to an installation manual posted on its website after receiving inquiries from them about its products, the insured employed the installation manual to promote the sale of its amplifiers, and by posting the installation manual on the Internet, the insured distributed the document to a large audience of potential customers.
*440 Appeal from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (CA-03-1348-AW).

Frederick Ngosi Samuels, Cahn & Samuels, L.L.P., Washington, D.C., for Appellant.

William H. White, Jr., Bonner, Kiernan, Trebach & Crociata, Washington, D.C., for Appellee.

Maurice U. Cahn, Cahn & Samuels, L.L.P., Washington, D.C., for Appellant.

Rina Niyogi, Bonner, Kiernan, Trebach & Crociata, Washington, D.C., for Appellee.

Before LUTTIG, MOTZ, and DUNCAN, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

120 Fed.Appx. 440                                                                                                      Page 2

120 Fed.Appx. 440, 2005 Copr.L.Dec. P 28,946

**(Cite as: 120 Fed.Appx. 440)**

After being sued by a competitor for copyright infringement and related claims, Teletronics International, Inc. ("Teletronics") brought suit against Transportation Insurance Company ("Transportation"), claiming that Transportation breached its duty to defend Teletronics under an "advertising injury" provision of an insurance policy between the parties. On cross motions *441 for summary judgment, the district court granted summary judgment for Transportation on the grounds that the activities giving rise to the infringement action were not "advertising" activities under the policy. For the reasons that follow, we reverse the order granting summary judgment to Transportation, and remand with instructions for the district court to enter summary judgment in favor of Teletronics.

I.

Teletronics is a Delaware corporation engaged in the manufacture, distribution, and sale of high-technology wireless communications products. Teletronics purchased a comprehensive general liability insurance ("CGL") policy from Transportation effective from August 8, 1998 to August 8, 1999. Teletronics later renewed this policy for the period of August 8, 1999 to August 8, 2000. Relevant to this appeal, the policy contained an "advertising injury" provision, in which Transportation agreed to defend and indemnify Teletronics against third-party claims for damages caused by Teletronics "in the course of advertising [its] goods, products or services." [FN1] J.A. at 85.

> FN1. The Business Liability section of the insurance policy provides in relevant part that:
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.
> J.A. at 85.

Teletronics is a direct competitor of Young Design, Inc. ("Young Design"), a Virginia manufacturer and seller of radio amplifiers for wireless data communications. In January 1998, Teletronics contacted Young Design for the purpose of exploring an original equipment manufacture ("OEM") relationship, sometimes known as a "private labeling arrangement." Under the proposed agreement, Teletronics would purchase Young Design's amplifiers and resell them under its own name, bundled together with other Teletronics products. Over the next twelve months, Teletronics purchased several amplifiers from Young Design for the purpose of evaluating them and deciding whether to enter into the OEM contract. Young Design also provided Teletronics with an electronic, editable copy of its Model AMP2440 User and Installation Manual ("Installation Manual"), and authorized Teletronics to remove all references to Young Design so as to facilitate the private label sales.

Approximately one year later, Young Design discovered that Teletronics was producing wireless amplifiers that were similar to its own products. After examining a Teletronics amplifier, Young Design concluded that Teletronics was selling "knock-off" versions of its amplifier. Teletronics, however, denied the charge, explaining that it had designed its own amplifier in the summer of 1997, and that it had completed its first amplifier prototype in August 1998. In addition, Young Design asserted that Teletronics was distributing a user manual with its amplifiers that was nearly identical to Young Design's copyrighted Installation Manual. Confronted with this accusation, Teletronics admitted that the manual used for its amplifiers included portions copied directly from Young Design's Installation Manual.

On June 14, 2000, Young Design filed a five-count complaint in the United States District Court for the Eastern District of Virginia, asserting claims for breach of contract, fraud, misappropriation of trade secrets, copyright infringement, and trover. The lawsuit culminated in a three-*442 day bench trial conducted in January 2001. In light of the court's pre-trial rulings, the only claims presented at trial were those for misappropriation of trade secrets and copyright infringement. On July 31, 2001, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

120 Fed.Appx. 440                                                                                               Page 3

120 Fed.Appx. 440, 2005 Copr.L.Dec. P 28,946

**(Cite as: 120 Fed.Appx. 440)**

district court issued a memorandum opinion dismissing the trade secrets claim. However, the court ruled in favor of Young Design on the copyright infringement claim, and entered an order permanently enjoining Teletronics from copying Young Design's Installation Manual.

