# ATTACHMENT D

Westlaw.

Not Reported in F.Supp. Page 1

Not Reported in F.Supp., 1986 WL 22246 (W.D.N.C.)

**(Cite as: 1986 WL 22246 (W.D.N.C.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, W.D. North Carolina,
Shelby Division.
MADISON CABLEVISION, INC., a Delaware
corporation, Plaintiff,
v.
The CITY OF MORGANTON, North Carolina,
Mayor Mel Cohen, in his official
capacity, City Manager Douglas O. Bean, in his
official capacity, and Council
Members Robert H. Choate, Mollie M. Darwin,
Alfred W. Hamer, Jr., and Danny
Lingerfelt, in their official capacities, Defendants.
**No. SH-C-86-5.**

July 9, 1986.
Tharrington, Smith & Hargrove, Raleigh, N.C. by Wade H. Hargrove, John R. Edwards, Randall M. Roden, for plaintiff.

Settlemyer & Hodges, Morganton, N.C. by Steve B. Settlemyer, Spiegel & McDiarmid, Washington, D.C. by James N. Horwood, Joseph Van Eat, Donald Weightman, Barbara S. Esbir, Mitchell, Teele, Blackwell, Mitchell & Smith, P.A., Valdese, N.C. by Thomas G. Smith, for defendants.

MEMORANDUM AND ORDER

WOODROW WILSON JONES, District Judge.

*1 Plaintiff brought this action seeking declaratory, injunctive, and monetary relief against Defendants for alleged violation of its rights under federal and state law. The Plaintiff presently owns and operates cable television systems in Morganton, Valdese, and portions of Burke County, North Carolina. The Defendants are the City of Morganton, its mayor and city manager and the elected members of its city council. The matter is before the Court upon Defendants' motions to dismiss and for summary judgment. The Court heard the motions in Asheville, North Carolina on May 16, 1986. After careful consideration of the record, briefs and arguments of counsel the Court now enters its findings and conclusions.

In October 1966 the City of Morganton, North Carolina (Morganton or City), through its city council, adopted an ordinance granting Morganton TV Cable, Inc. a non-exclusive franchise to construct and operate a cable television system in Morganton. The franchise was for a period of twenty years. Morganton TV Cable, Inc. subsequently transferred its interest in the franchise to Suburban Cablevision, Inc., which thereafter transferred its interest to Madison Cablevision, Inc. (Madison), the Plaintiff herein. The assignment and transfer of the franchise to Madison was approved by resolution of the City dated July 29, 1974. Madison has operated a cable television service in Morganton at all times since December 1974. By the terms of the franchise it is due to expire, if not renewed, on or about October 25, 1986.

The franchise provides no right to renewal and contains no provisions regarding procedures for renewal. It does grant the City an option to purchase the property of the franchisee at the expiration of the franchise or any renewal thereof. It further provides that upon termination of the franchise the franchisee shall remove its posts, poles and television transmission and distribution system from City property and rights of way.

In December 1983 Madison submitted a proposal to the City for renewal of its franchise. That proposal was denied. At about the same time the City began to gather information concerning the future of cable television in Morganton. Rice Associates, an independent consulting firm from Washington, D.C., and Spiegel & McDiarmid, a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-00210-H   Document 12-5   Filed 08/10/2007   Page 3 of 8

Not Reported in F.Supp.  
Not Reported in F.Supp., 1986 WL 22246 (W.D.N.C.)  
**(Cite as: 1986 WL 22246 (W.D.N.C.))**

Page 2

Washington, D.C. law firm, were hired by the City to assist in its study of cable television for Morganton. Rice Associates made three studies which concluded that the system then existing in the City was inadequate; that the City needed a modern cable communications system; and that a City-owned and operated cable system was feasible.

On September 24, 1984, after reviewing the Rice studies, Morganton issued a Request for Information (RFI) to the general public. Copies of the RFI were provided to Madison, Burke Cable Co., Ltd. and Catawba Valley Communications, Inc. Those were the only private cable companies to have expressed any interest in providing cable television service for Morganton at that time. The RFI stated that a public hearing would be held on November 14, 1984 for the purposes of:

*2 (a) determining whether the franchise then held by Madison should be renewed;

(b) determining whether other private cable companies were interested and capable of providing cable service in Morganton;

(c) determining whether Morganton should establish a municipal cable system;

(d) determining whether there was any interest in an overbuild of the cable system then existing in the City; and,

(e) determining whether more than one cable system in the City was practical.

