## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
### Case No. 5:07-cv-00210-H

| | |
|---|---|
| BOARD OF LAW EXAMINERS, also known as North Carolina Board of Law Examiners and as The Board of Law Examiners of the State of North Carolina,<br><br>     Plaintiff<br><br>vs.<br><br>WEST PUBLISHING CORPORATION and THE THOMSON CORPORATION,<br><br>     Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br>**(Fed. R. Civ. P. 12(b)(6))** |

Defendants hereby submit this memorandum in support of their Motion to Dismiss.

## NATURE OF THE CASE

The Board of Law Examiners ("Board"), an administrative agency of the State of North Carolina, administers the State's bar exam. (Cmplt. ¶9) It includes essay questions prepared by the Board. (*Id.* ¶¶9-11) Essay questions from past exams are posted on the Board's website and made available to help applicants prepare for exams. (*Id.* ¶13)

In this lawsuit, the Board claims it has enforceable copyrights in many (thought not all) essay questions. (*Id.* ¶¶14-15) Defendants operate a business which prepares applicants for the North Carolina bar exam through the creation and dissemination of course materials and lectures. (*Id.* ¶¶5-6, 19-22) The Board alleges that Defendants' bar-review course materials infringed the purported copyrights in certain essay questions. The Board seeks damages and broad injunctive relief. As shown below, the Board has no enforceable copyrights.

Dockets.Justia.com

## STATEMENT OF FACTS

The Board's complaint pleads two counts. Count One is a federal copyright infringement claim based on Defendants' alleged "copying and distribution" of essay questions in their bar-review materials. (*Id.* ¶1) The Board alleges that these bar-review materials are "Infringing Works" in that portions of them allegedly were "copied and/or derived" from essay questions created by the Board. (*Id.* ¶¶19-22) The alleged Infringing Works include derivative works such as outlines and lectures. (*Id.*)

In Count Two, the Board brings a state law claim for violation of North Carolina's statute regulating unfair or deceptive acts in commerce, N.C.G.S. § 75-1.1. (*Id.* p.7) This count alleges that the Board is the owner of copyrights in essay questions and that Defendants "bought, received, sold, or gave, and/or offered to buy, give, or sell, copies of Essay Examination questions, in violation of N.C.G.S. § 14-401.1," a criminal statute. (*Id.* ¶28) This count also alleges, on information and belief, that Defendants' copyrighted materials (books, outlines, teaching materials, and lectures) "incorporate Infringing Works" (*Id.* ¶29). With respect to these materials, Count Two alleges that Defendants have "falsely designated the origin" of them in that they "falsely passed off" these materials "as [their] own." (*Id.* ¶30)

The Board seeks damages and a permanent injunction enjoining Defendants from, *inter alia*, copying, distributing, and performing works that are based on essay questions, and from advertising that their "bar preparation materials are based on or contain genuine North Carolina Bar Examination essay questions or close representations thereof[.]" (*Id.* p.8)

The Board is not represented by the State's Attorney General. The Board is represented by two members. *See* http://www.ncbar.com/contacts/c_agencies.asp (listing Board members).

**ARGUMENT**

**I.    THE COPYRIGHT CLAIM FAILS, BECAUSE THE STATE HAS NOT AUTHORIZED THE BOARD TO COPYRIGHT EXAM QUESTIONS**

Congress denied copyright protection to works of the United States government, 17 U.S.C. § 105, but did not similarly restrict state governments. Rather, Congress left it to the states to determine the extent to which they would permit copyrights to be asserted with respect to the works they create. "Works of state governments are therefore left available for copyright protection by the state or the individual author, *depending on state law and policy* ....'" *Bldg. Officials & Code Adm'rs v. Code Tech, Inc.*, 628 F.2d 730, 735-36 (1st Cir. 1980) (emphasis added) (quoting Latman, *The Copyright Law* 43 (5th ed. 1979)).

Accordingly, North Carolina law determines whether an agency of the State, such as the Board, is authorized to assert a copyright in agency-created materials. As a federal court sitting in diversity, therefore, this Court must attempt to predict how the North Carolina Supreme Court would rule if presented with this issue of state law, using North Carolina's rules of statutory construction. *Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.,* 296 F.3d 308, 312 (4th Cir. 2002); *Liberty Mut. Ins. Co. v. Triangle Indus.,* 957 F.2d 1153, 1156 (4th Cir.), *cert. denied,* 506 U.S. 824 (1992). As explained below, the State has not authorized the Board to assert copyrights in works it creates.

**A.    The General Assembly Has Not Authorized The Board To Assert Copyrights**

The Board is an administrative agency of the State. *In re Willis*, 288 N.C. 1, 16, 215 S.E.2d 771, 780 (1975); *Keenan v. Bd. of Law Exam'rs*, 317 F. Supp. 1350, 1355 n.5 (E.D.N.C. 1970). "Generally, an administrative agency may exercise its authority only as specifically delegated by the legislature." *County of Wake v. Dep't of Env't & Natural Res.*, 155 N.C. App. 225, 250, 573 S.E.2d 572, 589 (2002). In North Carolina, "[a]n administrative agency is a

creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislative grant of authority." *Boston v. N.C. Private Protective Servs. Bd.*, 96 N.C. App. 204, 207, 385 S.E.2d 148, 150-51 (1989) (internal quotation marks omitted). "An issue as to the existence of power or authority in a particular administrative agency is one primarily of statutory construction." *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau,* 300 N.C. 381, 399, 269 S.E.2d 547, 561 (1980), *superseded by statute on other grounds as stated in State ex rel. Comm'r of Ins. v. N.C Rate Bureau*, 129 N.C. App. 662, 673, 501 S.E.2d 681, 689 (1998).

The Board was created by the General Assembly for a very specific, limited purpose: "for the purpose of examining applicants and providing rules and regulations for admission to the Bar . . . ." N.C.G.S. § 84-24; *In re Moore*, 301 N.C. 634, 639, 272 S.E.2d 826, 829 (1981). The enabling statute gives the Board

> power and authority to make or cause to be made such examinations and investigations as may be deemed by it necessary to satisfy it that the applicants for admission to the Bar possess the qualifications of character and general fitness requisite for an attorney and counselor-at-law and to this end the [Board] shall have the power of subpoena and to summons and examine witnesses under oath and to compel their attendance and the production of books, papers, and other documents and writings deemed by it to be necessary or material to the inquiry and shall also have the authority to employ and provide assistance as may be required to enable it to perform its duties promptly and properly.

N.C.G.S. § 84-24.

