**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**Case No.:  5:07-cv-00210-H**

| | |
|---|---|
| BOARD OF LAW EXAMINERS, also known as North Carolina Board of Law Examiners and as The Board of Law Examiners of the State of North Carolina<br><br>            Plaintiff,<br><br>    vs.<br><br>WEST PUBLISHING CORPORATION and THE THOMSON CORPORATION,<br>            Defendants, | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

James R. Van Camp
        NC Bar #4646
VAN CAMP, MEACHAN & NEWMAN, PLLC
Attorneys for Plaintiff

2 Regional Circle
PO Box 1389
Pinehurst, NC 28374
Telephone:  (910) 295-2525
Fax:  (910) 295-1520
Email:  jamesv@vancamplaw.com

Susan Freya Olive,
        NC Bar #7252
OLIVE & OLIVE, P.A.
Attorneys for Cross-Defendant

500 Memorial Street
PO Box 2049
Durham, NC 27702-2049
Telephone: (919) 683-5514
Fax:  (919) 688-3781
Email: EmailboxEDNC@oliveandolive.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INDEX OF EXHIBITS ..................................................................................................... iii

STATEMENT OF THE CASE ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENT .................................................................................................................... 3

    I.    THE BOARD OF LAW EXAMINERS IS ENTITLED TO PROTECT THE ESSAY
    EXAMINATION FROM COPYING ............................................................................ 3

        A.    In the Absence of a Waiver by the State, the Board of Law Examiners is Entitled to Own
        Copyrights In Its Examinations ...................................................................... 4

        B.    The Bar Examinations Have Not Been Injected Into the Public Domain by the Public Records
        Law and The Board of Law Examiners Possesses the Authority Needed to Protect its Examinations . 4

    II.    THE BOARD IS ENTITLED TO PROCEED ON COUNT TWO OF THE COMPLAINT ..... 9

        A.    Plaintiff Has Sufficiently Pleaded A Claim Under N.C.G.S. §75-1.1 ......................................... 9

            1.    Count Two Sufficiently Describes the Board's Standing and Meets the Pleading
            Requirements for a Claim Under N.C.G.S. §75-1.1 ...................................................... 10

            2.    Plaintiff's Claim that Defendants Purchased or Through Other Unlawful Means Obtained
            the Board's Examination Questions in Violation of N.C.G.S. §14-401.1, and Profited Thereby,
            Sufficiently Alleges A Violation of N.C.G.S. §75-1.1 .................................................... 12

            3.    Far From Failing To State The Elements Of A Claim For "Reverse Passing Off" Plaintiff
            Has Sufficiently Alleged False Marking And Related Activities That Supported And Made
            Possible Defendants' Profiting From Its Criminal Actions, Thus Contributing To The Chapter 75
            Claim 14

        B.  Plaintiff's Claim Under Chapter 75 Is Not Preempted By Federal Law ........................................ 15

CONCLUSION ............................................................................................................... 19

CERTIFICATE OF SERVICE ........................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Bowens v Board of Law Examiners,*
  57 N.C. App. 78, 291 S.E.2d 170 (1982)......................................................................8
*Bring v N.C. State Bar,*
  348 N.C. 655, 501 S.E.2d 907 (1998) ........................................................................8
*County of Suffolk, NY v. First American Real Estate Solutions,*
  261 F.3d 179 (2nd Cir. 2001).................................................................................5, 9
*Educ. Testing Service v. Simon,*
  95 F. Supp. 2d 1081 (C.D.Cal. 1999) ......................................................................20
*F. Ray Moore Oil Co. v State,*
  80 N.C. App. 139, 341 S.E.2d 371 (1986)...............................................................13
*Governor's Club, Inc. v Governor's Club Limited Partnership, et. al ,*
  152 N.C.App. 240, 567 S.E.2d 781 (2002), *aff'd per curiam*, 357 N.C. 46, 577 S.E.2d 620 (2003)....11, 12
*In re Willis,*
  288 N.C. 1, 215 S.E.2d 771 (1975) ...........................................................................8
*Kewaunee Scientific Corp. v. Pegram,*
  130 N.C. App. 576, 503 S.E.2d 417 (1998)..................................................14, 15, 16
*Microdecisions, Inc. v Skinner,*
  889 So. 2d 871 (FL Dist Ct. App. 2004) ...................................................................4
*Morrison v. Board of Law Examiners,*
  453 F.3d 190 (4th Cir.), *cert. den.*, 127 S.Ct. 1124, 166 L.Ed.2d 907 (2007)...............8
*Nat'l Conf of Bar Examiners v Multistate Legal Services, Inc.,*
  458 F. Supp. 2d 252 (E.D.Pa. 2006) ........................................................................20
*Patsy Aiken Designs, Inc.  v Baby Togs, Inc. et al.,*
  701 F.Supp. 108 (E.D.N.C. 1988) ........................................................................3, 19
*Rhyne v. K-Mart,*
  358 N.C. 160, 594 S.E.2d 1 (2004) ...........................................................................7
*Rice v. Palladin,*
  128 F.3d 233 (4th Cir 1997), *cert. denied,* 523 U.S. 1074 (1998).........................18
*Sperry Corp. v Patterson,*
  73 N.C.App. 123, 325 S.E.2d 642 (1985)................................................................12
*U.S. v. Jernigan,*
  492 F.3d at 1050 (9th Cir. 2007) ..............................................................................3

## STATUTES

17 U.S.C. §105............................................................................................................4
17 U.S.C. §106......................................................................................................17, 19
17 U.S.C. §301(a) .................................................................................................3, 16
17 U.S.C. §301(b) .....................................................................................................17
17 U.S.C. §411(a) .......................................................................................................9
28 U.S.C. §1338(a) .....................................................................................................3
N.C.G.S. §12-3.........................................................................................................13
N.C.G.S. §14-401.1...............................................................................6, 7, 10, 15, 16, 19
N.C.G.S. §84-24........................................................................................................5
N.C.G.S. §132-1......................................................................................................10

N.C.G.S. §132-10.................................................................................................................4

**RULES**

F. R. Civ. P. 12(b)(6) ....................................................................................................... 11, 12

