IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:07-cv-00210-H

| | |
|---|---|
| BOARD OF LAW EXAMINERS, also known as North Carolina Board of Law Examiners and as The Board of Law Examiners of the State of North Carolina,<br><br>Plaintiff,<br><br>vs.<br><br>WEST PUBLISHING CORPORATION and THE THOMSON CORPORATION,<br><br>Defendants. | BRIEF *AMICUS CURIAE* OF THE NORTH CAROLINA PRESS ASSOCIATION, INC., THE NORTH CAROLINA PRESS FOUNDATION, INC. AND THE NORTH CAROLINA OPEN GOVERNMENT COALITION, INC. |

For the reasons set forth below, the North Carolina Press Association, Inc., the North Carolina Press Foundation, Inc. and the North Carolina Open Government Coalition, Inc. respectfully urge this honorable court to grant the defendants' Motion to Dismiss the plaintiff's claims on the grounds that (1) allowing the plaintiff to pursue its claims would be inconsistent with and seriously undermine the North Carolina Public Records Law and the public policy embodied therein; (2) the plaintiff lacks standing or authority to bring this lawsuit, or any other, in its own name; and (3) the plaintiff is not authorized to assert, register or own copyrights in the works that are the subject matter of this action.

## ARGUMENT

I.     ALLOWING THE PLAINTIFF'S CLAIM TO PROCEED WOULD BE INCONSISTENT WITH AND WOULD DO GREAT VIOLENCE TO THE NORTH CAROLINA PUBLIC RECORDS LAW.

In Section I of their Memorandum in Support of Motion to Dismiss the defendants explain that the Board of Law Examiners has not been authorized by the General Assembly to own or

Dockets.Justia.com

enforce the copyright registrations[1] that are the subjects of their complaint and that to read such authority into the limited powers accorded the Board by G.S. § 84-24 would fly in the face of North Carolina's strong public policy in favor of open government records that is embodied in the state's Public Records Law. The defendants' memorandum spells out their analyses and arguments concerning these issues eloquently and convincingly, so there is no need for *amici* to repeat or belabor them here. Suffice it to say at the outset that *amici* wholeheartedly endorse each of the points raised by the defendants and commend them to the court unreservedly. *Amici* do, however, invite the court to consider the following additional points concerning the relationship between the plaintiff's claims and the North Carolina Public Records Law.

> A.    A ruling that state and local government agencies may copyright public documents in the absence of express legislative authority would wreak havoc on the Public Records Law.

The Public Records Law is not popular with many public officials. Compliance is far from universal. Lobbyists for public agencies repeatedly ask the General Assembly to write in exceptions and exemptions. And owing to the wide array of tactics, interpretations and arguments that public officials and agencies deploy in their efforts to avoid complying with the law, the law engenders a substantial amount of litigation in which our courts are required to declare whether particular records or categories of records are or are not public records. The overwhelming majority of these cases are initiated by corporate or individual citizens. For example, in the last seven years alone North Carolina's appellate courts have issued decisions in *News Reporter Co. Inc. v. Columbus County,* _____ N.C. App. _____, 646 S.E.2d 390 (2007); *News & Observer Pub. Co. v. Easley,* _____ N.C. App. _____, 641 S.E.2d 698, *disc. rev. denied,* 361 N.C. 429, 648 S.E.2d 508 (2007); *Womack Newspapers, Inc. v. Town of Kitty Hawk,* _____ N.C. App. ___, 639 S.E.2d 96 (2007); *Carter-Hubbard Pub. Co. v. WRMC Hospital Operating Corp.,* 178 N.C. App. 621, 633 S.E.2d 682 (2006), *affirmed,* 361 N.C. 233, 641 S.E.2d 301

---

[1]  Although the registrations listed in the complaint purport to apply to examinations given as long ago as February, 1982, this court may judicially notice that according to the United States Copyright Office's Public Catalog all of them were filed in January 2007.

(2007); *Knight Pub. Co. v. Charlotte-Mecklenburg Hosp. Auth.,* 172 N.C. App. 486, 616 S.E.2d

602 (2005); *Chatfield v. Wilmington Housing Finance and Development, Inc.,* 166 N.C. App.