While the Young Design suit was pending, Teletronics demanded that Transportation defend it pursuant to the "advertising injury" clause in the CGL policy. Transportation refused on the grounds that the injury caused by Transportation to Young Design did not occur "in the course of advertising" and thus did not qualify as an "advertising injury" under the policy. Teletronics subsequently requested that Transportation reconsider its disclaimer of coverage. In particular, Teletronics argued that it posted an electronic copy of the infringing manual on its website to provide potential customers with information about its amplifiers, and asserted that this conduct was "advertising" sufficient to trigger the "advertising injury" provision in the insurance policy. After Transportation again disclaimed coverage, Teletronics filed an action for breach of contract against Transportation in a Maryland state court. Transportation thereafter removed the lawsuit to the United States District Court for the District of Maryland based on diversity jurisdiction under 28 U.S.C. § 1332.

The parties filed cross motions for summary judgment, agreeing that the coverage dispute turned solely on whether the infringement of Young Design's Installation Manual occurred in the course of Teletronics' "advertising" activities. On February 2, 2004, the district court concluded that the policy did not afford coverage for the copyright infringement claim, and accordingly granted summary judgment in favor of Transportation. The district court rejected Teletronics' argument that posting the Installation Manual on its website brought the infringement claim within the policy's "advertising injury" provision. Specifically, the court reasoned that:

> The manual was not prominently displayed on the web site, and its mere presence on the website is not sufficient to convert it into "advertising." To

find otherwise would require this Court to term "advertising" anything that is posted on a company's website.

*Teletronics Int'l, Inc. v. CNA Ins. Co./Transportation Ins. Co.,* 302 F.Supp.2d 442, 450 (D.Md.2004).

The district court also found that Teletronics' practice of referring potential customers to the manual on its website for product information was more indicative of one-on-one solicitation than advertising. [FN2] *See Monumental Life Ins. Co. v. U.S. Fidelity and Guaranty Co.,* 94 Md.App. 505, 617 A.2d 1163, 1174 (Md.Ct.Spec.App.1993) (holding that advertising must involve "widespread distribution or announcements to the public," rather than personal solicitation). Subsequently, the district court denied Teletronics' motion for reconsideration, and Teletronics filed a timely appeal.

> FN2. For example, in response to an e-mail inquiry from one potential customer, Teletronics wrote: "Thank you for your interest in our products. The easiest way to get information on our products is via the internet. You can download a complete user manual on all our products." J.A. at 41.

II.

We review the district court's order granting summary judgment de novo. ***443** Smith v. Continental Cas. Co.,* 369 F.3d 412, 417 (4th Cir.2004). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Here, the parties agree that there are no material issues of fact in dispute, that Maryland law governs our interpretation of the insurance policy, and that the dispositive issue in this appeal is whether the injury to Young Design occurred "in the course of advertising" activities.

Under Maryland law, a liability insurer must

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

120 Fed.Appx. 440

120 Fed.Appx. 440, 2005 Copr.L.Dec. P 28,946

(Cite as: 120 Fed.Appx. 440)

Page 4

defend its insured in a tort action [FN3] if the injury claimed is potentially covered by the insurance policy. *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842, 850 (1975). The insurer must defend if there exists even a "potentiality that the claim could be covered by the policy." *Litz v. State Farm Fire & Cas. Co.,* 346 Md. 217, 695 A.2d 566, 570 (1997) (internal quotations omitted). As a result, the duty to defend is broader than the duty to indemnify, since *"any* potentiality of coverage, no matter how slight, gives rise to a duty to defend." *Id.* (emphasis added). We determine the potentiality of coverage under the policy based on the allegations in the underlying complaint, as well as any "extrinsic evidence"--that is, evidence outside the complaint--relied upon by the insured to establish coverage. *Id.* Finally, under Maryland law, any doubt concerning the potentiality of coverage must be resolved in favor of the insured. *Zurich Ins. Co. v. Principal Mut. Ins. Co.,* 134 Md.App. 643, 761 A.2d 344, 348 (Md.2000).

> FN3. "Copyright infringement ... is an intentional tort." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP,* 329 F.3d 923, 931 (7th Cir.2003); *see also Gnossos Music v. Mitken, Inc.,* 653 F.2d 117, 120 (4th Cir.1981) (stating that "copyright infringement is a tortious interference with a property right").

In this case, the CGL policy requires Transportation to defend Teletronics only if the underlying action resulted from an " '[a]dvertising injury' caused by an offense committed in the course of advertising your goods, products or services." J.A. at 85. The policy lists four types of "advertising injuries," including:
  a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
  b. Oral or written publication of material that violates a person's right of privacy;
  c. Misappropriation of advertising ideas or style of doing business; or
  d. Infringement of copyright, title or slogan.
J.A. at 93. The copyright infringement claim is the

sole ground upon which Teletronics bases its claim for coverage.