Madison, Burke Cable Co., Ltd. and Catawba Valley Communications, Inc. all responded to the RFI on October 26, 1984. The public hearing was held on November 14, 1984 as planned.

At the hearing representatives of each of the three cable television companies, as well as members of the general public, were given the opportunity to make comments. City employees, the president of Rice Associates, and the manager of a municipally owned cable system in Shrewsbury, Massachusetts also spoke at the hearing.

After considering the reports of the various studies performed by Rice Associates and Spiegel and McDiarmid and the comments made during the public hearing, the city council decided not to renew Madison's franchise, not to award a franchise to either Burke Cable Co., Ltd. or Catawba Valley Communications, Inc. and to proceed with the construction of a municipally owned and operated cable television system. The city council did not foreclose the possibility that at some future date it might reconsider whether more than one cable system for the City was in the public interest. By ordinance dated September 9, 1985 Madison was given 90 days to submit a plan to the City for orderly removal of its equipment from City poles at the end of the franchise term.

Madison brought this action seeking to prevent the City from requiring it to cease its cable operations in Morganton. Its complaint is comprised of 12 claims for relief under both federal and state law. The first claim for relief is for a declaratory judgment that its request for franchise renewal is governed by Section 626 of the Cable Communications Policy Act of 1984, (Cable Act), 47 U.S.C.A. § 546. Its second claim for relief is for judicial review of the City's decision not to renew its franchise pursuant to Sections 626 and 635 of the Cable Act (47 U.S.C.A. §§ 546 and 555). In its third claim for relief Madison alleges violation of rights guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the North Carolina Constitution. In its fourth claim for relief Madison alleges violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Its fifth claim for relief alleges confiscation of property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution. The sixth and seventh claims for relief allege respectively attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2, and violation of North Carolina monopoly and antitrust laws, N.C. Const. Art. 1, §§ 32 and 34 and N.C.Gen.Stat., Chap. 75. The eighth claim for relief alleges deprivation of Madison's constitutional rights in violation of 42 U.S.C.A. §

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 3
Not Reported in F.Supp., 1986 WL 22246 (W.D.N.C.)
**(Cite as: 1986 WL 22246 (W.D.N.C.))**

1983. In its ninth and tenth claims for relief Madison alleges common law claims of interference with contractual relations and breach of contract. The eleventh claim for relief alleges violation of the public purpose requirement of the North Carolina Constitution, Article V, Section 2(1). It its twelfth claim for relief Madison alleges that the City's option to purchase the franchisee's cable system at the expiration of the franchise is an unconstitutional, and therefore unenforceable, provision of the franchise agreement.

*3 The Defendants contend that there exist no genuine issues of material fact, that the actions taken by the City have been reasonable and lawful, and that they are entitled to judgment as a matter of law dismissing the Plaintiff's complaint. Plaintiff contends that there are genuine issues of material fact which must be tried by a jury.

The Court first considers the applicability of the franchise renewal provisions of the Cable Act in this case. The Cable Act, Pub.L. No. 98- 549, 98 Stat. 2779 (1984), was enacted for several purposes, including establishment of a national policy concerning cable communications, promotion of competition in cable communications and protection of cable operators against unfair denials of franchise renewal. 47 U.S.C.A. § 521. The Act became effective December 29, 1984. Pub.L. No. 98-549 § 9(a), 98 Stat. 2779 at 2806 (1984).

Madison contends that it is entitled to the franchise renewal protections afforded by the Cable Act, 47 U.S.C.A. § 546. These protections include, *inter alia,* the right to a public hearing, the right to introduce evidence and question witnesses at such hearing and the right to franchise renewal absent one or more specified adverse findings which must be supported by a preponderance of the evidence. The franchise renewal provisions of 47 U.S.C.A. § 546 are optional, except that upon request of the franchisee the renewal provisions are mandatory. The time for beginning franchise renewal proceedings is the 36th to 30th month before franchise expiration. 47 U.S.C.A. § 546(a). By implication at least, where a cable operator fails to request renewal proceedings in accordance with the Cable Act prior to the 30th month before franchise expiration it waives its right to such proceedings.