Nowhere is the Board empowered or authorized by the General Assembly to assert or enforce copyrights in essay questions or any other works it creates. Nor is it plausible that holding copyrights is *necessary* for the Board's express power to investigate and examine applicants for the bar, i.e., to determine their character and fitness to practice law. That copyrights are not needed to shield past exam questions is evident in the fact, acknowledged in

the complaint, that the Board makes past exam questions available to others, and indeed posts

them on its website.  (Cmplt. ¶13; *see* http://www.ncble.org (posting past exams for multiple

years as "study aids"))

The State has chosen to assert copyrights only selectively on its behalf.  In only several

limited instances has the General Assembly given State agencies authority to claim copyrights in

the records they generate.  *See* N.C.G.S. § 93A-3(f) (granting N.C. Real Estate Commission right

to "claim the copyright to written materials it creates and [] charge fees for publications and

programs"); *id.* § 121-21 (granting Tryon Palace Commission right "to copyright [certain seals

and emblems] in the name of the State"); *id.* § 143B-426.11 (granting Agency for Public

Telecommunications the right "to hold and own copyrights").  These statutes show, quite

obviously, that the General Assembly has concluded its authorization is required for an agency to

enforce a copyright.  There is no such authorization for the Board, however, or for essay

questions it creates.  By providing statutory exceptions for certain agencies' works, the only

logical conclusion is that General Assembly intended not to authorize other agencies to assert

copyrights in their works.  *See Campbell v. First Baptist Church,* 298 N.C. 476, 482, 259 S.E.2d

558, 563 (1979) ("Under the doctrine of *Expressio unius est exclusio alterius,* the mention of

specific exceptions implies the exclusion of others.").  To conclude otherwise would render the

foregoing copyright-authorizing statutes superfluous.

There are a number of policy reasons why the State would choose not to authorize its

agencies to assert copyrights.  We mention two here.  First, "'[t]he primary objective of

copyright is [t]o promote the Progress of Science.'"  *Eldred v. Ashcroft*, 537 U.S. 186, 212

(2003) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991)).  As the

Supreme Court has explained, "'[t]he economic philosophy behind the [Copyright] [C]lause ... is

the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors.'" *Id.* n.18 (brackets and elipses in original) (quoting *Mazer v. Stein*, 347 U.S. 201, 219 (1954)). Copyright law thus is designed to create a "'profit motive,'" an "'incentive to profit from the exploitation of copyrights which will redound to the public benefit by resulting in the proliferation of knowledge.'" *Id.* (citation omitted). *See also Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) ("[t]he purpose of copyright is to create incentives for creative effort"); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985) ("[C]opyright supplies the economic incentive to create and disseminate ideas."). However, in the case of public records created by State agencies to perform public duties imposed by law, the State may determine there is no need to provide an economic incentive—a profit motive—for creative effort by public officials (who generally are paid fixed salaries funded with taxpayer dollars). Hence Congress's decision not to vest the federal government with copyright protection for agency works. 17 U.S.C. § 105.

Second, and as explained in detail below, the State's strong policy in favor of open government explains why the State would choose not to assert copyrights in materials that its agencies create in carrying out public duties imposed by law. As discussed below, the State, through its Public Records Act, made a choice to treat the bulk of agency work product as common property—to dedicate agency-created material to the public domain immediately upon creation, for unfettered use, rather than delaying until expiration of the period of exclusive copyright control. That choice reflects a policy judgment that the public good is best served when materials created by public officials and agencies are available for circulation without impediment. As explained below, enabling agencies to assert copyrights without specific authorization to do so would gut North Carolina's Public Records Act, an absurd consequence.

For these reasons, the copyright claim must be dismissed. Simply put, the Board has no enforceable copyright, because the State has not authorized it to assert a copyright with respect to the materials it creates in carrying out its duties imposed by law.

**B.      To Conclude That North Carolina's Agencies May Freely Assert Copyrights In Public Records Without Express Legislative Authorization Would Decimate North Carolina's Critical Public Records Act**

That the General Assembly has not authorized State agencies to assert copyrights absent specific legislative authorization to do so is all the more clear when one pauses to consider the consequences of a contrary conclusion. It would decimate North Carolina's Public Records Act.

1.   North Carolina has an exceedingly broad Public Records Act. *See* N.C.G.S. Ch. 132. Reflecting the "legislature's mandate for open government," the Act provides "for liberal access to public records." *News & Observer Publ'g Co. v. Poole*, 330 N.C. 465, 475, 412 S.E.2d 7, 13 (1992). The General Assembly defined "public record" so broadly as to include nearly every work created by an agency, regardless of its form or characteristics or the circumstances under which it was created—and regardless of whether it embodies original works of authorship (i.e., copyrightable matter). N.C.G.S. § 132-1. "Public record" under the Act "includes all documents and papers made or received by any agency of North Carolina government in the course of conducting its public proceedings." *Id. See also News & Observer Publ'g Co. v. Wake County Hosp. Sys., Inc.*, 55 N.C. App. 1, 13, 284 S.E.2d 542, 549 (1981) (Act covers all records "kept in carrying out lawful duties"). Absent "clear statutory exemption or exception," documents falling within the broad definition of "public records" are in the public domain and must be made available for copying. *Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 462-63, 515 S.E.2d 675, 685 (1999); *Poole*, 330 N.C. at 486, 412 S.E.2d at 19. The Act declares in no uncertain terms that "public records and public information compiled by the

agencies of North Carolina government or its subdivisions are the property of the people," not the property of the State agencies serving the public. N.C.G.S. § 132-1(b). To ensure that the State's public policy is not obstructed, the Act provides a cause of action and remedy to those who are denied access or copies of public records, including an award of attorney fees. *Id.* § 132-9.

In light of the Public Records Act, it is improper for agencies to assert copyrights in documents they create in carrying out their lawful duties, absent specific copyright authorization from the General Assembly. An agency's assertion of copyright presupposes that its works are the property of *the agency*. But the Act could not be clearer in declaring the contrary: works authored by agencies in the course of their duties "are the property of the people," *not* the property of the agencies. N.C.G.S. § 132-1(b).