**OTHER AUTHORITIES**

*Advisory Opinion of the Attorney General as to Applicability of The Michie Company Copyright*,
  1994 WL 1026122 (N.C.A.G.) ........................................................................................ 10

**INDEX OF EXHIBITS**

| | |
|---|---|
| EXHIBIT A | U.S. Copyright Office Records Showing Copyright Registrations Owned by The North Carolina Department Of Public Instruction Covering Examinations & Other Documents |
| EXHIBIT B | U.S. Copyright Office Records Showing Examples of Copyright Registrations Owned by Other Departments, Divisions and Agencies of the State of North Carolina |
| EXHIBIT C | Oxford Compact English Dictionary – Definition of "Tamper" |
| EXHIBIT D | Board's Website Page (www.ncble.org) With Terms of Use for Downloadable Examination Copies |
| EXHIBIT E | Unpublished case: *National Conference of Bar Examiners v Saccuzzo*, Not Reported in F.Supp.2d, 2003 WL 21467772 (S.D.Cal. 2003) |
| EXHIBIT F | California Bus. & Prof. Code, §§ 17200 & 123  [Analogous to N.C.G.S. §75-1.1 and N.C.G.S. §14-401.1] |

## STATEMENT OF THE CASE

This is an action arising out of Defendants' unlawful copying and sale of examination questions prepared by the North Carolina Board of Law Examiners, in violation of federal copyright law; and Defendants' unlawful acquisition of copies of those questions in violation of N.C.G.S. §14-401.1 (a criminal statute) and commission of other acts, in violation of North Carolina's unfair and deceptive trade practices act.

The complaint was filed on June 11, 2007. [D1-1]  Defendants, having entered their appearance through counsel, and after having obtained a consented extension of time [D9], now have filed a motion to dismiss the complaint [D12-1].  Plaintiff in turn obtained a consented extension of time [D15] and responds herein to Defendants' motion.  There have been no other proceedings of substance in the case.

## STATEMENT OF FACTS

The North Carolina Board of Law Examiners supervises the admission of applicants to the North Carolina Bar.  The duties of the Board include examining applicants for admission to the Bar and providing rules and regulations for admission to the Bar, and specifically include "making or causing to be made such examinations …as may be deemed by it necessary" for that purpose.  [D1-1, ¶2; N.C.G.S. §84-24]

The questions posed to applicants on the essay portion of the bar examination are written by members of the Board and of the Board's Select Drafting Committee, and all copyrights in the questions belong to the Board. [D1-1, ¶11, 14]  The Board has registered its copyrights in most of the essay examinations it has administered over the past twenty-five years. Other applications are presently pending. [D1-1, ¶15]

The Board did not provide the essay examinations to Defendants or authorize anyone else to do so. [D1-1, ¶17]  North Carolina's criminal statute codified in N.C.G.S. §14-401.1 provides, among other things:

> Any person who, without authority of the entity who prepares or administers the examination, purloins, steals, buys, receives,….. or offers to buy … any

> examination questions … of any examination provided and prepared by law shall
> be guilty of a Class 2 misdemeanor

Nonetheless, Defendants bought, stole or otherwise received examination questions from the North

Carolina Essay Examination, without authority of the Board. [D1-1, ¶28]

Defendants then used the questions that they unlawfully acquired to prepare what they passed off

as their own work in various products and services, and offered and sold these infringing products and

services to applicants who were trying to prepare for the North Carolina bar examination. Among other

things, Defendants advertised and sold a Workbook, to which they affixed their own notice of copyright,

that they described as containing "over 100 reconstructed North Carolina Bar Examination Questions."

Defendants also made infringing use of the Board's essay questions in other ways connected with their

BAR/BRI bar review course, including in course outlines, lectures and teaching materials, all for their

own profit. [D1-1, ¶20, 29-30]  In fact, the Workbook and other infringing works were derived directly

from the copyrighted works of the North Carolina Board of Law Examiners, and were prepared and

published without the consent of the Board. [D1-1, ¶19-23]

Defendants' infringing activities began around 2001 [D1-1, ¶19-20], at a time when

dissemination of the bar examination questions was limited. [D1-1, ¶13]  In fact, until 2007, it was the

Board's policy to circulate copies of its bar examination questions only on a limited basis, and only

following the examination on which those questions had appeared. [D1-1, ¶13]  Not until the Board

discovered Defendants' widespread infringements, which unfairly advantaged applicants who paid large

fees to Defendants, did the Board commence--beginning with the February 2007 bar exam--publishing

bar examination questions on its own website. [*Id.*]

Defendants now attempt to escape culpability for their actions by asserting that the Board is not

authorized to obtain copyrights in the essay examination questions, and hence the copyright claim (Count

One of the complaint) must fail.  Defendants further request that if the copyright claim is dismissed, this

Court decline jurisdiction over the unfair competition claim contained in Count Two of the complaint, or

in the alternative dismiss it.

**ARGUMENT**

I.    **THE BOARD OF LAW EXAMINERS IS ENTITLED TO PROTECT THE ESSAY EXAMINATION FROM COPYING**

Defendants' arguments begin with a very basic error.  Specifically, Defendants argue with respect to Plaintiff's claim for copyright infringement that this lawsuit is a diversity action and that this Court, "as a federal court sitting in diversity," must attempt to predict how the North Carolina Supreme Court would rule. [D13 at ¶3]  As this Court is of course aware, copyright actions are not diversity actions and are instead within the exclusive jurisdiction of the federal courts. 28 U.S.C. §1338(a).  While state law may be instructive on some aspects of the case, to the extent it conflicts with the federal copyright law, the federal statute preemptively governs. 17 U.S.C. §301(a); *Patsy Aiken Designs, Inc.  v Baby Togs*, *Inc. et al.*, 701 F.Supp. 108 (E.D.N.C. 1988).

Defendants' error is understandable.  They have raised no substantive defense to the claim of copyright infringement, and cannot do so.  Their advertisement of their Workbook as comprising "reconstructed" bar examination questions [D1-1, ¶20] is itself an admission of copying and the admission is well-founded.  Their infringing works contain virtually exact copies of some questions along with close derivatives of others.  [D1-1, ¶19]  Thus, they attempt to avoid liability by raising the "red herring"[1] defense that the Board was without authority to obtain copyrights and hence to bring suit against them.