703, 603 S.E.2d 837 (2004); *City of Burlington v. Boney Publishers, Inc.,* 166 N.C. App. 186,

600 S.E.2d 872 (2004); *McCormick v. Hanson Aggregates Southeast, Inc.*, 164 N.C. App. 459,

596 S.E.2d 431 (2002), *disc.rev. denied and appeal dismissed,* 359 N.C. 69, 603 S.E.2d 131

(2004); *Boney Publishers, Inc. v. Burlington City Council,* 151 N.C. 651, 566 S.E.2d 701, *disc.

rev. denied,* 356 N.C. 297, 571 S.E.2d 221 (2002); *Multimedia Publishing of N.C. v. Henderson

County,* 145 N.C. App. 365, 550 S.E.2d 846 (2001); and *Multimedia Publishing of N.C. v.

Henderson County,* 136 N.C. App. 567, 525 S.E.2d 786, *disc. rev. denied,* 351 N.C. 474, 543

S.E. 2d 492 (2000).

 If this court were to allow the plaintiff's copyright claim to proceed, public officials

instantly would have at their disposal still another weapon to deploy in their continuing efforts to

avoid and undermine the Public Records Law.  Some public officials inevitably would seize on

such a ruling and begin registering copyrights in public documents in order to curtail or thwart

public access and to assert control over public information that currently is denied to them by

the Public Records Law.  In short, such a ruling would render the Public Records Law impotent

and eviscerate the public policy that it embodies.

  B. North Carolina's appellate courts repeatedly have held that in order to
effectuate the open government policies embodied in the Public Records
Law and other "sunshine laws," such statutes must be construed broadly
and the exemptions and exceptions to them must be construed narrowly.

 The Public Records Law and the North Carolina Open Meetings Law embody North

Carolina's strong public policy favoring openness in government.  To effectuate that policy,

North Carolina's appellate courts repeatedly have prescribed that in cases involving the

construction of either of these "sunshine statutes" the usual rules of statutory construction are

reversed, so that their fundamental provisions must be construed and applied liberally, whereas

exceptions or exemptions are to be construed strictly and applied narrowly.  In determining

whether the plaintiff has been authorized to register and enforce copyright, and resolving the inherent conflict between the plaintiff's putative claims and the Public Records Law, this court must apply these principles of construction.  *See S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1088 (9th Cir. 1989) ("we rely on state law to provide cannons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy"); *see also Fantastic Fakes, Inc. v. Pickwick Intern., Inc.,* 661 F.2d 479, 482-83 (5th Cir. 1981) (state law governs construction so long as it does not conflict with federal law).

No fewer than three N.C. Supreme Court cases and seven N.C. Court of Appeals cases have recognized the principle that open government laws should be construed liberally in favor of access and that exemptions should be construed narrowly.  *Maready v. City of Winston-Salem,* 342 N.C. 708, 730, 467 S.E.2d 615, 629 (1996) ("Those seeking exemption have the burden of establishing that an exception embraces their action.  Such exceptions should be strictly construed") (internal citations omitted); *News and Observer Publishing Co. v. Poole,* 330 N.C. 465, 475, 412 S.E.2d 7, 13 (1992) ("By enacting the Public Records Act, 'the legislature intended to provide that, as a general rule, the public would have liberal access to public records'") citing *News and Observer Publishing Co. v. State ex rel. Starling,* 312 N.C. 276, 281, 322 S.E.2d 133, 137 (1984)("[I]t is clear that the legislature intended to provide that, as a general rule, the public would have liberal access to public records."); *McCormick,* 164 N.C. App. at 469, 596 S.E.2d at 437 ("[T]he statutory protection for privileged information is more narrow than the traditional common law attorney-client privilege"); *Gannett Pac. Corp. v. N.C. State Bureau of Investigation,* 164 N.C. App. 154, 156, 595 S.E.2d 162, 163 (2004) (recognizing a "broad right of access to records in the possession of public agencies and their officials") (internal citation omitted); *Boney Publishers,* 151 N.C. App. at 655 and 658, 566 S.E.2d at 704 and 706 ("We believe exceptions to the operation of open meetings laws must be narrowly construed," and "this Court is compelled to construe narrowly exceptions to the operation of [the open meetings] laws."); *Multimedia Pub. of N.C.,* 136 N.C. App. at 575, 525 S.E.2d at 791 ("[I]n