Although the policy defines advertising "injury," it does not define "advertising." [FN4] ***444** Nor have the Maryland courts construed the term in the context of a liability insurance policy providing coverage for claims arising out of an advertising injury. We are unpersuaded by Transportation's assertion that the Maryland Court of Special Appeals comprehensively defines "advertising" in *Monumental Life.* That case holds that one-to-one solicitation and advertising are "mutually exclusive, the difference being that advertising must be of a public nature." *Monumental Life,* 617 A.2d at 1173 . Thus, while *Monumental Life* holds that personal solicitation *is not* advertising, it does not appear to define what advertising actually *is* under Maryland law.

> FN4. Transportation contended for the first time at oral argument that we need not reach the question of what constitutes "advertising" under Maryland law because the injury to Young Design--that is, the infringement of its copyright--occurred when Teletronics reproduced and distributed *paper copies* of the Installation Manual, not when Teletronics later placed an *electronic copy* of the manual on its website. Stated differently, Transportation argues that, irrespective of whether the activity constituted "advertising" under Maryland law, no infringement, and thus no "injury" to Young Design, occurred when Teletronics posted a copy of the Installation Manual on its website. We find this argument unpersuasive. The owner of a copyright enjoys the exclusive right to make copies of a protected work, and anyone who produces copies, through whatever medium, is subject to an action for copyright infringement under federal law. *Horgan v. Macmillan, Inc.,* 789 F.2d 157, 162 (2d Cir.1986) (reproduction of copyrighted work in different medium "is not a defense to infringement."); *see also Oriental Art Printing, Inc. v. Goldstar*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

120 Fed.Appx. 440                                                                      Page 5

120 Fed.Appx. 440, 2005 Copr.L.Dec. P 28,946

**(Cite as: 120 Fed.Appx. 440)**

*Printing Corp.,* 175 F.Supp.2d 542, 545 (S.D.N.Y.2001) (The Copyright Act "protects against unauthorized copying not only in the work's original medium but also in any other medium."). Thus, Teletronics committed an independent act of copyright infringement by posting an electronic copy of the Installation Manual on its website.

Generally, when state law on an issue is unsettled, a federal court sitting in diversity must attempt "to predict how [the state's highest] court would rule if presented with the issue." *Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.,* 296 F.3d 308, 312 (4th Cir.2002); *see also Liberty Mut. Ins. Co. v. Triangle Indus.,* 957 F.2d 1153, 1156 (4th Cir.1992) (federal diversity court must predict how state court would rule on unsettled question of state law). To this end, we may examine cases from other jurisdictions for guidance in determining what law Maryland would adopt. *Lexington Ins. Co. v. Rugg & Knopp, Inc.,* 165 F.3d 1087, 1092 (7th Cir.1999) (in the absence of state authority on point, federal courts may seek guidance from other jurisdictions).

The vast majority of jurisdictions have defined advertising as "the widespread distribution of promotional material to the public at large." *Erie Ins. Group v. Sear Corp.,* 102 F.3d 889, 894 n. 2 (7th Cir.1996) (collecting cases and identifying majority rule); *Solers, Inc. v. Hartford Cas. Ins. Co.,* 146 F.Supp.2d 785, 793 (E.D.Va.2001) (same); *Select Design, Ltd. v. Union Mut. Fire Ins. Co.,* 165 Vt. 69, 674 A.2d 798, 801-02 (1996) (same); *see also USX Corp. v. Adriatic Ins. Co.,* 99 F.Supp.2d 593, 618 (W.D.Pa.2000) ("The overwhelming majority of reported cases have interpreted the plain and ordinary meaning of 'advertising' to mean the widespread distribution of promotional material to the public for the purpose of generating business."). On the other hand, a relatively small number of courts have held that advertising also encompasses the personal or one-to-one solicitation of potential customers. *See, e.g., Sentex Sys., Inc. v. Hartford Accident & Indem. Co.,* 882 F.Supp. 930, 939 (C.D.Cal.1995) (defining advertising as "any oral, written, or

graphic statement made by the seller in any manner in connection with the solicitation of business."); *see also, Merchants Co. v. American Motorists Ins. Co.,* 794 F.Supp. 611, 619 (S.D.Miss.1992) (holding that advertising encompasses the solicitation of individual customers); *cf.* Elizabeth D. Lauzon, Annotation, *Advertising Injury Insurance,* 98 A.L.R.5th 1, at *2 (2002) (discussing split in authority concerning whether advertising activity "requires widespread distribution of promotional material to the public ... or can include one-on-one or targeted group solicitations").