Madison's franchise expires in October 1986, some 22 months after the December 1984 effective date of the Cable Act. As of December 1984 there was insufficient time to conduct franchise renewal proceedings pursuant to the time-table of 47 U.S.C.A. § 546. Congress provided for no transitional renewal provisions for those franchises which were already within 30 months of expiration as of the effective date of the Act. Failure to provide for such situations was not simply an oversight. The legislative history of the Cable Act shows that the House Committee was aware that the Act contained no transitional renewal provision. H.Rep. No. 934, 98th Cong., 2d Sess. at 72 (1984). The legislative history further shows that the renewal provisions were not meant to apply retroactively where a franchise due for renewal less than 30 months after passage of the Act was already subject to renewal proceedings prior to enactment. *Id.*

Because there were less than 30 months remaining on Madison's franchise as of the effective date of the Cable Act, and because the City had begun renewal proceedings prior to the date of its enactment, the Court concludes that the City is not required to conduct renewal proceedings in accordance with the Cable Act and that Madison is not entitled to the protection afforded existing franchisees under those renewal provisions. Madison's Cable Act claims must therefore be dismissed.

*4 Having determined that the renewal provisions of the Cable Act are not applicable in this case the Court further concludes that it should abstain from deciding Madison's federal constitutional claims pending submission of its non-federal claims to the courts of the State of North Carolina.

Abstention is the abdication or postponement of federal jurisdiction to accommodate state court adjudication. *Cox v. Planning District I Community Mental Health and Mental Retardation Services Board,* 669 F.2d 940, 942 (4th Cir.1982).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4

Not Reported in F.Supp., 1986 WL 22246 (W.D.N.C.)

**(Cite as: 1986 WL 22246 (W.D.N.C.))**

The doctrine of abstention is founded upon the recognition that in our federal system of government the federal judiciary should accord "scrupulous regard for the rightful independence of the state governments" by avoiding needless federal conflict with state policy. *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Although considered an exception and not the rule, *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), abstention has been upheld, and at times mandated, in at least four categories of cases. *See, Cox v. Planning District I, supra. See, also,* 17 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 4241 (1978). In *Railroad Commission v. Pullman Co., supra,* the Supreme Court held that abstention is required in cases where a federal constitutional decision might be avoided or presented in a different posture by a ruling on a dispositive matter of unsettled state law. Abstention is also proper in cases where there is a likelihood that a comprehensive state administrative process will be disrupted by federal adjudication, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), or where difficult questions of state law regarding important matters of public policy have been presented. *Colorado River Water Conservation District v. United States, supra,* 424 U.S. at 814, 96 S.Ct. at 1244, citing, *Louisiana Power and Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Abstention is generally required where a party seeks an injunction against ongoing state proceedings. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.* 54 U.S.L.W. 4860 (U.S. June 27, 1986). Finally, a federal court may abstain where there is also pending a state court litigation of the same extraordinarily important issues. *Colorado River Water Conservation District v. United States, supra.*

In its eleventh claim for relief Madison raises the difficult and unsettled issue of whether a municipality may, consistent with the Constitution and laws of the State of North Carolina, own and operate a cable television system when there are private operators willing to undertake the enterprise. Morganton contends that it is given express statutory authority to own and operate a cable television system by N.C.Gen.Stat. §§ 160A-311 and 312. A simple reading of those statutes seems to support Morganton's contention. However, Article V, Section 2(1) of the North Carolina Constitution provides that "[t]he power of taxation shall be exercised ... for public purposes only ..." This limitation on the power to tax has been found to limit the power to spend from the public treasury as well. *Mitchell v. North Carolina Industrial Development Financing Authority,* 273 N.C. 137, 143, 159 S.E.2d 745 (1968).