The Public Records Act undermines any assertion that the State has authorized its agencies to assert copyrights absent express legislative authorization to do so. After all, a copyright owner has *exclusive* rights to reproduce the work, to make derivative works, to disseminate the work, and to display it publicly. 17 U.S.C. § 106. The copyright owner thus has the right to deny or restrict copying, distribution, and use. These restraints, of course, are flatly prohibited by the Public Records Act. Under the Act, agencies *must* permit the public to access records, and they "shall, as promptly as possible, furnish copies" upon request. N.C.G.S. § 132-6(a). The Act forbids agencies from controlling use and distribution of public records. Agencies may not condition access or copying on non-commercial use. *See* David M. Lawrence, *Public Records Law for North Carolina Local Governments* 30 (1997) (hereinafter, "Lawrence, *Public Records Law*") (record custodians may not deny access on ground that requester intends to use records for commercial purposes, "even when the commercial operation in question was one that

8

would compete with the government or official holding the records"). The Public Records Act forbids an agency from restricting or limiting a third party's publication or resale of a public record. Op. Att'y Gen. N.C., 1994 WL 1026122 (March 16, 1994). Indeed, the Act goes so far as to forbid an agency from requiring anyone to disclose the purpose or motive of a request to copy public records. N.C.G.S. § 132-6(b).

Likewise, while a copyright owner may exact fees for copying or licensing, the Public Records Act forbids this. The Act does not permit *any* fee when a person makes a copy herself. Lawrence, *Public Records Law* 39 ("custodians may not charge fees for mere inspection" or "require a person who simply wants to inspect a record to purchase a copy; a person is entitled to inspect the record and make his or her own notes or own hand copy") (footnotes omitted). A fee may be charged only when the agency itself makes a copy; and even then, the law mandates that the fee cannot exceed the actual (de minimus) copy cost. N.C.G.S. § 132-6.2(b).

In sum, North Carolina has chosen to assert its copyright only selectively and to leave the vast majority of its records available for unfettered access by the public. North Carolina's Public Records Act confirms that the State has not authorized its agencies to assert copyrights in agency-created materials absent express legislative permission to do so. The Act declares that agency-created works are common property, requires agencies to make their works available to the public for copying, and forbids agencies from restricting commercial distribution and charging licensing fees. The Board does not have legislative permission to copyright essay questions. Thus, Count One must be dismissed.

2.    In analyzing this state-law issue, it is appropriate for this Court to "examine cases from other jurisdictions for guidance in determining what law [North Carolina] would adopt." *Teletronics Int'l., Inc. v. CNA Ins. Co./Transp. Ins. Co.*, 120 Fed. Appx. 440, 444 (4th Cir. 2005)

(citing *Lexington Ins. Co. v. Rugg & Knopp, Inc.,* 165 F.3d 1087, 1092 (7th Cir. 1999)). A particularly instructive case was decided recently in Florida. *See Microdecisions, Inc. v. Skinner*, 889 So. 2d 871 (Fla. Dist. Ct. App. 2004), *rev. denied*, 902 So. 2d 791 (Fla. 2005), *cert. denied*, 126 S.Ct. 746 (2005). The North Carolina Supreme Court likely would find this case persuasive, because Florida has a liberal public records law similar to North Carolina's.[1]

Microdecisions is a commercial business which compiles information on Florida real estate and then sells the information to the public, including information on maps. 889 So.2d at 872-73. A controversy arose when a public official (Skinner) refused to provide Microdecisions with Geographic Information System (GIS) maps he created in the course of his duties as county property appraiser. *Id.* at 873. The public official claimed the maps were copyrighted. *Id.* He refused to permit Microdecisions' unfettered use of the maps unless it agreed to a licensing agreement, including a licensing fee, for commercial use. *Id.*

Invoking Florida's public records law, Microdecisions sued the public official to compel him to provide the maps unencumbered by a licensing agreement or any restriction on commercial use or dissemination. In a unanimous decision, the State's court of appeals ruled in favor of Microdecisions, because the public official had "no authority to assert copyright protection in the GIS maps, which are public records." *Id.* at 874. The court observed that a copyright holder has the exclusive rights to reproduce and distribute a work and to authorize others to do so, as well as the right to refuse to provide copies and to charge whatever fee he wants for copies and licensing. *Id.* at 876. But Florida's public records law does not permit a

---

[1] *See* Joel Campbell, *New UF Study ranks states' records access law* (Mar. 11, 2005), UNIV. OF FLA. NEWS, http://news.ufl.edu/2005/03/11/access-2005 ("Open records laws in North Carolina, Florida, Michigan, Missouri and Indiana provide the best access to members of the public requesting records, according to new findings compiled by University of Florida researchers." (citing http://www.citizenaccess.org)).

state or local agency to assert such rights, because the law (like North Carolina's) requires the custodian of a public record to furnish a copy upon payment of the cost of reproduction; does not permit additional fees for commercial use; and renders irrelevant the motive of the person seeking the record. *Id.* at 875-76. The court also observed that the Florida legislature (like North Carolina's) has enacted specific statutes authorizing certain agencies to obtain copyrights in particular circumstances, but there was no such statute authorizing a county property appraiser to assert a copyright (just as there is no such statute authorizing the Board to do so). *Id.*

That same rationale applies here. In light of the Public Records Act, it is implausible that agencies have authority to enforce copyrights absent specific legislative authorization to do so. Thus, Count One must be dismissed. Without an enforceable copyright, the Board has no actionable copyright infringement claim.

C.    **Should The Court Harbor Any Doubt That The Board Has No Enforceable Copyrights, The Court Should Abstain And Stay The Action Pending A Determination By The North Carolina Judiciary On This Exceedingly Important Issue Of State Law Which Implicates The Administration Of The State's Government And Its Public Policy**

Should the Court harbor serious doubt on the foregoing decisive state-law issue— whether agencies of the State have authority to assert copyrights in materials they create in the performance of public duties required by law, in the absence of specific legislative authorization to do so—the proper disposition would be this: an abstention order, under the principles of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) ("*Burford*"), and *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959) ("*Thibodaux*"), with the copyright claim stayed while the underlying state-law issue is resolved by the North Carolina judiciary.

The "central idea" of abstention is comity. *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 718-19 (4th Cir. 1999); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996);

*First Penn-Pac. Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002). It is the idea that, in order to respect the sovereignty of the States, the federal judiciary must have "respect for state public policies in areas of paramount state concern" and "avoid interference with a state's administration of its own affairs." *Johnson*, 199 F.3d at 719. Federal courts must protect federal rights "'with proper regard for the rightful independence of state governments in carrying out their domestic policy,'" *Burford*, 319 U.S. at 318 (citation omitted), and avoid a "needless federal conflict with [a] state policy." *Id.* at 327. *See Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 945 F.2d 760, 763 (4th Cir. 1991).