Questions of whether state agencies in general are authorized to protect the copyrights in their work can await another day.[2]  The question before this Court today is whether North Carolina's licensing

---

[1] While counsel express no opinion as to the merits of Judge Bea's dissent in *U.S. v Jernigan*, he provides a succinct reminder of the origins of the term "red herring."  A red herring was, in old England, "the smoked and smelly fish that poachers would trail on the ground, away from their game, to throw the owner's dogs off"—with the result, of course, that the poachers could escape with their ill-gotten gains.  492 F.3d at 1050 (9th Cir. 2007)

[2] Thus, for example, the question whether North Carolina has waived copyrights in global mapping (GIS) data, as apparently Florida has done (*see Microdecisions, Inc. v Skinner,* 889 So. 2d 871 (FL Dist Ct. App. 2004), awaits a case presenting such facts.  We do point out that North Carolina expressly includes GIS data within the ambit of "public record" but nonetheless permits local government entities to restrict its commercial publication in some circumstances:  "As a condition of furnishing an electronic copy, whether on magnetic tape, magnetic disk, compact disk, or photo-optical device, a county or city may require that the person obtaining the copy agree in writing that the copy will not be resold or otherwise used for trade or commercial purposes." *See,* N.C.G.S. §132-10. Hence the direct relevance of *Microdecisions* even to North Carolina's GIS data, is in doubt.

examinations for attorneys are, as Defendants argue, in the public domain. The answer is that they are not, and that the Board is entitled to pursue its claim against Defendants.

### A.    In the Absence of a Waiver by the State, the Board of Law Examiners is Entitled to Own Copyrights In Its Examinations

Defendants concede, as they must, that in the absence of any waiver by the State, copyright in the essay examination questions rests with the Board, since only works of the Federal government are exempt from copyright protection. ("Congress denied copyright protection to works of the United States government, 17 U.S.C. § 105 but did not similarly restrict state governments." [D13 at 3]) As explained by the Second Circuit Court of Appeals in a very similar case:

> Although the federal government does not possess a statutory right to obtain copyright protection for its works, 17 U.S.C. § 105, the Copyright Act is silent as to the rights of states or their subdivisions. Nor is there an indication in the statute that copyright ownership is limited to private persons. See 17 U.S.C. § 101 ("'Copyright owner,' with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right."); id. § 102 (noting simply that copyright protection subsists "in original works of authorship . . ."). By specifying a limitation on ownership solely against the federal government, the Copyright Act implies that states and their subdivisions are not excluded from protection under the Act. See Bldg. Officials & Code Adm. v. Code Tech., Inc., 628 F.2d 730, 735-36 (1st Cir. 1980) ("Works of state governments are therefore left available for copyright protection by the state or the individual author . . . ."); Nat'l Conf. of Bar Exam'rs v. Multistate Legal Studies, Inc., 495 F. Supp. 34, 35 (N.D. Ill. 1980), aff'd, 692 F.2d 478 (7th Cir. 1982); 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 5.06[A], at 5-81 n.1 (2001); cf. Real Estate Data, Inc. v. Sidwell Co., 809 F.2d 366, 371 (7th Cir. 1987) (indicating that, under the Copyright Act of 1909 "work-for-hire" doctrine, the county, which contracted for the production of tax maps, was presumed to be the copyright owner (rather than the creator of the maps)).

On the basis of this analysis, the Second Circuit found that Suffolk County was entitled to own copyrights in its tax maps, despite claims by an infringer that state subdivisions are precluded from such ownership. *County of Suffolk, NY v. First American Real Estate Solutions*, 261 F.3d 179 (2nd Cir. 2001). Likewise, the Board of Law Examiners, which has sufficiently alleged its ownership of the registered copyrights as well as their valid registration [D1-1, ¶14-16], is as a matter of federal law entitled to be their owner.

### B.    The Bar Examinations Have Not Been Injected Into the Public Domain by the Public Records Law and The Board of Law Examiners Possesses the Authority Needed to Protect its Examinations

Despite the clear grant of ownership by federal law, Defendants argue that the State of North Carolina has not delegated sufficient authority to the Board of Law Examiners to enable the Board to protect and assert its copyrights in the examinations it creates and administers.  Defendants claim that this is illustrated if not mandated by the state's public records law, which Defendants assert effectively thrusts North Carolina's bar examinations into the public domain.  Defendants are wrong.

Turning first to the public records law, on which Defendants most heavily rely, it is interesting that Defendants did not quote those portions of the statute establishing the Board of Law Examiners that deal with its exemption from that Act.  In pertinent part, N.C.G.S. §84-24 provides:

> For the purpose of examining applicants and providing rules and regulations for admission to the Bar including the issuance of license therefor, there is hereby created the Board of Law Examiners. …
>
> The examination shall be held in the manner and at the times as the Board of Law Examiners may determine.
>
> …
>
> The Board of Law Examiners shall have full power and authority to make or cause to be made such examinations and investigations as may be deemed by it necessary to satisfy it that the applicants for admission to the Bar possess the qualifications of…general fitness requisite for an attorney and counselor at law and to this end the Board of Law Examiners shall have the power of subpoena and to summon and examine witnesses under oath and to compel their attendance and production of books, papers and other documents and writings deemed by it to be necessary or material to the inquiry and shall also have authority to employ and provide assistance as may be required to enable it to perform its duties promptly and properly.  Records, papers, and other documents containing information collected and compiled by the Board or its members or employees as a result of investigation, inquiries, or interview conducted in connection with examinations or licensing matters, **are not public records** within the meaning of Chapter 132 of the General Statutes. [Emphasis added.]

The language chosen here was clearly intended to be all-encompassing and has been accepted as such for more than seven decades.  In the more than seventy years since the Board first was authorized, there is no case recording any challenge of any nature to the plain language of this statute or reporting that anyone has sought examination copies under the pretense that they were public records, and Defendants have cited no cases in support of their position.