light of the general public policy favoring open meetings, the attorney-client exception is to be construed and applied narrowly."); *H.B.S. Contractors, Inc. v. Cumberland County Bd. of Educ.*, 122 N.C. App. 49, 54, 468 S.E.2d 517, 521 (1996)(Construing the meaning of administrative procedure, court found appellant's interpretation would "be wholly inconsistent with the legislative intent behind the Open Meetings Law--to promote openness in the daily workings of public bodies—[and] would also superimpose an overly broad definition of 'administrative procedure' which is clearly inconsistent with the overall context of the statute."); *Advance Publications, Inc. v. City of Elizabeth City*, 53 N.C. App. 504, 506-07, 281 S.E.2d 69, 70-1 (1981)("[g]ood public policy is said to require liberality in the right to examine public records") (internal citation omitted); *News & Observer Pub. Co. v. Interim Bd. of Educ. for Wake County*, 29 N.C. App. 37, 47, 223 S.E.2d 580, 586-87 (1976)("[C]ourts of other states have held that exceptions to their open meeting statutes allowing closed meetings must be narrowly construed since they derogate the general policy of open meetings. . . . We are convinced that these principles are sound; that exceptions to our open meetings law should be strictly construed and that those seeking to come within the exceptions should have the burden of justifying their action") (internal citations omitted).

Because copyrights permit their owners to limit and control the distribution and use of documents, they are in derogation of the Public Records Law. Therefore, the rules of construction outlined above mean that the plaintiff cannot survive the defendants' Motion to Dismiss unless it can demonstrate that it is clearly and unequivocally authorized to place its documents and records beyond the reach of the Public Records Law by copyrighting them. As the defendants' brief clearly explains, the Board cannot carry this burden because the General Assembly has given it no such authority.

      C.      The plaintiff is not exempt from the Public Records Law.

In § I(B) of its Response to Defendants' Motion to Dismiss, the Board asserts that it is exempt from the Public Records Law. It is not. The most cursory reading of the portions of

G.S. § 84-24 cited by the Board demonstrates that only those records that the Board compiles in the course of "investigations, inquiries, or interviews" are exempt from application of the public records law.  Rather than supporting the Board's position, this limited exemption indicates that all **other** documents made or received by the Board **are** public records.  The clear purpose of the General Assembly's language was to exempt certain, limited records that would otherwise be Public Records under North Carolina law.

The Board's reliance on the "anti-tampering" language of G.S. § 14-401.1 is similarly misplaced.  As the Board tacitly acknowledges, that statute clearly is designed to protect the integrity of the bar exam *in advance of the examination*.  Once the exam is given, however, the essay question cats are out of the Board's bag and enter the public domain.[2]

II.    THE BOARD OF LAW EXAMINERS IS NOT AUTHORIZED TO BRING THIS LAWSUIT, OR ANY OTHER, IN ITS OWN NAME.

In § III(B)(1) of defendants' Memorandum in Support of Motion to Dismiss, they argue that the plaintiff lacks standing or authority to pursue an unfair or deceptive trade practices claim.  With respect, *amici* believe that the defendants' arguments on this point do not go far enough, because the Board of Law Examiners does not have standing or authority to bring **any** lawsuit of any kind in its own name.

A.    The General Assembly has not authorized the Board to sue or be sued in its own name.

It is axiomatic that every board, commission or agency of the State other than the State Board of Education[3] is a creation of the legislature and possesses only such powers and authority as are expressly granted by the General Assembly, or that are necessarily implied

---

[2] Indeed, the principal author of this brief still has the examination booklet from the North Carolina Bar Examination that he took in 1968.