Here, we find it unnecessary to speculate as to which definition of "advertising" the Maryland courts would prefer, since *445 the activities of the insured in this case would satisfy either the majority or the minority rule. [FN5] With respect to the minority view, Teletronics clearly engaged in conduct that amounts to personal solicitation. As noted earlier, the district court found, and Transportation does not dispute, that after receiving inquiries from potential customers about its amplifier products, Teletronics referred customers to the installation manual posted on its website. Thus, Transportation concedes that Teletronics solicited potential customers in connection with its amplifier products, and that this conduct would satisfy the minority view of "advertising" as encompassing one-on-one solicitation. Appellee's Br. at 26 (stating that the insured's activities amounted to "one-on-one sales communications").

> FN5. Although "conservatism is in order" when relying on the practice of other jurisdictions to predict how the highest court of another state might rule, *Lexington Ins. Co.,* 165 F.3d at 1093, we have some confidence that the Maryland courts would prefer the majority rule. In *Grosman v. Real Estate Comm'n,* 267 Md. 259, 297 A.2d 257 (1972), the Maryland Court of Appeals, in an effort to define "advertising" for the purposes of a Maryland statute prohibiting false advertising in real estate transactions, observed that advertising has been defined as:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

120 Fed.Appx. 440                                                                                    Page 6

120 Fed.Appx. 440, 2005 Copr.L.Dec. P 28,946

**(Cite as: 120 Fed.Appx. 440)**

> Any form of *public announcement* intended to aid directly or indirectly in the sale of a commodity, ... [and] the act or practice of calling *public attention* to one's product, service, need, etc., esp. by paid announcements in newspapers and magazines, over radio or television, on billboards, etc....
>
> *Id.* at 266, 297 A.2d 257 (emphasis added). We believe that this definition is consonant with the prevailing view that advertising must be directed towards the public at large. In addition, *Monumental Life* is a well-reasoned opinion rejecting the minority view that one-to-one solicitation constitutes advertising. *Monumental Life,* 617 A.2d at 1174.

With regard to the majority view, Teletronics similarly engaged in activities that amount to the widespread distribution of promotional material to the public. First, there is no genuine dispute that Teletronics employed the installation manual to promote the sale of its amplifiers. The manual contains information concerning the product's basic specifications, advantages over other types of wireless amplifiers, compatibility with other kinds of technology, as well as installation and warranty information. J.A. at 700-10. Second, by posting the installation manual on the Internet, Teletronics distributed the document to a large audience of potential customers. Consequently, through placing a copy of the infringing manual on its website, Teletronics engaged in "the widespread distribution of promotional material to the public at large." [FN6] *Playboy Enterprises, Inc. v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425, 428-29 (7th Cir.1985).

> FN6. For this reason, we reject Transportation's argument that it was not obligated to defend Teletronics because there was no causal connection between the injury to Young Design and Teletronics' advertising activities. Appellant's Br. at 20-21. Since we have held that the particular manner in which Teletronics used Young Design's

copyrighted Installation Manual constituted an "advertising" activity, there is no valid argument that Teletronics failed to establish the required nexus between the asserted liability and its advertising activities.

We disagree, however, with the district court's view that our conclusion necessarily means that *any* information posted on a website constitutes advertising. While any information about a product or service that is posted on a publicly-accessible webpage is widely distributed, such information--under either the majority or the minority rule--is not advertising unless it is for the purpose of "generating" or "soliciting" business. *USX Corp.,* 99 F.Supp.2d at 618 (majority view); *Sentex Sys.,* 882 F.Supp. at 939 (minority view). Furthermore, the promotional aspect of an activity must be ***446** more than merely incidental. In other words, under both the majority and the minority view, an activity must involve, at a minimum, "actual, affirmative self-promotion of the actor's goods or services" in order to constitute advertising. *Hyman v. Nationwide Mut. Fire Ins. Co.,* 304 F.3d 1179, 1193 (11th Cir.2002) (quoting *Erie Ins. Group,* 102 F.3d at 894). Thus, with these constraints in mind, it is apparent that information does not become "advertising" simply by virtue of its dissemination via the Internet.

### III.

Accordingly, we hold that Teletronics' activities in this case constituted advertising, and that Transportation was therefore obligated to defend Teletronics under the liability insurance policy between the parties. We therefore reverse the order granting summary judgment to Transportation, and remand with instructions for the district court to enter summary judgment in favor of Teletronics.

*REVERSED AND REMANDED*

120 Fed.Appx. 440, 2005 Copr.L.Dec. P 28,946

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.