*5 In *Stanley v. Department of Conservation and Development,* 284 N.C. 15, 32-33, 199 S.E.2d 641 (1973), Justice Sharp writing for a unanimous court, stated the following rule:

A municipal corporation, ... even with legislative sanction, cannot engage in a private enterprise or assume any function which is not in a legal sense public in nature. (citations omitted)

\* \* \*

An activity cannot be for a public purpose unless it is properly the "business of government," and it is not a function of government either to engage in private business itself or to aid particular business ventures. *See* Note, 49 N.C.L.Rev. 830, 833 (1971). It is only when private enterprise has demonstrated its inability or unwillingness to meet a public necessity that government is permitted to invade the private sector.

In *Keeter v. Town of Lake Lure,* 264 N.C. 252, 264, 141 S.E.2d 634 (1965), the Court concluded that there could be no precise judicial definition of a public, as distinguished from a private purpose. Instead each case must be determined by its own peculiar circumstances as of the time it arises. The concept of public purpose

expands with the population, economy, scientific knowledge, and changing conditions. As people are brought closer together in congested areas, the public welfare requires governmental operation of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-00210-H   Document 12-5   Filed 08/10/2007   Page 6 of 8

Not Reported in F.Supp.                                                                                                    Page 5
Not Reported in F.Supp., 1986 WL 22246 (W.D.N.C.)
**(Cite as: 1986 WL 22246 (W.D.N.C.))**

facilities which were once considered exclusively private enterprises, (citation omitted) and necessitates the expenditure of tax funds for purposes which, in an earlier day, were not classified as public.

*Mitchell v. North Carolina Industrial Development Financing Authority, supra,* 273 N.C. at 144. Thus the issue of whether a proposed government expenditure is for a public or a private purpose is by its nature a matter of unsettled state law. The issue of whether Morganton may own and operate a cable television service is even more unsettled because the Supreme Court of North Carolina has not yet considered whether cable television is properly the "business of government."

In addition to its claim that state law prohibits Morganton from owning and operating a cable television system, Madison claims that Morganton's denial of its request for a franchise to operate a cable television system violates its rights under the First and Fourteenth Amendments to the Constitution of the United States. In deciding the federal constitutional issue the Court must necessarily consider the meaning and validity of N.C.Gen.Stat. §§ 160A-311 and 312. The Supreme Court of North Carolina, if presented with the issue, might conceivably hold that insofar as N.C.Gen.Stat. §§ 160A-311 and 312 permit cities to own and operate cable television systems, the statutes are contrary to the North Carolina Constitution. It might also hold, as Plaintiff contends, that those statutes permit a city to provide cable television service to its residents only if no private operator is willing to provide such service. Of course this Court could decide the issue based upon its prediction of how the North Carolina Supreme Court would rule. But such a decision would be a tentative answer which might subsequently be displaced by an authoritative state adjudication. *Railroad Commission v. Pullman Co., supra,* at 500, 61 S.Ct. at 645.

*6 The Court recognizes that a ruling by the North Carolina Supreme Court on the state-law issues will not necessarily be dispositive of the entire case. Morganton argues that even if it had decided against municipal ownership of a cable television system, it would not have renewed Madison's franchise. It says that it would have awarded a franchise to one of the other two applicants instead. According to the City, both Burke Cable Co., Ltd. and Catawba Valley Communications, Inc. proposed a better system than did Madison. Therefore, even if the North Carolina Supreme Court should rule that Morganton may not provide cable television service for its residents, this Court may still have to consider whether Morganton may constitutionally deny Madison the franchise it seeks. However the posture of this action will be considerably different if the North Carolina Supreme Court holds in Madison's favor. Pullman-type abstention is therefore appropriate in this case.

Additionally, it appears that the Burford-type abstention recognized in *Louisiana Power & Light Co. v. City of Thibodaux, supra,* is proper in this case. There the City of Thibodaux sought to expropriate certain land, buildings, and equipment owned by the Louisiana Power & Light Company. A Louisiana statute seemed to grant the authority for the city to take the power company's property. However, a decision by the Attorney General of Louisiana in a similar case concluded that the city did not have the power claimed by the City of Thibodaux. The Louisiana Supreme Court had never interpreted the statute. The Supreme Court upheld the District Court's order of abstention on grounds that the eminent domain proceeding there in issue was "a matter close to the political interests of a State" and that the District Court had therefore appropriately exercised its discretion in staying proceedings pending authoritative interpretation of the state statute by the Supreme Court of Louisiana. *Id.* at 29-30, 79 S.Ct. at 1073-74. This holding has subsequently been determined to permit abstention where "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation District v. United States, supra,* at 814, 96 S.Ct. at 1244.