Under *Burford* and *Thibodaux*, therefore, a federal court may "decline to exercise its jurisdiction in certain circumstances if abstention is necessary to show proper regard for a state government's domestic policy." *Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1324-28 (4th Cir. 1994) (en banc), *overruled in part on other grounds by Quackenbush, supra.* Abstention is appropriate when there are

> difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Quackenbush*, 517 U.S. at 726-27 (internal quotation marks omitted); *see also Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976); *Johnson*, 199 F.3d at 719; *First Penn-Pac.*, 304 F.3d at 351 n.3; *N.C. Life & Accident & Health Ins. Guar. Ass'n v. Alcatel*, 876 F.Supp. 748, 752-53 (E.D.N.C. 1995) (abstaining because "a federal district court may, in its discretion, decline jurisdiction in order to avoid conflicting with matters of important state policy"); *Newton v. Lat Purser & Assocs., Inc.*, 843 F. Supp. 1022, 1024-25 (W.D.N.C. 1994); *R.B. Brunemann & Sons, Inc. v. Duke Univ.*, 533 F. Supp. 365, 367-69 (M.D.N.C. 1982).

In this case, there is enmeshed in the Board's copyright claim an issue of North Carolina law which is novel because it has not been adjudicated by the North Carolina Supreme Court. *See Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S. 593, 594 (1968) (abstention for novel issue); *cf. Harris County Comm'rs v. Moore*, 420 U.S. 77, 88 (1975) (abstention proper "[b]ecause the federal claim in this case is entangled in a skein of state law that must be untangled before the federal case can proceed"). It is an exceedingly important issue which transcends this case, as it affects all State agencies and a large swath of public records protected by the Public Records Act. It is an issue which implicates the State's administration of its own affairs—its sovereign prerogative to control its agencies and their work product, and its sound public policy interest in advancing a liberal policy of open government with respect to public records.

Because Count One is a claim over which federal courts have exclusive jurisdiction and the Board is seeking damages, the proper disposition, should the Court deem abstention appropriate, is to postpone adjudication of Count One by issuing a stay and retain jurisdiction while the controlling state-law issue is resolved by the North Carolina judiciary. *See Quackenbush*, 517 U.S. at 728-31; *Kaiser Steel*, 391 U.S. at 594; *Johnson*, 199 F.3d at 727-28; *Front Royal*, 579 F.2d at 876; *R.B. Brunemann*, 533 F.Supp. at 367-69. The fact that there presently is no pending action between these parties in North Carolina is, of course, no obstacle to abstention under *Burford/Thibodaux* which (unlike other abstention doctrines) is not based on the existence of a pending parallel state proceeding. *See Thibodaux*, 360 U.S. at 30-31 (staying action and expecting the parties to cooperate in bringing a declaratory judgment action in state court to obtain a resolution of the state-law issue by the Louisiana Supreme Court); *Front Royal*, 135 F.3d at 278 (observing that in earlier round of that litigation, where the Fourth Circuit ordered *Burford* abstention, the Court instructed the district court to retain jurisdiction pending

the outcome of state court proceedings, the Court "envisioned" that plaintiff would seek relief in state system by filing an action there); *Madison Cablevision, Inc. v. City of Morganton*, No. SH-C-86-5, 1986 WL 22246, *7-8 (W.D.N.C. July 9, 1986) (abstaining based on unsettled question of state law, staying the action pending resolution of state court proceedings, and ordering that "Plaintiff should file its complaint in state court").

## II.    IF THE COURT AGREES THAT COUNT ONE SHOULD BE DISMISSED, THE COURT SHOULD DECLINE JURSIDICTION OVER COUNT TWO

Count Two alleges only a state law claim.  It is a claim for unfair or deceptive acts in violation of N.C.G.S. § 75-1.1 (hereinafter "Chapter 75").  As explained below in Part III, the Board has failed for numerous reasons to state an actionable Chapter 75 claim for which relief may be granted.  But the Court need not reach those issues.  If the Court dismisses Count One for the reasons above, the Court may decline jurisdiction over Count Two.

The sole basis for jurisdiction cited by the Board is 28 U.S.C. § 1338.  For Count Two, the Board evidently is invoking § 1338(b)'s pendent-jurisdiction provision, which authorizes jurisdiction over "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent,. . . or trademark laws."[2]  The copyright claim is not "substantial" for the reasons explained above in Part I.  *See Denys Fisher (Spirograph) Ltd. v. Louis Marx & Co. of W. Va., Inc.*, 306 F. Supp. 956, 959 (N.D. W. Va. 1969) ("The requirement of substantiality under 28 U.S.C.A. § 1338(b) is that the federal claim

---

[2] There is no diversity jurisdiction.  Diversity jurisdiction lies in an action between "citizens" of different States.  28 U.S.C. § 1332(a).  A State is not a "citizen" for purposes of § 1332.  *See, e.g., Moor v. County of Alameda*, 411 U.S. 693, 717 (1973).  A suit brought by a State or an agency of the State against citizens of another State does not give rise to diversity jurisdiction if the agency is an alter ego of the State.  *See, e.g., id.; Illinois v. City of Milwaukee*, 406 U.S. 91, 98 (1972); *Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894).  Courts have specifically held that State bar agencies are alter egos of their States and thus are not "citizens" for diversity jurisdiction.  *E.g., Strauss v. Rolewick*, 706 F.Supp. 205, 207 (E.D.N.Y. 1989); *Dacey v. Fla. Bar, Inc.*, 414 F.2d 195, 198 (5th Cir. 1969).

... must be sufficient to withstand attack under Rule 12(b)(6) ....").    Accordingly, upon dismissing the copyright claim, the Court may dismiss the pendent state-law claim in the exercise of its discretion. *See Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1571 (Fed. Cir. 1994), *cert. denied*, 514 U.S. 1078 (1995); *Davis v. United Artists, Inc.*, 547 F. Supp. 722, 728 (S.D.N.Y. 1982); *Sunbeam Lighting Co. v. Pac. Associated Lighting Inc.*, 328 F.2d 300, 303 (9th Cir. 1964).  After all, the purpose of pendent jurisdiction under § 1338(b) is to avoid the prospect of piecemeal litigation, *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux,* 24 F.3d 1368, 1372 (Fed. Cir. 1994), and that prospect evaporates when the copyright claim is dismissed. *See Wham-O-Mfg. Co. v. Paradise Mfg. Co.*, 327 F.2d 748, 753 (9th Cir. 1964).  As the Supreme Court observed long ago,

> pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . . .  Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (footnotes omitted).  *See also* Wright, Miller & Cooper, *Federal Practice & Procedure:  Jurisdiction 2d* § 3582 (§1338(b) "was an ill-conceived attempt ... to codify the general doctrine of 'pendent jurisdiction'"; "unfair competition claims . . . should be measured by the general principles applicable to pendent jurisdiction rather than by resort to the specifics of the statute").