The State has reinforced the plain language of the Board's authorizing statute with criminal penalties for those who attempt—successfully or otherwise—to obtain copies of the bar examinations without the Board's consent. N.C.G.S. §14-401.1 has been amended numerous times over the years, most recently in 1994, and currently reads as follows:

> **Misdemeanor to tamper with examination questions**
>
> Any person who, without authority of the entity who prepares or administers the examination, purloins, steals, buys, receives, or sells, gives or offers to buy, give, or sell any examination questions or copies thereof of any examination provided and prepared by law shall be guilty of a Class 2 misdemeanor. (1917, c.146, s.10; C.S., s. 5658; 1969, C.1224, s.3; 1991, c.360, s.2; 1993, c.539, s.271; 1994, Ex. Sess., c.24, s.14(c).) [Legislative history as reflected in the reported official statutes.]

When statutory authority expressly places in the hands of examination administrators the power to authorize, or withhold authorization for, the dissemination and copying of "examination questions…of any examination provided and prepared by law," it is difficult to understand how one could argue that the exercise of that authority is inconsistent with public policy.

It is axiomatic that the law is to be interpreted in a reasonable manner:

> "[C]ourts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense," State ex rel. Comm'r of Ins. v. North Carolina Auto. Rate Admin. Office, 294 N.C. 60, 68, 241 S.E.2d 324, 329 (1978), and "with full knowledge of prior and existing law," State v. Benton, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970).

*Rhyne v. K-Mart*, 358 N.C. 160 at 189, 594 S.E.2d 1 at 20 (2004). It would be nonsensical for examinations, intended to test applicants on their knowledge of the law, to be freely available in advance of the examination; and to the extent that the Board has in the past decided, or may in the future decide, to re-use any of its examinations, it would be nonsensical to vitiate the Board's decision by allowing members of the public unrestricted access to the documents. Thus, the enabling statute makes clear that bar examinations are not public records, and N.C.G.S. §14-401.1 allows the Board to authorize distribution of the examinations in its discretion, exempting only duly authorized recipients from criminal prosecution.

There is no need to speculate about why the State gave this authority to the Board. The choice of words that headline N.C.G.S. §14-401.1—"tamper with examination questions"—makes it clear that the State has decided to leave to the sound discretion of examination administrators when, and how, to allow access to their examinations in order to ensure the integrity of the examination and education processes. The alternative that Defendants postulate—that decisions as to access should be left to entities such as themselves, who have a clear interest in profiting from what they purvey as "inside information"[3] concerning the examination's content—is untenable.

The unique qualifications of the Board of Law Examiners to carry out their entrusted duties with respect to the bar examination and admission process have been affirmed over and over again. North Carolina's own courts repeatedly have pointed out that the Board has particular expertise that justifies entrusting it with administration of that admission process. The North Carolina Supreme Court underlined the confidence of the Legislature in the expertise of the Board of Law Examiners when it rejected a challenge to the Board's rules respecting approval of law schools:

> The Board, with its sixty years of experience, can apply its expertise to the issue in a manner which the General Assembly cannot.

*Bring v N.C. State Bar,* 348 N.C. 655, 501 S.E.2d 907 (1998). *Accord, In re Willis,* 288 N.C. 1, 215 S.E.2d 771 (1975); *Bowens v Board of Law Examiners*, 57 N.C. App. 78, 291 S.E.2d 170 (1982).

Judge Boyle of this honorable Court, and the Fourth Circuit, have pointed out that North Carolina has a substantial interest in the regulation of admission to the practice of law:

> The power of the courts of each state to establish their own rules of qualification for the practice of law within their jurisdiction, subject only to the requirements of the due process or equal protection clauses of the Fourteenth Amendment, is beyond controversy; in fact, it is a power in the exercise of which the state has "a substantial interest."

*Morrison v. Board of Law Examiners*, 453 F.3d 190 (4th Cir.), *cert. den,* 127 S.Ct. 1124, 166 L.Ed.2d 907 (2007). It is unthinkable that North Carolina would allow unregulated commercial enterprises to tamper with that process and to interfere with the decisions of the Board as to when and how to release the

---

[3] *See* Complaint [D1-1] at ¶20: Defendants advertise their access to, and ability to sell to those with sufficient funds, "over 100 reconstructed North Carolina Bar Examination Questions."

content of its examinations. There simply is no basis for Defendants' argument that the State intended to abrogate the Board's rights under federal law that are consistent with the intent of the State that the Board control distribution and copying of North Carolina's bar examinations.

Moreover, the Board's retention and exercise of its copyrights is consistent with the State's practice over many years. As Defendants correctly note, reference to "copyrights" in state law are few and far between. That does not mean, however, that agencies of the State have refrained from seeking copyright protection. For example, the North Carolina Department of Public Instruction's authority to seek copyright protection for examinations is nowhere mentioned in the statutes, yet as the official records of the United States Copyright Office reveal, it has obtained numerous registrations of examinations and in fact owns close to 300 copyright registrations. [*See*, Exhibit A attached hereto and incorporated herein by reference.] Numerous other State agencies, including other licensing boards, own copyright registrations even though their right to do so is not specifically mentioned in the statutes. [*See*, Exhibit B, attached hereto and incorporated herein by reference.] Far from representing an aberrant action, the Board's successful application for protection of the examinations it has a duty to control is consistent with State policy and practice, as well as with Federal copyright law.

In sum, while agencies of the State, like all copyright owners, can disclaim copyrights or refuse to take the action necessary to enforce them,[4] no such action was taken with respect to the essay examinations at issue and it is clear both from law, policy, and practice, that such was not and is not the State's intent. Accordingly, the Board is authorized to protect its copyrighted essay examinations from unauthorized use, and to seek such remedies as are provided by law from Defendants on account of their infringements.[5]

_____

[4] Registration of copyrights is a pre-requisite to enforcement, for citizens of the United States. 17 U.S.C. §411(a).
[5] Although not necessary to decision of this case, it should be noted that Defendants' interpretation of the Public Records Act is itself not well-founded. That is, even if the Board were subject to that Act, nothing in the Act would require that the Board do more than permit access to such records and provide a copy of them to Defendants at reasonable cost. Nothing in the Act permits Defendants then to engage in wholesale copying for their own private profit. *See, County of Suffolk, supra.* If the Board's examinations were public records, which they are not, then Defendants would have the right to obtain a copy of the examinations, and the Board would not be entitled to ask Defendants—at the time they obtained that copy—what they intended to do with it. This was the thrust of the

## II.    THE BOARD IS ENTITLED TO PROCEED ON COUNT TWO OF THE COMPLAINT

Defendants argue *first* that Count Two of the complaint should be dismissed because Count One cannot survive; *second,* that Count Two is preempted by federal copyright law and *third,* that Count Two fails to state a claim for which relief can be granted.