[3] The State Board of Education is created by Article IX, § 4 of the North Carolina Constitution.

from the language of the legislative grant of authority. [4] *See In re Broad and Gales Creek Community Ass'n,* 300 N.C. 267, 280, 266 S.E.2d 645, 654 (1980). In many instances the General Assembly has seen fit to designate such subordinate agencies as "bodies corporate" or "bodies politic" and to grant them broad powers, including the authority "to sue and to be sued" in their own names. *See, e.g.,* G.S. § 58-37-35(g)(1) (North Carolina Motor Vehicle Reinsurance Facility); G.S. § 63-83(4) (Special Airport Districts); G.S. § 63A-4(a)(1) (Global Transpark Authority); G.S. § 77-112(c)(4) (River Basins Advisory Commissions); G.S. § 106-530(1) (North Carolina Agricultural Marketing Authority); G.S. §113-315.29(1) (North Carolina Seafood Industrial Park Authority); G.S. § 116-3 (University of North Carolina); G.S. § 116-204(7) (State Education Assistance Authority); G.S. § 122A-5(17) (North Carolina Housing Finance Agency); G.S. § 122D-6(1) (North Carolina Agricultural Finance Agency); G.S. § 130A-353(a) (Mosquito Control Districts); G.S. § 136-89.183(a)(1) (North Carolina Turnpike Commission); G.S. § 143B-426.11(1) (North Carolina Public Telecommunications Commission); G.S. § 162A-36(a)(4) (Metropolitan Water Districts).

By contrast to these and many other examples in which the General Assembly has granted broad corporate powers to subordinate state agencies, the enabling legislation creating the Board of Law Examiners, G.S. § 84-24, authorizes the Board to do only two things: (1) to examine the character and fitness of applicants for the Bar, and (2) to provide rules and regulations for admission to the Bar and the licensing of attorneys. The enabling statutes listed above, and many others like them, demonstrate that the General Assembly clearly knows how to grant a state agency broader powers and authority if it chooses to do so; therefore, the fact that the Board's powers are specific and narrow must be construed as evincing the legislature's intention to limit the Board's authority.

---

[4] In § I(A) of its Response to Defendants' Motion to Dismiss the plaintiff stands this fundamental precept of North Carolina law on its head by arguing that it (and, presumably, every other state agency) possesses the right to register and own copyrights in the absence of an express "waiver" on the part of the State.

The fact that the Board is not authorized to sue or be sued in its own name does not mean, of course, that it cannot protect its *bona fide* interests by instituting a lawsuit. It does mean, however, that any such suit is an "ex rel." proceeding in which the State acts for the Board and in which the Board must either be represented by the Attorney General or must obtain permission from the Attorney General and the Governor before retaining private counsel.

In North Carolina, the general rule is that absent specific enabling legislative language to the contrary, state agencies may not bring a claim through counsel independent of the Attorney General unless so directed by the Governor. *See* G.S. § 114-2(1) (Attorney General shall represent the State in all court proceedings); § 114-2.3 (state agencies must obtain written permission from the Attorney General prior to retaining private counsel) and §147-17 (state agency may not retain counsel without approval of the Governor and Attorney General's determination that it is impracticable for him to represent the agency). *See also Martin v. Thornburg*, 320 N.C. 533, 546, 359 S.E.2d 472, 479 (1987) (Attorney General has statutory and common law duty "to appear for and to defend the State or its agencies in all actions in which the State may be a party or interested").

In view of the foregoing, the Board's suit is defective for two reasons. First, the Board has no standing, because it has sued in its own name without authorization by the General Assembly. Second, the Board is represented by private counsel, but its papers do not indicate that it obtained written permission from the Attorney General or approval from the Governor prior to retaining such counsel.

III.    THE FACT THAT OTHER STATE AGENCIES HAVE REGISTERED COPYRIGHTS IN THE ABSENCE OF LEGISLATIVE AUTHORITY DOES NOT ESTABLISH A STATE POLICY OR VALIDATE THE BOARD'S ACTIONS.