Madison argues that the proposed municipal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ownership of a cable television system violates not only the public purpose requirement of the North Carolina Constitution, but also violates the State's Unfair and Deceptive Trade Practices Act, N.C.Gen.Stat., Chap. 75, and the North Carolina Constitution's prohibitions against the granting of exclusive emoluments and privileges and against perpetuities and monopolies. N.C. Const. Art. I, §§ 32 and 34. The answers to all these questions are bound to have an impact in this State beyond the parties to this action. Any city or other local governmental unit which might consider the feasibility of owning its own cable television system would have to consider whether its proposed action would be in violation of the Constitution and laws of North Carolina. If at some time in the future the North Carolina Supreme Court decided the issues differently from the way this Court might predict it would the rights of all future litigants would be different from the rights of these parties. *See, Louisiana Power & Light Co. v. City of Thibodaux, supra* at 30, 79 S.Ct. at 1073. Because of the potentially far-reaching impact of the answers to the state-law issues raised in this case and because these questions bear on important policy questions of sovereign prerogative, the Court concludes that Burford-type abstention is also appropriate in this case.

*7 Whether the Court abstains under the *Pullman* doctrine or the *Burford* doctrine is of no great significance substantively. However, the procedural consequences vary significantly depending upon the basis for abstention. If abstention is based upon *Pullman* the federal district courts retain jurisdiction of the case and merely stay proceedings pending state court adjudication. *Cox v. Planning District I, supra.* But, if abstention is based upon *Burford* and its progeny the district court ordinarily dismisses the action outright. *Id.* Professors Wright, Miller and Cooper also recommend dismissal when abstention is justified under both *Pullman* and *Burford.* 17 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 4245 (1978).

However, as in *Cox v. Planning District I, supra,* there is present in this case primarily a question of unsettled state law. *See, also Ratcliff v. County of Buncombe,* 759 F.2d 1183 (4th Cir.1985). The case does not involve an elaborate and comprehensive scheme of state regulation and review. Moreover, even if the North Carolina Supreme Court should rule completely in Madison's favor, that would simply put Morganton out of the cable television business. The City might then choose to award a franchise to one or more of Madison's competitors, but not to Madison, leaving Madison's First Amendment and other federal claims viable. Under all the circumstances the Court concludes that this action should be retained on the docket until the conclusion of state proceedings.

There may of course be some delay incident to the procedure proposed by the Court. That delay need not be inordinate however. The facts necessary for the determination of Plaintiff's state-law claims are essentially undisputed. The Court fully anticipates that a trial will be unnecessary in the state proceedings. The inconvenience to the parties of a short delay in the final resolution of this matter is outweighed by public benefit to be gained by an authoritative rather than a tentative resolution of the state-law issues arising in this action.

Based upon the foregoing findings and conclusions:

IT IS, THEREFORE, ORDERED that Defendants' motion to dismiss Claims 1 and 2 of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure be and the same is hereby granted, and Plaintiff's First and Second Claims for Relief are hereby dismissed;

IT IS FURTHER ORDERED that Defendants' motion to dismiss Claims 3 through 12, inclusive, of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and their motion for summary judgment as to such claims pursuant to Rule 56 of the Federal Rules of Civil Procedure be and the same are hereby denied;

IT IS FURTHER ORDERED that future proceedings in this matter be stayed pending resolution of the state court proceedings

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7

Not Reported in F.Supp., 1986 WL 22246 (W.D.N.C.)

**(Cite as: 1986 WL 22246 (W.D.N.C.))**

contemplated by this Memorandum and Order. The Plaintiff should file its complaint in state court forthwith.

**\*8** The Clerk is directed to retain this action on the Court's docket in an inactive status.

Not Reported in F.Supp., 1986 WL 22246 (W.D.N.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.