Moreover, § 1338(b), which allows pendent jurisdiction only over "unfair competition" claims, could not conceivably confer jurisdiction over the Board's claim to enforce N.C.G.S. § 14-401.1 (*see* Cmplt. ¶28), a criminal statute forbidding tampering with examination questions.

With respect to *that* claim, the only basis for jurisdiction is 28 U.S.C. § 1367 (supplemental jurisdiction). This Court may decline supplemental jurisdiction over this claim, not only under § 1367(c)(3) (jurisdiction may be declined when federal claim dismissed), but also under § 1367(c)(4), because, as shown below, this claim raises novel issues of state law.

### III.    IF THE COURT SHOULD EXERCISE JURISDICTION OVER COUNT TWO, THE CLAIM SHOULD BE DISMISSED UNDER RULE 12(b)(6)

Count Two appears to be based on a theory that the Board holds enforceable copyrights. Because the Board does not, Count Two must be dismissed. As explained below, moreover, irrespective of whether the Board has enforceable copyrights, Count Two must be dismissed.

### A.    Count Two Is Preempted By Federal Law

The Copyright Act has an express preemption term which applies to works within the scope of the Act, original works of authorship. 17 U.S.C. § 301. Section 301 preempts a state-law claim if the plaintiff is seeking to vindicate legal or equitable rights equivalent to any of the exclusive rights protected by the Copyright Act, such as reproduction, distribution, performance, and display. *See Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993) (a state law claim is preempted if the state law right "may be abridged by an act which, in and of itself, would infringe one of the exclusive rights" afforded by the Copyright Act). To avoid preemption under § 301, the claim must, as pleaded, include a genuine extra element that makes the claim "*qualitatively* different from a copyright infringement claim." *Id.* at 230 (emphasis in original) (citations omitted). That is, to avoid preemption, the state law claim "must regulate conduct qualitatively different from the conduct governed by federal copyright law." *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir.), *cert. denied*, 510 U.S. 965 (1993).

Courts, including this Court, have repeatedly found Chapter 75 claims preempted by § 301 when those claims are based on allegedly copyrighted works. Courts have rejected the

notion that "unfairness" or "deception" is an extra element that circumvents preemption. *See, e.g., Patsy Aiken Designs, Inc. v. Baby Togs, Inc.*, 701 F. Supp. 108, 110-12 (E.D.N.C. 1988) (Howard, J.) ("Federal Courts have repeatedly held that state law claims for ... 'unfair trade practices,' seeking protection against copying, are preempted by the Copyright Act ...."); *Iconbazaar, L.L.C. v. America Online, Inc.*, 308 F. Supp. 2d 630, 636-37 (M.D.N.C. 2004); *Bell v. E. Davis, Int'l, Inc.*, 197 F. Supp. 2d 449, 462-63 (W.D.N.C. 2002), *aff'd*, 45 Fed. Appx. 253 (4th Cir. 2002); *Old S. Home Co. v. Keystone Realty Group, Inc.*, 233 F. Supp. 2d 734, 736-38 (M.D.N.C. 2002). For example, in *Patsy Aiken*, defendants sold their products and labeled them as their own, while incorporating plaintiff's copyrighted designs. Plaintiff brought a Chapter 75 claim, alleging a likelihood of consumer confusion. 701 F. Supp. at 111. In finding the claims preempted, this Court rejected the notion that allegations of deception and consumer confusion could circumvent preemption, because (as numerous courts have held) deception and consumer confusion could be inferred in any alleged infringement claim. *Id.* at 112.

The Board's Chapter 75 claim fares no better than the claims preempted in the foregoing cases. An analysis of the Board's claim bears this out.

### 1.    Alleged violation of N.C.G.S. § 14-401.1

The Board contends Defendants are liable for allegedly having "bought, received, sold, or gave, and/or offered to buy, give, or sell, copies of Essay questions, in violation of N.C.G.S. § 14-401.1." (Cmplt. ¶28) This claim is plainly preempted, because it proposes to impose liability for unauthorized sale, reproduction, distribution, or use of works. *See* 1 *Nimmer on Copyright* § 1.01[B] ("If under state law the act of reproduction, performance, distribution or display, no matter whether the law includes all such acts or only some, will *in itself* infringe the state created

17

right, then such right is preempted.") (emphasis in original); *Patsy Aiken*, 701 F.Supp. at 111 (Howard, J.) (state law claims based on sale of copies are preempted).

### 2.    Alleged false designation of origin by "reverse passing off"

The Board contends Defendants "falsely designated the origin" of their materials in that they "falsely passed off" Board-created essay questions "as [their] own." (*Id.* ¶30) This claim is best described as an attempt to plead *reverse* passing off. "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. 'Reverse passing off,' as its name implies, is the opposite:  The producer misrepresents someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) (citations and internal quotation marks omitted). "Reverse passing off" is a form of false designation of origin in which the defendant depicts itself as having produced goods produced by the plaintiff without attribution to the plaintiff. *Id.* at 29-30.

The Board's claim can best be described as an attempt to plead "reverse passing off," because the Board is not contending that Defendants misrepresented that their bar-review materials were produced by the Board; rather, the Board alleges that Defendants appropriated Board-created essay questions "as [their] own." (Cmplt. ¶¶29-30) *See Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291, 297 (S.D.N.Y. 2007) (similar claim denominated a "reverse passing off" claim); *Daley v. Firetree, Ltd.*, No. 4:CV-04-2213, 2006 WL 148879, *3-5 (M.D. Pa. Jan. 19, 2006) ("In this case, the plaintiff's grievance is best characterized as a 'reverse passing off' claim.  Plaintiff complains that defendants have copied his copyrighted literary works and distributed them as defendants' own.").

Unquestionably, the type of "reverse passing off" claim the Board is attempting to plead is expressly preempted by § 301. As the leading treatise on copyright explains:

> If A claims that B is selling B's products and representing to the public that they are A's, that is passing off. If, by contrast, B is selling B's products and representing to the public that they are B's, that is not passing off. A claim that the latter activity is actionable because B's product replicates A's, even if denominated 'passing off,' is in fact a disguised copyright infringement claim, and hence preempted.