Defendants appear to concede that if the Court retains jurisdiction over the first count of the complaint, then the Court has and properly should assert pendent jurisdiction over the second count.  The Court does have such jurisdiction, as discussed above, and accordingly Defendants' first argument need not be further addressed.  Since determining what claim is stated by Count Two is a necessary prerequisite to evaluating whether that claim is preempted, Defendants' remaining arguments will be addressed in reverse order.

### A.    Plaintiff Has Sufficiently Pleaded A Claim Under N.C.G.S. §75-1.1

Three principal arguments underpin Defendants' allegation that Count Two has no basis sufficient to survive their Rule 12(b)(6) motion:

- Although Defendants are engaged in commerce within the State of North Carolina, the Board itself is not a "person, firm or corporation" entitled to bring suit under North Carolina's Unfair and Deceptive Trade Practices Act and hence lacks standing to do so;

- Although North Carolina's courts have held that business activities carried out in violation of the criminal statutes of North Carolina are unfair and deceptive trade practices, Defendants' misappropriation of bar examination questions and use of them for

---

Attorney General's opinion issued with respect to the right of companies other than The Michie Company to access the State's electronic copy if the General Statutes.  The opinion—as to reproduction—dealt solely with the right to reproduce the General Statutes.  *Advisory Opinion of the Attorney General as to Applicability of The Michie Company Copyright*, 1994 WL 1026122 (N.C.A.G.) [D12-2]  Whether and to what extent the State might be able to, or might choose to, restrict commercial reproduction of other data, outside the realm of statutes, was not at issue. *Id.*  When squarely confronted with that question, the only federal court to rule has decided that federal copyright protection attaches to public records as well as to private documents and that a right to public access does not automatically equal a commercial right to copy. *County of Suffolk, supra.*  That decision is consistent with North Carolina's Public Records Act, which states that "it is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost"—not that the purpose is to enrich commercial enterprises at the expense of individual citizens.  N.C.G.S. §132-1(b).  However, determination of the case now before this Court does not require interpretation of the Public Records Act.

their own private commercial activities does not fall within that principle and

Defendants' violation of N.C.G.S. §14-401.1 is not, therefore, any basis for a claim; and

- Defendants aren't sure why Plaintiff has alleged that Defendants concealed the true origin

  of their unlawful copies but believe that in any event such conduct does not state a claim

  for passing off or reverse passing off.

None of these arguments can survive scrutiny.

> *1.    Count Two Sufficiently Describes the Board's Standing and Meets the Pleading Requirements for a Claim Under N.C.G.S. §75-1.1*

Defendants improperly attempt to reverse the thrust of Chapter 75. The commercial activity at

which the statute is directed is that of Defendants, not the Board. Nothing on the face of the statute would

appear to support Defendants' unique theory:

> **§ 75-1.1 Methods of competition, acts and practices regulated; legislative policy.**
>
> (a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.
>
> (b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.
>
> (c) [Exempts those who publish advertisements without themselves having a financial interest in the advertised products and services]
>
> (d) **<u>Any party claiming to be exempt from the provisions of this section shall have the burden of proof with respect to such claim.</u>** [Emphasis added.]

Indeed, from a pleading perspective (which of course is the focus of a motion such as Defendants'

pursuant to Rule 12(b)(6) of the Rules of Civil Procedure), it is not necessary for Plaintiff to show that

any party comes within the provisions of this section; the burden is placed squarely on Defendants to

show that they are exempt. Of equal significance, the case law is replete with instances in which entities

that are not themselves engaged in business nonetheless are permitted to proceed and/or to recover against

defendants under N.C.G.S. §75-1.1. For example, in the case of *Governor's Club, Inc. v Governor's Club*

*Limited Partnership, et. al ,*152 N.C.App. 240, 567 S.E.2d 781 (2002), *aff'd per curiam*, 357 N.C. 46, 577

S.E.2d 620 (2003),[6] the court succinctly recited the requisite standard as follows:

> To establish a claim for unfair or deceptive trade practices under N.C. Gen. Stat.
> § 75-1.1 (2001), a plaintiff must show (1) **defendant** engaged in an unfair or
> deceptive practice or act, (2) "in or affecting commerce," and (3) such act
> proximately caused actual injury to the plaintiff. G.S. § 75-1.1; *see Pleasant
> Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 464 S.E.2d 47 (1995).
> [Emphasis added.]

152 N.C. App. at 250, 567 S.E. 2d at 788.  There simply is no requirement to show or allege anything

respecting the plaintiff's standing, including the plaintiff's commercial status and activities, except that

the plaintiff was harmed by acts of the defendant that either were committed in commerce or that affected

commerce.  *Id*.

        Plaintiff meets that test.  Plaintiff alleges that Defendants engaged in a variety of unfair or

deceptive practices or acts, as more specifically discussed below, that those acts were "in or affecting

commerce," and that they "caused harm to NCBLE in North Carolina…while resulting in substantial

profit to" Defendants. [D1-1 ¶31]

        It is true that the State and agencies of the State may not themselves be sued under N.C.G.S. §75-

1.1 on account of their own acts.  One, and only one, twenty-year-old case suggested that the rationale for

so holding is that the State is not a "person, firm or corporation" within the meaning of N.C.G.S. §75-16

(which provides that, "if any person shall be injured or any person, firm or corporation shall be broken up,

destroyed or injured…such person, firm or corporation so injured shall have a right of action…"). *Sperry

Corp. v Patterson*, 73 N.C.App. 123, 325 S.E.2d 642 (1985).  That case, however, was promptly

thereafter limited and application of it to the State in the role of <u>plaintiff</u> was expressly rejected.  Instead,

the proper inquiry is whether the State—like any other Chapter 75 plaintiff—has been the victim of

wrongful commercial acts of a defendant:

> …the proper interpretation of that case [*Sperry*] should be that the State is not a
> person, firm or corporation that can be sued under G.S. 75-16.  **The statute is**

---

[6] As indicated in the full title of the case, "*Governor's Club, Inc., a non-profit corporation…v……*" the plaintiff
here was a nonprofit organization.  It is perhaps interesting to note that the nonprofit plaintiff, who successfully
survived a 12(b)(6) motion with respect to its Chapter 75 claim, was represented by Defendants' current counsel.