In its Response to Defendants' Motion to Dismiss, and Exhibits A and B, the Board seeks refuge in the fact that the North Carolina Department of Public Instruction and other state agencies have registered copyrights. The Board does not argue that the General Assembly has

authorized any of these agencies to register copyrights, nor could it, because a review of their respective enabling statutes discloses no such authorization.  The Board's assertion that these registrations evidence "State policy" is simply wrong; as explained above and in Defendant's brief, in North Carolina "State policy" with respect to public records is the exclusive province of the General Assembly.  Multiple wrongs do not make a right, and state agencies do not and cannot establish "State policy" by habitually exceeding their authority.

IV.    THE SECOND CIRCUIT DECISION CITED BY THE BOARD IS INAPPOSITE.

The Board's Response cites *County of Suffolk, NY v. First American Real Estate Solutions*, 261 F.3d 179 (2d Cir. 2001) for the unexceptional proposition that a state agency may own copyrights.  *Amici* do not dispute that the Board *could* register and own copyrights – but only if the General Assembly were to give it such authority, which it has not done.  A careful reading of the Second Circuit's decision in the *County of Suffolk* case makes it plain that the court assumed that the county had an inherent right to register and own copyrights, and that it looked at New York's Freedom of Information Law from the standpoint of whether the FOIL "abrogated" that pre-existing right.  As explained above and in the defendants' memorandum in support of their Motion to Dismiss, however, North Carolina's Public Records Law must be viewed through the other end of the telescope: by declaring that the records "made and received" by public agencies are the property of the people, our law requires this court to determine whether the General Assembly has abrogated the *public's* right by authorizing the Board to copyright its records.  This is the approach taken by the Florida courts in *Microdecisons, Inc. v. Skinner,* 889 So.2d 871 (Fal. Dist. Ct. App. 2004), *rev. denied,* 902 So.2d 791 (Fla. 2005), *cert. denied,* 126 S.Ct. 746 (2005).

V.    THE PUBLIC RECORDS LAW ALLOWS REQUESTERS TO USE PUBLIC RECORDS FOR COMMERCIAL PURPOSES.

In footnote 5 of its Response, the Board asserts that even if its examination questions are public records it can curtail or prevent their use for commercial purposes because "nothing

in the Act permits Defendants . . . to engage in wholesale copying for their own private profit."
The Board is mistaken.   As pointed out in the defendants' brief, in G.S. § 132-6(b) the Public
Records Law expressly prohibits a public agency from requiring requesters to disclose their
purpose or motive in acquiring copies of public records, and the Attorney General has plainly
interpreted the law as prohibiting public agencies from placing any restrictions or conditions on
their use.  Op. Att'y Gen. N.C., 1994 WL 1026122 (March 16, 1994).  Insofar as *amici* are
aware, the only exception is the one cited by the Board in footnote 2 of its Response: GIS data,
the commercial use of which is restricted by G.S. § 132-1.  Again, this singular exception
disproves, rather than supports, the Board's interpretation.

VI.    CONCLUSION

For the reasons set forth above, *amici* respectfully urge this court to protect the North
Carolina Public Records Law by granting the defendants' Motion to Dismiss.

Respectfully submitted this the 16th day of October 2007.

EVERETT, GASKINS, HANCOCK & STEVENS, LLP

By: /s/ Hugh Stevens
Hugh Stevens
N.C. State Bar No. 4158
C. Amanda Martin
N.C. State Bar No. 21186
Michael J. Tadych
N.C. State Bar No. 24556
Attorneys for *Amici*
127 West Hargett Street, Suite 600 (27601)
P.O. Box 911
Raleigh, NC 27602
919 755 0025
919 755 0009 (facsimile)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing pleading with the clerk of court using the CM/ECF system which will send notification of such filing to the following:

Susan Freya Olive (EmailboxEDNC@oliveandolive.com)
James R. Van Camp (jamesv@vancamplaw.com)
John F. Morrow, Jr. (jmorrow@wcsr.com)
Sean E. Andrussier (sandrussier@wcsr.com)
Hampton Dellinger (hdellinger@wcsr.com)

Respectfully submitted this the 16th day of October 2007.


/s/ Hugh Stevens
Hugh Stevens