1-1 *Nimmer on Copyright* § 1.01[B][1][e]. A legion of authority, including cases within this Circuit, holds that state law claims deemed to allege "reverse passing off" are preempted by § 301.[3] As Judge Bullock summed up in holding that § 301 preempted a Chapter 75 alleging passing off: "In sum, 'if [Defendants are] selling [Defendants'] products and representing to the public that they are [Defendants'] products, a claim by [Plaintiff] that [Defendants'] products replicate [Plaintiff's] is a disguised copyright infringement claim and is preempted.'" *Old S. Home*, 233 F.Supp.2d at 737-38 (brackets in original; citation omitted). That is an apt description of the Board's claim.

Frankly, it is difficult to conceive of a claim for false designation of origin or "passing off" that is more clearly preempted that the Board's claim. Here we have a plaintiff who does *not* allege that its commercial interests have been harmed by unfair competition—i.e., that its commercial goodwill has been impaired by a likelihood of consumer confusion about the source of the works. Nor could it, since the Board is a regulatory body, not a commercial outfit

---

[3] *See, e.g., Integrative Nutrition, Inc.*, 476 F. Supp. 2d at 297; *Beckwith Builders, Inc. v. Depietri*, No. 04 CV 282 SM, 2006 WL 2645188, *6-7 (D.N.H. Sept. 15, 2006); *Daley*, 2006 WL 148879, *3-5; *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 350 F. Supp. 2d 613, 619-20 (E.D. Pa. 2004); *Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.*, 243 F. Supp. 2d 444, 450 (M.D.N.C. 2003); *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 959 (N.D. Ill. 2002); *Costar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 713-14 (D. Md. 2001), *aff'd*, 373 F.3d 544 (2004); *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 73-74 (D.D.C. 2000); *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 933-34 (S.D.N.Y. 1996); *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993), *cert. denied*, 510 U.S. 1112 (1994). Preemption applied in these cases regardless of whether the claims were pleaded as "passing off," false designation of origin, or failure to attribute ownership.

authorized to trade on exam questions.  The harm alleged here is the unauthorized copying, use, and distribution of expressive works it created.  The claim is not qualitatively different from an infringement claim.  If this claim is not preempted, § 301 is meaningless.

Section 301 preemption aside, the claim is also *impliedly* preempted by the Copyright Clause (U.S. Const. Art. I, § 8, cl. 8) and the Copyright Act under the U.S. Supreme Court's significant conflict-preemption decision in *Dastar, supra*.  In *Dastar* the plaintiff claimed the defendant falsely designated the origin of a work by "passing off."  Invoking conflict preemption, *Dastar* held that false-designation-of-origin claims, when raised to protect an author's interest in communicative products, are the exclusive province of copyright law, and thus are not actionable as unfair competition.  539 U.S. at 29-37.  Were such claims actionable as unfair competition, they would create a risk of *indefinite protection* for works within the scope of copyright law, even after copyright expiration, by indefinitely limiting the right to copy without attribution.  *Id.* at 33-37.  That would "create a species of mutant copyright law," a "species of perpetual ... copyright," which would conflict with the Copyright Clause, whose "limited times" provision creates a "'federal right to "copy and to use"' expired copyrights'" — a right "to copy without attribution once a copyright has expired."  *Id.* at 33-34, 37 (citations omitted).

Although *Dastar* involved a Lanham Act claim (for false designation of origin by passing off), the logic of its conflict-preemption analysis naturally applies to state-law claims for unfair competition.  *See* U.S. Const. Art. VI, cl. 2. (Supremacy Clause).  Indeed, the Lanham Act is derived from the same common law tort of unfair competition found in state law.  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 220 n.2 (4th Cir. 2002); *Global Mail Ltd. v. U.S. Postal Serv.*, 142 F.3d 208, 211 (4th Cir. 1998).  Accordingly, courts have applied *Dastar*'s conflict-preemption doctrine to preempt state-law claims alleging false designation of origin and

"reverse passing off." *See, e.g., Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1218 (E.D. Cal. 2004); *Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177, 1183-85 (C.D. Cal. 2003). The Board's claim likewise is preempted under *Dastar*. The interest the Board is seeking to protect (attribution as author) is addressed by copyright law. Allowing an unfair competition claim in such circumstances would, in effect, abridge the public's right to copy and use public-domain works without attribution, in conflict with federal law. Therefore, the claim is impliedly preempted under *Dastar*, wholly apart from § 301's express preemption.

**B.      Preemption Aside, Count Two Fails To State A Claim For Which Relief May Be Granted To The Board**

**1.      The Board has no standing or authority to bring the Chapter 75 claim**

Insofar as the Board is bringing this action under N.C.G.S. § 75-16, the private civil action provision, the Board does not have standing. *See Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 391-98, 617 S.E.2d 306, 310-14 (2005) (Chapter 75 claim properly dismissed for lack of standing where plaintiff failed to allege cognizable injury), *aff'd*, 360 N.C. 398, 627 S.E.2d 461 (2006). Section 75-16 creates a cause of action for an injured "person, firm or corporation." The State may bring a Chapter 75 claim under § 75-16 for harm sustained by the State *if* the State is injured "as a consumer," i.e., as a market participant contracting for goods or services. *F. Ray Moore Oil Co. v. State*, 80 N.C. App. 139, 142-43, 341 S.E.2d 371, 373-74 (1986) (as consumer of oil under purchase contract, State had standing "as a consumer" to bring Chapter 75 claim based on deceptive conduct in sale of oil). But here the complaint does not allege the Board was injured as a consumer or in a business capacity. Nor could it. The Board is not a commercial actor. It does not sell essay questions. (In fact, it makes them available free of charge. Cmplt. ¶13.) The Board is not authorized to engage in commercial activity; its mandate is limited to examining applicants and regulating admission to the bar. N.C.G.S. § 84-24.