**aimed at unfair and deceptive practice by those engaged in business for profit.** The State was not engaged in business in *Sperry*. [Emphasis added.]

*F. Ray Moore Oil Co. v State,* 80 N.C. App. 139, 142, 341 S.E.2d 371, 373 (1986). In other words, the State and its agencies are to be treated like other "persons"—when they suffer an injury on account of unfair and deceptive practices by those engaged in business for profit, they can sue.[7] Plaintiff expressly alleged injury caused by Defendants who were "engaged in commerce" and received "substantial profit" therefrom. [D1-1, ¶31]

North Carolina's courts have declined to restrict the authority of the State to sue as a plaintiff, and there is no statutory basis for doing so. Indeed, an expansive scope of interpretation is statutorily required under North Carolina's *Rules for Construction of Statutes*:

> In the construction of all statutes the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the General Assembly, or repugnant to the context of the same statute, that is to say:
>
> ….
>
> (6) "Person" and "Property". - **The word "person" shall extend and be applied to bodies politic** and corporate, as well as to individuals, unless the context clearly shows to the contrary. …

N.C.G.S. §12-3. Accordingly, the State and its agencies must be allowed, like any other aggrieved person, to bring suit for unfair and deceptive trade practices that cause them injury and Defendants' argument that the Board lacks standing to sue cannot survive.

> ### 2. *Plaintiff's Claim that Defendants Purchased or Through Other Unlawful Means Obtained the Board's Examination Questions in Violation of N.C.G.S. §14-401.1, and Profited Thereby, Sufficiently Alleges A Violation of N.C.G.S. §75-1.1*

Defendants, although reluctant to acknowledge their wrongdoing, have effectively functioned as "fences"—persons who solicit, receive, and sell property they had no right to possess.[8] It would seem

---

[7] Even if Defendants' mis-perception of the statute were correct, and commercial activity by the Board were required, the Board's Rules clearly disclose that the Board permits unsuccessful applicants to purchase from the Board, for a fee, a copy of the Bar Examination taken by them. *See*, Rules Governing the Admission to Practice Law in the State of North Carolina, Rule .1000, which reads in pertinent part, "1002 Fees. The Board will furnish an unsuccessful applicant a copy of the applicant's essay examination at a cost to be determined by the Secretary, not to exceed $20.00."

[8] Defendants' assertion that they did not "tamper" with the examination questions is inconsistent with the allegations of the Complaint. The Oxford Compact English Dictionary [attached as Exhibit C] defines "tamper" as "to interfere

that this receipt and resale of unlawfully acquired property, as alleged in the Complaint, is a commercial activity that indubitably falls within the scope of "unfair and deceptive acts in commerce," forbidden under N.C.G.S. §75-1.1.  Nonetheless Defendants, relying on *Kewaunee Scientific Corp. v. Pegram*, 130 N.C. App. 576, 503 S.E.2d 417 (1998), argue that their misconduct is not an unfair or deceptive practice in commerce because only violations of criminal statutes that "regulate commercial activity" constitute a violation of N.C.G.S. §75-1.1.[9]

The opinion of the court in *Kewaunee* was not restricted in the manner that Defendants suggest. Rather, the court began with the familiar litany as to the elements of a claim under N.C.G.S. §75-1.1:

> North Carolina's courts have interpreted these sections [G.S. 75-1.1, 75-16, and 75-16.1]as requiring three elements for a *prima facie* claim for unfair trade practices. "Plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995) (citations omitted). "If a violation of Chapter 75 is found, treble damages must be awarded." *Bhatti v. Buckland*, 328 N.C. 240, 243, 400 S.E.2d. 440, 442 (1991) (citations omitted).

130 N.C. App. at 518, 503 S.E.2d at 420.  Certainly, the court noted that earlier decisions had held violations of regulatory statutes governing business activities could in appropriate circumstances also violate N.C.G.S. §75-1.1; and the court also described the *Kewaunee* defendant's crime as "commercial bribery." *Id.*  The court did not, however, require a nexus between commerce and crime with respect to the <u>first</u> element of the *prima facie* test.  Instead, the court expressly held:

> Just as a violation of a regulatory statute can constitute an unfair and deceptive act, a violation of a criminal statute can constitute an unfair and deceptive act as well. Accordingly, we conclude that a violation of G.S. 14-353 should also be considered a violation of G.S. 75-1.1 as an unfair and deceptive trade practice.

*Id.* The question of the relationship between the crime and commerce properly awaited analysis when the second test was reached, and the court did indeed analyze it at that point:

---

with (something) without authority or so as to cause damage."  Interference in the form of taking, without authority, is precisely what the statute describes and prohibits, and is precisely what the Complaint alleges Defendants did.
[9] Defendants fail to define the parameters of such regulatory activity, and given the commercial importance of testing activities, it is not immediately clear why statutes regulating interference with the examination process would not be considered to "regulate commercial activity."  Such a finding is not, however, necessary.

As to the second element, the jury concluded and we agree that the acts were in and affecting commerce.

*Id.*  In other words, *Kewaunee* stands for the principal that criminal conduct, if it also affects commerce, is a violation of N.C.G.S. §75-1.1.

In the present litigation, the Complaint alleges that Defendants "offered to buy" and/or "bought" or otherwise "received," "in violation of N.C.G.S. §14-401.1," examination questions that they had no right to possess. [D1-1 ¶28]  Defendants then falsely described the copies of these unlawfully acquired products that they purveyed as "reconstructed" essay questions, implying that they were based merely on general concepts recalled by past bar applicants rather than on actual examination questions that had been purloined without permission from the Board. [D1-1 ¶20]  Defendants also affixed their own name to works that incorporated copies of the examination questions, that they then sold in commerce in North Carolina. [D1-1 ¶29]  Defendants profited substantially as a result of their unlawful acquisition [D1-1 ¶31], and there can be little doubt that the false marking of their products and false claims of authorship and copyright covered up and concealed their misconduct, assisting them in avoiding detection and hence continuing their profitable misconduct from around 2001 to the present. [D1-1 ¶¶19, 20, 29-31]

These allegations precisely meet the test set out in *Kewaunee* and elsewhere, and Defendants' argument to the contrary has no merit.