Indeed, the complaint lacks any well-pleaded facts to suggest that the Board can show that Defendants proximately caused *any* actual injury to the Board. This is fatal to Count Two, because one of the essential elements of a Chapter 75 claim, of course, is that the challenged conduct must have proximately caused the plaintiff to sustain actual injury. *See, e.g., Old Salem Foreign Car Serv., Inc. v. Webb*, 159 N.C. App. 93, 99-100, 582 S.E.2d 673, 677-78 (2003). The complaint does not have well-pleaded facts suggesting that Defendants' bar-review materials proximately caused the Board to sustain an actual injury within the ambit of Chapter 75. *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) (plaintiff must "set forth facts sufficient to allege each element of his claim"); *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-69 (2007) (clarifying Rule 12(b)(6) standard; reiterating that complaint must plead factual allegations to raise a right to relief; and disavowing the oft-quoted and misleading standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").[4]

If, on the other hand, the Board is not suing under § 75-16 but instead is suing as a regulatory agency to police alleged harm to the State or the consuming public, the Board has no authority to do so. The *only* organ of State government authorized to bring such a Chapter 75 action is the Attorney General, in the name of the State. N.C.G.S. §§ 75-9, 75-14, 75-15, 75-15.1, 75-15.2; *see also id.* § 114-2 (duty of Attorney General to represent the State, its agencies, and public interest). Chapter 75 authorizes only the Attorney General to pursue relief the Board seeks: injunctive relief and restoration of monies or property. *Id.* §§ 75-14, 75-15.1. Only the

---

[4] Insofar as the Board is invoking § 75-16 to sue for alleged harm to consumers who transacted with Defendants, the Board does not have standing to advance the claims of third parties. *See Kowalski v. Tesmer*, 543 U.S. 125 (2004) (third-party standing is exceedingly narrow).

Attorney General is authorized to pursue a civil penalty under Chapter 75. *Id.* § 75-15.2. In short, only the Attorney General may prosecute a civil Chapter 75 claim, and must do so in the name of the State. *Id.* § 75-14. *See McLean v. Townsend*, 227 N.C. 642, 643, 44 S.E.2d 36, 36-37 (1947) (public nuisance suit dismissed; suit had to be brought by state on relation of Attorney General). The Board's prosecution of this action itself, in its own name, is all the more bizarre since the Board is seeking to enforce a criminal statute. (Cmplt. ¶28) The Attorney General, not the Board, is "the State's chief law enforcement officer," *In re S. Bell Tel. & Tel. Co.*, 30 N.C. App. 585, 589, 227 S.E.2d 645, 648 (1976); and the Attorney General is the only entity authorized to prosecute criminal actions implicating Chapter 75. N.C.G.S. § 75-13. The Board's lack of authority under North Carolina law is an independent basis to dismiss this action. *Cf. Nevada v. Glickman*, 179 F.R.D. 301, 302 (D. Nev. 1998) (complaint dismissed in part because Nevada law permitted only attorney general to sue on behalf of the State, and the attorney general would not participate in the case), *aff'd*, 202 F.3d 379 (9th Cir. 1999).[5]

2.   **Insofar as the Chapter 75 claim is predicated on an alleged violation of the criminal tampering statute, the Board fails to state a claim**

Insofar as Count Two is predicated on a purported violation of N.C.G.S. § 14-401.1, the claim additionally fails. First, Defendants' alleged conduct is not within the ambit of N.C.G.S. §

---

[5] Not to put too fine a point on it, but to permit the Board to prosecute this action itself would undermine the lawful authority of the Attorney General. *See Hendon v. N.C. State Bd. of Elections*, 633 F. Supp. 454, 458-59 (W.D.N.C. 1986); *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484,. 494-96 (4th Cir. 1981). Under North Carolina law, the Attorney General has a duty to appear as counsel for agencies. N.C.G.S. § 147-17 ("The Attorney General shall be counsel for all ... agencies ... of the State;" "[n]o ... agency ... shall employ any counsel, except with the approval of the Governor" on advice of the Attorney General that "it is impracticable for the Attorney General to render the legal services"); *see also id.* § 14-2; *Martin v. Thornburg*, 320 N.C. 533, 546, 359 S.E.2d 472, 479-80 (1987) ("the duties of the Attorney General in North Carolina as prescribed by statutory and common law include the duty to appear for ... the State or its agencies in all actions in which the State may be a party or interested," including the "duty" to bring all "actions necessary for the protection and defense of property and revenue").

14-401.1. The law is titled "Misdemeanor to tamper with examination questions," so presumably it is directed at tampering with exams in a way to facilitate cheating. *See Brown v. Brown*, 353 N.C. 220, 224, 539 S.E.2d 621, 623 (2000) ("the title [of a law] is an indication of legislative intent"). The complaint does not allege Defendants intended to, or did, aid or abet cheating on bar exams by allegedly including past essay questions in bar-review courses. Such a contention would be implausible, since, as the complaint acknowledges, the Board itself makes essay questions publicly available as study aids. (Cmplt. ¶13; http://www.ncble.org)

Second, a violation of that criminal statute is not actionable under Chapter 75. To be sure, a criminal statute that *regulates commercial activity* may form the basis for a Chapter 75 action. *Kewaunee Scientific Corp. v. Pegram*, 130 N.C. App. 576, 580-81, 503 S.E.2d 417, 420 (1998) (concluding that "a violation of G.S. 14-353 [the commercial bribery statute] should also be considered a violation of G.S. 75-1.1 as an unfair and deceptive trade practice" for injured employers) (citation omitted). The *Kewaunee* court reached that conclusion by relying on the principle that a "'the violation of regulatory statutes *which govern business activities* may also be a violation of N.C. Gen. Stat. § 75-1.1.'" *Id.* (emphasis added). *See also Stanley v. Moore,* 339 N.C. 717, 723, 454 S.E.2d 225, 228 (1995) (violations of statutes designed to protect the consuming public may constitutes unfair and deceptive practices). In this case, however, the subject criminal statute is not directed at commercial activity. Thus, an alleged violation of it is not actionable under Chapter 75.

There is no North Carolina precedent suggesting that a violation of this criminal statute (N.C.G.S. § 14-401.1) is an unfair or deceptive act or practice actionable under Chapter 75. That should end the matter, for it is not the office of a federal court to expand state tort law. *Spencer v. Gen. Elec. Co.*, 894 F.2d 651, 657-58 (4th Cir. 1990) (federal court must not "extend state law

to a point beyond which a state's highest court has not taken it"), *abrogated on other grounds by* 506 U.S. 103 (1992); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 349 (4th Cir. 1998); *Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993) (federal court should "rule upon state law as it exists and do not surmise or suggest its expansion"); *Walk v. B&O R.R.*, 847 F.2d 1100, 1108 (4th Cir. 1988), *vacated on other grounds*, 492 U.S. 914 (1989); *Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.*, 451 F. Supp. 2d 736, 745-46 (E.D.N.C. 2006) (with no North Carolina case having extended the law as plaintiffs proposed, the court could not accept "plaintiff's invitation to be the first").