> 3.    *Far From Failing To State The Elements Of A Claim For "Reverse Passing Off" Plaintiff Has Sufficiently Alleged False Marking And Related Activities That Supported And Made Possible Defendants' Profiting From Its Criminal Actions, Thus Contributing To The Chapter 75 Claim*

Defendants misperceive the thrust of Plaintiff's allegations of false marking and mis-identification of the products and services they purveyed.  It may be that those activities caused buyer confusion as to origin and, if so, that may indeed create an additional basis for an entirely separate Chapter 75 claim and potentially additional federal claims as well.  The Court will be asked to permit amendment of the Complaint should this be discovered as the litigation proceeds, if amendment is necessary, and the parties can discuss at that time whether the proposed new claims add actionable subject matter to the complaint.  However, as currently pled, Plaintiff has adequately set out a pattern of

-14-

commercial deceit and concealment that has enabled Defendants to profit from their crime. *See*, Section 2 above.

### B.  Plaintiff's Claim Under Chapter 75 Is Not Preempted By Federal Law

Defendants argue that any claim of unfair and deceptive trade practices based in whole or in part on their violation of N.C.G.S. §14-401.1 and/or their false marking of the goods and services they marketed is preempted by the federal copyright law.  Their argument is undergirded by their characterization of the violation in which they engaged as consisting only of copying the examinations and distributing those copies to the public.  Defendants are, of course, correct that if that were their only wrongdoing, then North Carolina law would not be permitted to provide additional remedies.  This is because 17 U.S.C. §301(a) provides:

> On or after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103…are governed exclusively by this title.  Thereafter, no person is entitled to any such right or equivalent in any work under the common law or statutes of any State.

The right "to reproduce the copyrighted work in copies" and the right "to distribute copies…of the copyrighted work to the public by sale or other transfer of ownership" each are among the exclusive rights protected under 17 U.S.C. §106, and hence come within the scope of preemption.

Section 301, however, expressly provides that not all causes of action involving works of authorship and copyrighted works are preempted.

> Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—
>
> …
>
> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106;
>
> …

17 U.S.C. §301(b)  Thus, the issue before the Court is to determine whether the activities with which Defendants are charged in Count Two are, or are not, "equivalent to any of the exclusive rights" provided

under section 106 of the Copyright Act.  Review of the allegations compels the conclusion that they are not equivalent, and that Plaintiff's claim is therefore not preempted.

As discussed above, Defendants' misconduct is akin to that of a fence who has received ill-gotten goods and has distributed them, cloaking his misconduct by disguising the nature or origin of the stolen goods.  Paragraph 17 of the Complaint, incorporated by reference into Count Two, recites that Defendants did not receive copies of the bar examination by authority of the Board. [D1-1, ¶17, 18]  Subsequent paragraphs of the Complaint recite that despite not having received copies of the bar examination lawfully, Defendants nonetheless have reproduced and used such copies, creating and vending a plethora of infringing works from which they have profited, all without the consent of the Board. [D1-1, ¶19-23]  The complaint further recites that Defendants passed off their work in some instances as based on "reconstructed" bar examination questions [D1-1, ¶20] and falsely claimed that all of it was their own work, falsely designating the origin of the infringing works, concealing their wrongful actions behind claims of their own authorship on the materials they distributed and even on applications for federal copyright registration. [D1-1, ¶29]

Theft is not within the scope of section 106 of the Copyright Act, nor equivalent to the protections provided by that section.[10]  Otherwise, states could not prosecute those who take books from bookstores, for example—clearly an absurd proposition.  Similarly in *Rice v. Palladin*, our Fourth Circuit Court of Appeals held that an author who published a book describing how to be a "hit man" could be held liable to the survivors and estate of someone killed according to its precepts, and did not raise copyright preemption as a potential bar although the acts of the author could have been described as consisting of no more than publishing a book, nor did the Court allow claims that the First Amendment permitted such speech to prevail. *Rice v. Palladin,* 128 F.3d 233 (4th Cir 1997), *cert. denied,* 523 U.S.

---

[10] Defendants have cited the Court to the Board's website, from which they state copies of the Board's bar examinations can be downloaded.  A copy of the website page to which they refer is attached as Exhibit D.  It is evident that the Board controls both who can obtain copies of the examination in this manner, and the conditions under which they can obtain copies, including acceptance of a contract that prohibits commercial use of the copies.  In any event, there is no evidence, and the Board does not believe there ever will be evidence, that Defendants' copies of the bar examination were obtained from the Board's website.  The complaint alleges that (a) the misconduct began in 2001 and (b) copies were not made available on the Board's website until 2007. [D1-1 ¶19, 13]

1074 (1998).  Likewise, in *Comprehensive Technologies Intern., Inc. v Software Artisans, Inc.*, 3 F3d 730 (4th Cir 1993), the Fourth Circuit pointed out that trade secrecy and copyright claims can coexist and that "directly copying the trade secret computer program of another is the most basic form of misappropriation," for which a plaintiff is entitled to seek remedies under both trade secret and copyright law. *Id.* at 736, n.7.  It should be clear that preemption does not apply merely because a claim involves a copyrighted work and its misuse.