### 3.    Insofar as the Chapter 75 claim is predicated on alleged false designation of origin by "passing off," the Board fails to state a claim

False designation of origin by "passing off" is a strand of the common law tort of unfair competition. *Henderson v. U.S. Fid. & Guar. Co.*, 124 N.C. App. 103, 108, 476 S.E.2d 459, 462 (1996) *aff'd*, 346 N.C. 741 (1997). "The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection." *Id.* It "also includes acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market." *Id.*

Thus, to establish this tort of *unfair competition*, a plaintiff must, at an irreducible minimum, plead that its commercial goodwill has been exploited and impaired by the likelihood of consumer confusion. As noted, the Board's complaint does not plead this. The complaint does not, could not, allege that the Board is a commercial actor, trading on essay questions. The complaint nowhere alleges facts suggesting a reasonable likelihood that the consuming public could be deceived as to the source of the essay questions. *See D-E-W Foods Corp. v. Tuesday's of Wilmington, Inc.* 29 N.C. App. 519, 523-24, 225 S.E.2d 122, 124-25 (1976) (the "underlying

principle" of "passing off" is that "'one trader shall not compete with another for public patronage by adopting intentionally means adapted to deceive the public into thinking that it is trading with the latter when in fact dealing with the former"); *Purcell v. Summers*, 145 F.2d 979, 987 (4th Cir. 1944) ("passing off" involves "fraudulent appropriation, through devices calculated to deceive or mislead the public, of the business or good will which another has built up").

In fact, the complaint indicates that Defendants *have* attributed the source of the essay questions: the Board wants an injunction to *stop* Defendants from "advertising or promoting … that their bar preparation materials are based upon or contain *genuine North Carolina Bar Examination essay questions* or reproductions thereof[.]" (Cmplt. p. 8 (emphasis added); *see also id.* ¶20 (alleging BAR/BRI's website promotes derivative works based on "NC Bar Exam essay questions")). No reasonable consumer could believe that *Defendants* were authors of the genuine questions used on the State's bar exams, because the Board is the only entity authorized by law to make the genuine bar exam questions. N.C.G.S. 84-24.

Finally, this unfair competition claim fails under the U.S. Supreme Court's reasoning in *Dastar*, *supra*, which the North Carolina Supreme Court likely would deem persuasive in evaluating state law on this issue. *Dastar* held that, under the law of unfair competition, a plaintiff does not state a claim for false designation of origin ("reverse passing off") based on the unaccredited copying of a communicative product such as a book or film. 539 U.S. at 32-37. The court held that the "origin" of the product is the entity who produced the *physical product* sold in the marketplace (in this case, the bar review materials created and sold by Defendants)— and *not* the entity who produced expressive content that the finished product embodies or contains (in this case, allegedly, the Board). *Id.* at 31-37. Thus, in the case of a communicative product, the Court held, it is *not* a *false* designation of origin when the producer of the physical

item holds *itself* out as the origin of the product without attribution to the creator of the content that the physical item embodies or conveys. *Id.* Drawing on the common law, the Court held that the law unfair competition was "*not* designed to protect originality or creativity" or "plagiarism"—i.e., duplicating the plaintiff's work without crediting the plaintiff. *Id.* at 36-37 (emphasis in original). Thus, even though the defendant, Dastar, copied the original television series which plaintiff created, made slight changes, used it to produce its own videotape series, and marketed the series as its own product without acknowledging its nearly wholesale reliance on plaintiff's work, the Court held that Dastar was the "origin" of the videotapes, and therefore there was no actionable claim based on false designation of origin (reverse passing off). *Id.* at 38.

Under the reasoning *Dastar*, there could be no unfair competition claim in this case: *Defendants* are the origin of the goods and services they sell (the bar-review materials and lectures), regardless of the fact that those products and services embody or convey expressive content (essay questions) created by the Board. *Dastar* likely would be followed by the North Carolina Supreme Court as persuasive authority. To be sure, *Dastar* involved a claim under the Lanham Act. But the Court interpreted the Act "in accordance with the Act's common-law foundations" and held that the common law was "*not* designed to protect originality or creativity." *Id.* at 37 (emphasis in original). The Lanham Act is derived from the same common law of unfair competition found in state law, *Harrods Ltd.*, 302 F.3d at 221 n.2; *Global Mail Ltd.*, 142 F.3d at 211, which is why courts routinely use Lanham Act principles to analyze state law unfair competition claims. *See, e.g., Synergistic Int'l., LLC v. Korman*, 470 F.3d 162, 171 n.9 (4th Cir. 2006) (Va. law).

For all these reasons, the complaint fails to state an actionable claim for which relief may be granted to the Board. Count Two must, therefore, be dismissed.

## **CONCLUSION**

Count One should be dismissed with prejudice because the Board has no enforceable copyrights. Should the Court harbor any doubt as to whether the Board lacks enforceable copyrights, the appropriate course would be to issue an abstention order and stay Count One while the North Carolina judiciary resolves that issue of state law. If Count One is dismissed, the Court may decline jurisdiction over Count Two. If the Court exercises jurisdiction over Court Two, it should be dismissed with prejudice.

This the 10th day of August, 2007.

/s/ John F. Morrow, Jr.
John F. Morrow, Jr. (NCSB No. 23382)
WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*
One West Fourth St.
Winston-Salem, NC 27101
Telephone Number: 336-7212-3584
Facsimile Number: 336-733-8429
jmorrow@wcsr.com

/s/ Sean E. Andrussier
Sean E. Andrussier (NCSB No. 25790)
/s/ Hampton Dellinger
Hampton Dellinger (NCSB No. 19903)
WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*
Post Office Box 831
Raleigh, NC 27601
Telephone Number: 919-755-2100
Facsimile Number: 919-755-2150
sandrussier@wcsr.com
hdellinger@wcsr.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** was filed electronically with the Clerk of Court using CM/ECF system with notice of case activity to be generated and sent electronically by the Clerk of Court to the following parties registered to receive such service:

This the 10th day of August, 2007.

    James R. Van Camp
    VAN CAMP, MEACHAM & NEWMAN, PLLC
    2 Regional Circle
    Post Office Box 1389
    Pinehurst, NC 28374
    jamesv@vancamplaw.com

    Susan Freya Olive
    OLIVE & OLIVE, P.A.
    500 Memorial Street
    Post Office Box 2049
    Durham, NC 27702-2049
    EmailboxEDNC@oliveandolive.com


                        By: /s/ Sean E. Andrussier
                        Sean E. Andrussier
                        WOMBLE CARLYLE SANDRIDGE & RICE
                        *A Professional Limited Liability Company*
                        Post Office Box 831
                        Raleigh, NC  27601
                        Telephone Number: 919-755-2100
                        Facsimile Number: 919-755-2150
                        sandrussier@wcsr.com


WCSR  3675236v2