Here, Defendants obtained copies of a high stakes examination—the examination that lawyers must pass in order to become licensed in the State of North Carolina.  Because use of examinations in ways outside the control of the examining authorities has the potential to impact exam results, examination testing protocol, the ways in which questions are written, the options available for preparation and administration of future examinations, and other aspects of the examination process, North Carolina's legislature chose to give special and heightened protection to those examinations by forbidding such tampering.[11]

Section 106 of the Copyright Act does not deal with the manner in which persons obtain copies of protected materials.  Its focus is on the right of the copyright owner to control reproduction and distribution of protected works. 17 U.S.C. §106.  On the other hand, the gravamen of the state criminal statute is protecting the integrity of the state's examination procedures.  For purposes of that statute, one who without authorization purchases copies of examination questions merely for the purpose of knowing or recounting to others the subjects covered would be an offender.  The act of copying is not an intrinsic part of the offense.  In the Board's complaint, for example, there is an allegation that Defendants caused lecturers to "use" the fruits of its unlawfully accessed examinations, obviously to inform students about the content of the examination. [D1-1, ¶22]  Such use is independent of copying, and would be a violation whether the lecturers made copies of the bar examinations or not.  Thus, claims of unfair and deceptive

---

[11] Regulation of examinations has clearly been given substantial importance by North Carolina's legislature. Accordingly, even if certain portions of 14-401.1 might be unconstitutional, which is not conceded, this Court may nonetheless enforce the remaining portions and should take the course that "least destroys the regulatory scheme" that North Carolina has put in place to control the integrity of examinations given under its authority. *Beskind v Easley*, 325 F.2d 506, 519 (4th Cir 2006).

trade practices based on violations of that statute are inherently outside the scope of section 106, and are not preempted.

Moreover, even if N.C.G.S. §14-401.1 were within the general scope of section 106, proof of its violation requires proof of an extra element, not needed to prove copyright infringement.  In such cases, there is no preemption.  *See, Patsy Aiken, supra*, 701 F.Supp. at 110.  The North Carolina statute contains an "extra element" of proof:  the examinations received by Defendants "without authority" each must be an "examination provided and prepared by law."  N.C.G.S. §14-401.1.  Thus, akin to the requirement that a plaintiff show why a copied trade secret qualifies as such, plaintiff here must show that its examinations are "provided and prepared by law" and that their use of the examinations was "without authority."[12] This extra element, in and of itself, takes Plaintiff's claim for unfair and deceptive trade practices outside the scope of federal preemption.

While certainly not controlling for a district court in North Carolina, this Court should know that at least three cases, in three different districts, have held that litigation under analogous statutes is not preempted by the Copyright Act.  *See*, *Educ. Testing Service v. Simon*, 95 F. Supp. 2d 1081, 1091 (C.D.Cal. 1999) and *Nat'l Conf of Bar Examiners v Multistate Legal Services, Inc.*, 458 F. Supp. 2d 252, 262 (E.D.Pa. 2006); and an unpublished case (attached as Exhibit E), *Nat'l Conf of Bar Examiners v Saccuzzo*, Not Reported in F.Supp.2d, 2003 WL 21467772 (S.D.Cal. 2003); Cal. Bus. & Prof. Code §§ 123 & 7200 (attached at Exhibit F).  Counsel is aware of no case in which a court has held that such claims were preempted by federal copyright law.

Here, Defendants not only have engaged in a violation of N.C.G.S. §14-401.1, as discussed above, but also have engaged in conduct that had the effect of "covering their trail."  These attempts to disguise what they did—regardless of whether they resulted in confusion—add to the deceptive conduct in which they engaged and further differentiate the claim here from one under the Copyright Act.  Defendants' misconduct is akin to the fraudulent tort of "palming off" in its deceptive nature, *cf. Patsy Aiken Designs, Inc. v Baby Togs, Inc. et al*, 701 F. Supp 108, 111 (E.D.N.C. 1988), and inherently

---

[12] Plaintiff has included an allegation to that effect in its complaint. [D1-1 ¶¶2, 9, 27]

facilitated Defendants' violations of the criminal statute and concealment of that violation. *See also, Lyons Partnership L.P. v. Morris Costumes, Inc.* 243 F.3d 789, 805 (4ᵗʰ Cir. 2001).

Thus, Plaintiff is entitled to proceed with respect to its claim for unfair and deceptive trade practices as alleged in Count Two of the complaint.

## CONCLUSION

For all the foregoing reasons, Plaintiff prays that Defendants' motion to dismiss be denied and that this case proceed forward on both Counts. If the Court should for any reason find that an element required to set forth a *prima facie* claim as to any Count has been insufficiently pleaded, then Plaintiff respectfully moves the Court to permit it a reasonable time following the Court's Order within which to amend its Complaint before entering any final dismissal of any Count or claim.

Respectfully submitted this 4ᵗʰ day of October, 2007.[13]

/s/ James R. Van Camp
        NC Bar #4646
VAN CAMP, MEACHAN & NEWMAN, PLLC
Attorneys for Plaintiff

2 Regional Circle
PO Box 1389
Pinehurst, NC 28374
Telephone: (910) 295-2525
Fax: (910) 295-1520
Email: jamesv@vancamplaw.com

/s/ Susan Freya Olive,
        NC Bar #7252
OLIVE & OLIVE, P.A.
Attorneys for Cross-Defendant

500 Memorial Street
PO Box 2049
Durham, NC 27702-2049
Telephone: (919) 683-5514
Fax: (919) 688-3781
Email: EmailboxEDNC@oliveandolive.com

---

[13] Counsel have taken note of Defendants' comment [D13 at 2] that the Board is represented by two of its own members rather than by the State's Attorney General. Counsel did consult with the Attorney General's office prior to proceeding and were advised that the Board was authorized to do so. The fact that the Board, which is entirely funded by the fees of applicants, chose to proceed with counsel whose credentials they feel are appropriate for this litigation and whose fees can be deferred until Defendants must pay them, rather than to pay for representation by the Department of Justice as would be required pursuant to N.C.G.S. §114-8.2, has no relevance to this lawsuit.

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this date the foregoing document, together with any and all attachments thereto, was filed electronically with the Court using the CM/ECF system which will send notice of this filing electronically to Defendants, represented by the following counsel of record:

> John F. Morrow, Jr.
> Sean E. Andrussier
> Hampton Dellinger
> Womble Carlyle Sandridge & Rice, PLLC
> One West Fourth St.
> Winston-Salem, NC 27101
> jmorrow@wcsr.com
> sandrussier@wcrs.com
> hdellinger@wcsr.com

This 4th day of October , 2007.

> /s/ Susan Freya Olive
>      N.C. State Bar No. 7252
> OLIVE & OLIVE, P.A.
> 500 Memorial Street
> PO Box 2049
> Durham, NC 27702-2049
> Telephone: (919) 683-5514
> Fax:  (919) 688-3781
> Email: EmailboxEDNC@oliveandolive.com