IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:07-cv-00210-H

| | |
|---|---|
| BOARD OF LAW EXAMINERS, also known as North Carolina Board of Law Examiners and as The Board of Law Examiners of the State of North Carolina,<br><br>                 Plaintiff,<br>vs.<br><br>WEST PUBLISHING CORPORATION and THE THOMSON CORPORATION,<br><br>                 Defendants. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS (Fed. R. Civ. P. 12(b)(6))** |

## INTRODUCTION

The Board denies this is an "aberrant action," yet Defendants' counsel has been unable to find a single case where a copyright infringement action was filed by an agency of the State. The Board also suggests its exercise of copyrights is consistent with its historical practice, but it appears that, in the Board's 70-plus-year history, it had never registered a copyright *until this year*.[1] To make matters worse, the Board is branding as *criminal* a reputable business which for years has prepared thousands of law school graduates for bar exams. The Board's argument insinuates that essay questions were stolen, but the complaint rightly *alleges no such thing*, because it would be a lie; likewise, the complaint wisely does not allege that any questions were acquired or distributed *before* they appeared on actual exams, or that they were ever *reused* by the Board. Rather, the complaint alleges infringement of *already used* questions.

---

[1] The complaint references the Board's copyright registrations; thus, they may be considered under Fed.R.Civ.P. 10(c) without converting the motion into a summary judgment motion. *See* 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1327 at 763 (2d ed. 1990); *McCready v. eBay, Inc.*, 453 F.3d 882, 891-92 (7th Cir. 2006); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991). The registrations show that *all* the copyrights were registered in 2007, likely a precursor to bring this action. *See* http://www.copyright.gov/

I.  **THE GENERAL ASSEMBLY HAS NOT GIVEN THE BOARD THE POWER TO ENFORCE COPYRIGHTS, AND THAT IS THE END OF THE MATTER**

The copyright analysis is straightforward. Congress left it to the States to determine the extent to which they will permit copyrights to be asserted for works created on their behalf by their agencies and employees, *Bldg. Officials & Code Adm. v. Code Tech, Inc.*, 628 F.2d 730, 735-36 (1st Cir. 1980); therefore the issue is resolved by looking to state law.[2] Under North Carolina law, an administrative agency "may exercise its authority only as specifically delegated by the legislature." *County of Wake v. Dep't of Environ. & Nat. Res.*, 155 N.C.App. 225, 250, 573 S.E.2d 572, 589 (2002). Thus, the issue is whether North Carolina's General Assembly has authorized the Board to enforce copyrights in official works. It has not. Therefore, the Board may not assert copyrights. The Board's lack of explicit legislative authority to enforce copyrights should be the end of the matter. In this connection, two points bear emphasis. First, the General Assembly has been selective in choosing which agencies it has authorized to enforce copyrights; its selective approach reflects an intent not to permit agencies to assert copyrights absent explicit authorization. Second, in light of the Public Records Act, the Court should presume the State's agencies are not authorized to enforce copyrights absent specific legislative authorization.[3]

---

[2] Because it is an issue of state law, it must be resolved by predicting how the State's highest court would resolve it. The Board says Defendants make a "basic error" on this point, but it turns out the only error is the Board's assertion that Defendants believe this is a diversity action. Defendants clearly stated that this is *not* a diversity case. Defs'. Opening Br. 14 n.2 ("There is no diversity jurisdiction."). The Board misinterprets what Defendants meant on page 3 of their opening brief about diversity. Defendants are contending that, *as would* a federal court sitting in diversity, this Court must determine the core state law issue (whether the Board is authorized to enforce copyrights) by predicting how the state's highest court would decide it. The Board does not seem to refute that fundamental proposition (how else would an issue of state law be resolved?) but instead attempts to stir a controversy over diversity where none exists.

[3] *See Microdecisions, Inc. v. Skinner*, 889 So. 2d 871 (Fla. Dist. Ct. App. 2004), *rev. denied*, 902 So. 2d 791 (Fla. 2005), *cert. denied*, 126 S.Ct. 746 (2005). The Board cites a case decided under New York law, *County of Suffolk v. First Am. Real Estate Solutions*, 261 F.3d 179 (2d Cir. 2001). North Carolina has a broader right of access to public documents than does New York.

The Board counters that it (and presumably every agency) has copyright power so long as the General Assembly does not explicitly *waive* that power. The Board's premise—that an executive agency may exercise a power so long as it has not been *removed* by the legislature—turns North Carolina administrative law upside down. Under North Carolina law, an agency is a creature of statute; it has only those powers *granted to it* by the legislature.

The Board also argues that its exam questions are not public records within the meaning of the Public Records Act. First off, the Board misconstrues why Defendants invoked the Act. Defendants *never* argued that the Act puts the essay questions into the public domain, an issue which need not be decided. Rather, they invoked the Act to explain that, in light of the Act, the State's Supreme Court surely would hold that State agencies have no copyright enforcement authority absent specific legislative permission. That is a general legal presumption which should guide this case. It does not turn on whether the records *in this case* are public records.

That said, the Board is wrong to contend that essay questions fall within the public-records exemption in the Board's enabling statute, N.C.G.S. § 84-24. That exemption plainly is a *privacy-based* exemption, designed to protect personal information about applicants, not exam questions. The exemption is sandwiched between language authorizing the Board to interview witnesses and investigate criminal backgrounds and to make inquiries about the character and fitness of applicants. It excludes from the Public Records Act *only* those records "<u>containing information collected and compiled</u> ... <u>as a result of</u> investigations, inquiries, or interviews conducted in connection with examinations or licensing matters ...." N.C.G.S. § 84-24 (emphasis added). This privacy-based exemption is not reasonably interpreted to include essay questions produced by the Board; they contain no personal information "collected and compiled" as a result of "investigation, inquiries, or interviews."

At any rate, even if previously-used bar exam questions *were* exempt from the Public Records Act, it of course would not follow that the General Assembly has authorized the Board to avail itself of the incidents of *copyright ownership*—such as the right to assert an exclusive and perpetual monopoly over bar exam questions (as long as the agency exists), to prevent derivative works, to exact licensing fees, and to sue in federal court and recover statutory penalties (the Board's enabling statute does not authorize it to sue). These incidents of copyright ownership exist for a purpose absent here: providing a profit motive to spur creativity.

The Board also relies heavily on the criminal anti-tampering statute, N.C.G.S. § 14-401.1, which the Board glosses with the most expansive construction imaginable, covering *already-used* essay questions which were not re-used, and thus which were not used for *cheating*. But putting aside this dispute over the statute's scope, the State's regulation of exam questions, of course, does not mean the General Assembly has authorized the Board to avail itself of the incidents of *copyright ownership*. As explained above, even if the Board were authorized to restrict public access to exam questions, that does not necessarily lead to the conclusion that the Board has been authorized to exercise the rights and remedies of a copyright owner. In fact, the interpretation of the criminal statute urged by the Board is at odds with copyright law: Under the Board's interpretation, the statute is designed to keep exam questions in a lockbox, using the threat of prosecution to prevent dissemination to the public; copyright law, in contrast, is designed to supply "the economic incentive to create *and disseminate* ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985) (emphasis added).[4]

---

[4] The Board itself says the Copyright Act and the criminal statute serve different functions. Board's Br. 17 ("[The former's] focus is on the right of the copyright owner to control reproduction and distribution of protected works. On the other hand, the gravamen of the state criminal statute is protecting the integrity of the state's examination procedures.") (citation omitted).

Finally, the Board ventures outside its complaint (this is a Rule 12(b)(6) motion) by introducing exhibits purporting to show that other agencies have registered copyrights. But these other agencies are not before the Court. And it should suffice to say that they, too, may be exceeding their powers. But what is striking about the Board's evidentiary submission is this: despite the hundreds of administrative agencies and political subdivisions in the State and the *hundreds of thousands*, if not *millions*, of different works they have generated over the years, the Board is able to muster a relatively limited number of copyright registrations.[5]

In sum, the absence of explicit legislative authority is fatal to the copyright claim.

## II.    THE STATE LAW CLAIMS ARE PREEMPTED

Reading the Board's response on preemption, one would never know that "[t]he Fourth Circuit has given a broad interpretation to the scope of Copyright Act preemption," *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 186 F.Supp.2d 592, 594 (D. Md. 2002). The Board's response manages to avoid a discussion of the controlling preemption cases, including *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), while also failing to mention—and thus distorting—the Fourth Circuit's governing preemption standard: a state law claim can avoid preemption *only* if it contains an "extra element" <u>and</u> "the extra element changes the 'nature of the action so that it is *qualitatively* different from a copyright infringement claim.'" *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229-30 (4th Cir. 1993) (emphasis in original; quotation marks omitted); *see also Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir. 1993) ("To avoid preemption, a cause of action defined by state law must incorporate elements beyond those necessary to prove copyright infringement, <u>and must regulate conduct qualitatively different from the conduct governed by federal copyright law</u>.") (emphasis added).

---

[5] Of course, upon receiving a copyright application from an agency, the Copyright Office does not investigate whether the agency had legislative authority to seek such registration.

5

### A. Alleged False Designation Of Origin By Reverse Passing Off: Preempted

The Board's response confirms that when the Board says "passing off" it means *reverse passing off*. Defendants' opening brief explained that, insofar as the claim is based on false designation of origin by reverse passing off, it is preempted by § 301 of the Copyright Act and under *Dastar*. The Board offers no substantive response. In fact, the Board appears to abandon this claim. *See* part III.A, *infra*.

### B. Alleged Violation Of N.C.G.S. § 14-401.1: Preempted

Section 14-401.1 does not require proof of elements "beyond those necessary to prove copyright infringement," and it does not "regulate conduct qualitatively different from the conduct governed by federal copyright law." *Trandes*, 996 F.2d at 659 (4th Cir.); *Rosciszewski*, 1 F.3d at 230 (4th Cir.). The gravamen of the claim is *unauthorized copying and distribution*. When copying and distribution are excluded from the state law claim on preemption grounds, as they must be, the Board is left with no claim (it does not allege, for example, any harm flowing from an allegation of mere "receipt" of exam questions in the absence of copying/distribution). The Board cannot avoid preemption. Its arguments are contrary to logic and precedent.

First, the Board argues that Section 14-401.1 has an "extra element" not required for copyright infringement: "without authority." That is not an extra element; *all* infringement is unauthorized. *Lowry's Reports*, 186 F.Supp.2d at 594 ("the unauthorized reproduction and distribution of copyrighted work form the heartland of prohibited conduct under the Copyright Act"). Thus, the Fourth Circuit held that a claim under Virginia's Computer Crimes Act was preempted because "the second element of [the statute], requiring that use of the computer be 'without authority,' does not add a qualitatively different element." *Rosciszewski*, 1 F.3d at 230.

6

Second, the Board says a *trade secrets* misappropriation claim is not necessarily preempted. But cases rejecting preemption of trade secrets claims have found an extra element not present here—*breach of trust or confidential relationship*. *Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 574 (4th Cir. 1994); *Trandes*, 996 F.2d at 660 (4th Cir.). This is not a trade secrets case or analogous to one. Nor can the Board avoid preemption by using the label "misappropriation," a term nowhere mentioned in the complaint. *See Progressive Corp. v. Integon P&C Corp.*, 1991 WL 218010, *6 (4th Cir. 1991) ("[C]laims based on *misappropriation* protect the same rights as Congress sought to protect by the Copyright Act and are therefore preempted.") (emphasis added); *Patsy Aiken Designs, Inc. v. Baby Togs, Inc.*, 701 F. Supp. 108, 111 (E.D.N.C. 1988) (Howard, J.) ("Federal Courts have repeatedly held that state law claims for 'misappropriation' or 'unfair trade practices' . . . are preempted by the Copyright Act ....").[6]

Third, the Board says "theft" is not within the scope of the Copyright Act. But theft is not pleaded by the Board; the complaint does not allege Defendants *stole* exam questions, much less stole them *from the Board*. More importantly, theft is not a *required element* of the statute under which the Board is suing, and so it cannot serve as an "extra element" to avoid preemption. At any rate, characterizing the claim as "theft" is unavailing, because the *nature* of the claim is still unauthorized copying and distribution. *See Rosciszewski*, 1 F.3d at 230 (4th Cir.) (preempted: claim under Virginia Computer Crimes Act which required proof of unauthorized use of computer with the intent to "'[o]btain property or services by false pretenses; ... [e]mbezzle or commit larceny; or ... [c]onvert the property of another'") (alterations in original);

---

[6] *See also Alcatel USA, Inc. v. DGI Tech., Inc.*, 166 F.3d 772, 789 (5th Cir. 1999) (preempted: claim alleging misappropriation to reproduce, use, and distribute the works); *Norse v. Henry Holt & Co.*, 991 F.2d 563, 568 (9th Cir. 1993) (same); *Innovative Networks, Inc. v. Satellite Airlines Ticketing Cntrs., Inc.*, 871 F.Supp. 709, 730 & n.21 (S.D.N.Y. 1995) (preempted: claims based on misappropriation theory, "including claims for commercial morality").

7

*Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F.Supp.2d 436, 445-46 (M.D.N.C. 2005) (preempted: state law claim predicated on criminal theft statute, which imposes liability against one who "knowingly obtains or exercises control over anything of value of another without authorization ... and ... intends to deprive the other person permanently of the use or benefit of the thing of value"); *Crow v. Wainwright*, 720 F.2d 1224, 1225-26 (11th Cir. 1983) (holding § 301 preempted state's prosecution of defendant charged under statute for dealing in stolen property; the "stolen" property had not been physically taken from the owner; rather, defendant was selling unauthorized copies (bootleg tapes)), *cert. denied*, 469 U.S. 819 (1984).[7]

Fourth, the Board says its claim is based in part on unauthorized *use*. But Section 14-401.1 does not prohibit "use" as such. To the extent it prohibits "use," it prohibits use *by reproduction and distribution*. Thus, as for the Board's allegation that lecturers used essay questions in their lectures to students, it would not be covered by Section 14-401.1 *unless* the use were deemed to constitute *reproduction or distribution* — e.g., by Defendants *distributing* them to the lecturers, or by the lecturers *distributing* them to the student audience. *See Madison*, 351 F.Supp.2d at 444 (M.D.N.C.) ("[C]laim six is not saved because Madison permitted its employees to use the unauthorized ... copy. Madison's grant of access to its employees is nothing more than distribution, a right protected by the Copyright Act."). Moreover, an allegation that lecturers used works in public lectures to students is qualitatively no different

---

[7] The Board misstates Defendants' argument by contending they are arguing that preemption applies "merely because a claim involves copyrighted work and its misuse." Board's Br. 17. That is of course untrue. Having set up that strawman, the Board cites the inapposite case of *Rice v. Paladin*, 128 F.3d 233 (4th Cir. 1997), and invokes a misplaced hypothetical about prosecuting the stealing of books from bookstores. Suffice it to say that the hypothetical "bookstore theft" would involve theft of *tangible* property that has nothing to do with the unauthorized use or distribution of the creative expression contained therein. *Cf. U.S. ex rel Berge v. Bd. of Trustees of Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997) (conversion claim preempted because no "tangible objects embodying her intellectual property" were converted).

8

from a claim based an unauthorized "performance" or "display," and thus is preempted. 17 U.S.C. § 106 (exclusive right to perform or display literary work publicly); *id.* § 101 (to "perform" a work means to "recite" it; to "display" a work means "to show a copy of it").

The Board's "use" argument seems to presuppose that an infringement claim cannot be based on unauthorized use of copyrighted material. Not so. *Teleprompter Corp. v. CBS, Inc.*, 415 U.S. 394, 399 (1974) ("*unauthorized use* of copyrighted material inconsistent with the 'exclusive rights' [in § 106] constitutes copyright infringement") (emphasis added); *Tasini v. N.Y. Times Co.*, 206 F.3d 161, 171 (2d Cir. 2000) ("an infringement claim may be brought to remedy unauthorized uses of copyrighted material"), *aff'd*, 533 U.S. 483 (2001). "Use" is implicit in copying and distribution. Courts repeatedly have held that state law claims based on *use* of covered works are preempted. *See, e.g., Rosciszewski*, 1 F.3d at 230 (4th Cir.) ("That the first element of [the Virginia statute] requires *use* of a computer does not qualitatively change the nature of the claim from that of unauthorized copying because, in the context of [plaintiff's] claim, use of the computer is 'a necessary condition to [the] copying.' Further, the second element . . ., requiring that use of the computer be 'without authority,' does not add a qualitatively different element.") (citation omitted; emphasis added); *Berge*, 104 F.3d at 1464 (4th Cir.) ("where the gravamen of a conversion claim was the unauthorized taking or use of ideas, the elements of the claim were not qualitatively different from copyright infringement"); *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F.Supp.2d 533, 537-38 (E.D. Va. 2005) (preempted: state law claim based on unauthorized use).

Fifth, the Board says (p.18) Defendants engaged in conduct that had the "effect of 'covering their trail'" to "conceal" their conduct and that this was "deceptive." None of these terms appear in the complaint. More importantly, they are not required elements of an action

under Section 14-401.1, and therefore they cannot provide "extra elements" to defeat preemption. Even if they were elements of the statutory claim, it would not matter. Preemption cannot be avoided by alleging that the defendant tried to "conceal" its alleged infringement; otherwise, preemption would be so narrow as to be practically meaningless.

As for the assertion of "deception" in particular: deception is not an element of Section 14-401.1; and it is not even a required element of a Chapter 75 claim; therefore, its invocation will not defeat preemption. *Iconbazaar, L.L.C. v. Am. Online, Inc.*, 308 F.Supp.2d 630, 637 (M.D.N.C. 2004) ("While there may be extra elements of fraud or deceit in any given unfair trade practices claim, there are no additional elements *required* in order to state an unfair trade practices claim than there are required to state a copyright claim. Accordingly, the state law claim is preempted by federal copyright law.") (emphasis in original). Moreover, the "deception" alleged in the Board's response (deceptively failing to attribute creation to the Board) is really an allegation of false designation of origin by "reverse passing off," and thus is preempted. *Berge*, 104 F.3d at 1464 (4th Cir.) (claim for "lack of attribution" is "tantamount" to infringement claim); *Patsy Aiken*, 701 F.Supp. at 110-12 (Howard, J.); *Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.*, 243 F.Supp.2d 444, 450 (M.D.N.C. 2003) ("Calling the copying deceptive because Collezione did not give credit to Hillsdale for originating the design simply restates the underlying conduct, unauthorized copying, which gives rise to the claim. Furthermore, Hillsdale's assertion that the conduct was 'immoral, unethical, unscrupulous and substantially injurious to consumers' also fails to state an additional element to make the claim qualitatively different from a copyright infringement claim.").[8]

---

[8] For this same reason, the complaint's allegation that Defendants put a copyright notice on their publications containing essay questions does not alter the nature of the claim; it is tantamount to an allegation of false designation of origin. *See, e.g., Faulkner v. Nat'l Geographic Soc'y*, 211

10

Finally, the Board relies on three district court cases involving California law (one of which did not discuss preemption). Board's Br. 18. The Board contends these cases involved "analogous statutes." *Id.* Whether or not that is true is beside the point. Those California cases applied a soft preemption analysis that simply cannot be squared with the approach taken by the Fourth Circuit, *see, e.g., Rosciszewski*, 1 F.3d at 229-30, or with the federal district court decisions finding Chapter 75 claims to be preempted. The California cases, like the Board's argument, bring to mind the Fourth Circuit's warning that "if the language of the [Copyright] act could be so easily circumvented, the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced." *Berge*, 104 F.3d at 1464.

## III.  THE BOARD FAILS TO STATE A VALID CHAPTER 75 CLAIM

### A.  No Standing Or Actual Injury

The Board has brought a private Chapter 75 claim under N.C.G.S. § 75-16. As the plaintiff, it has the burden of proving each element of that claim. This includes the elements of "in or affecting commerce" and "actual injury." The Board argues that it does not matter whether it was injured in commerce. The Board utterly misunderstands Chapter 75. It is not an all-purpose tort or regulatory statute. Born as a consumer protection statute to protect consumers injured in commerce, the statute has been interpreted to include businesses engaged in commerce, and in one instance to include the State suing as an injured consumer (i.e., as a market participant), but has never been applied when the plaintiff was not engaged in commerce. As the Fourth Circuit explained:

---

F.Supp.2d 450, 478 (S.D.N.Y. 2002) ("Plaintiffs' common law unfair competition claim is preempted because it alleges nothing other than false designation of origin through improper use of copyright notice."), *aff'd in part, rev'd in part*, 409 F.3d 26 (2d Cir. 2005); *cf. Montgomery v. Noga*, 168 F.3d 1282, 1300 n.27 (11th Cir. 1999) ("in false designation of origin claims of the 'reverse passing off' variety, the defendant often has merely removed the plaintiff's mark from a product, added its own mark, and sold the product without altering it in any other way").

11

> Although the UTPA's language is quite broad, the Act is not intended to apply to all wrongs in a business setting. The Act's primary purpose is to protect the consuming public. It gives a private cause of action to consumers aggrieved by unfair or deceptive business practices. In addition, businesses are sometimes allowed to assert UTPA claims against other businesses because unfair trade practices involving only businesses can affect the consumer as well. But one business is permitted to assert an UTPA claim against another business *only when the businesses are competitors (or potential competitors) or are engaged in commercial dealings with each other*. In any event, the fundamental purpose of the UTPA is to protect the consumer, and courts invariably look to that purpose in deciding whether the Act applies.

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 519-20 (4th Cir. 1999) (emphasis added; citations and quotation marks omitted). The notion that one who was not engaged in commerce as a consumer or business may bring a civil damages action under Chapter 75 finds no support in the case law. The Board cites a single case, *Governors Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C.App. 240, 567 S.E.2d 781 (2002), but it involved non-profit *corporation* engaged in commerce; the corporation alleged it was injured in the course of a commercial transaction involving the purchase and development of real estate for a golf course.[9]

At any rate, the foregoing dispute about commerce is largely academic, because there is no dispute that *actual injury* is an essential element of a private civil action under Chapter 75, and the Board's complaint pleads no facts establishing that it sustained an *actual injury* as a result of an alleged violation of N.C.G.S. § 14-401.1 or any other conduct. Therefore, the claim

---

[9] Again going outside the complaint, the Board argues that it may charge a fee, not to exceed $20, to an applicant who has failed the bar exam and wishes to see "a copy of the applicant's essay examination." Board's Br. n.7. But the complaint does not allege that Defendants compete with the Board in providing unsuccessful applicants their actual exams to determine why they failed; rather, the complaint alleges Defendants provide a bar review course to prepare applicants for future exams. The complaint does not allege the Board's function of providing unsuccessful applicants their actual exam answers and questions has been harmed by conduct alleged in the complaint. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-69 (2007) (to survive a Rule 12(b)(6) motion, a complaint must plead adequate factual allegations, and those "factual allegations must be enough to raise a right to relief above the speculative level").

must be dismissed. *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) (plaintiff must "set forth facts sufficient to allege each element of his claim"); *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-69 (2007) (Rule 12(b)(6) standard clarified).

If that were not enough, the Board has no authority to bring a Chapter 75 on its own behalf through private counsel. The Board cannot be permitted to proceed with an *ultra vires* lawsuit (represented by outside counsel who, as Board members, are fact witnesses who would be subject to disqualification if this case is not dismissed). The Board suggests, in a footnote (n.13), that the Attorney General's Office has authorized the Board to file suit. That assertion is not pleaded in the Complaint, and Defendants' counsel has reason to believe it is incorrect and that the Attorney General's Office was not asked to approve of the claims filed by this Board in this action.

Finally, the Board has no answer for the point that a Chapter 75 regulatory action *must* be brought by the Attorney General on behalf of the State; there is no other way to read Chapter 75.

B.   **The Criminal Tampering Statute**

The Board cites no authority for the proposition that a criminal statute not aimed at protecting consumers or others engaged in commerce could form a predicate act that is actionable in a civil damages action under Chapter 75.

And, separately, the Board cites no case law interpreting the criminal tampering statute as expansively as the Board urges here, to include *already-used* essay questions which were not re-used, and thus which were not used for *cheating*. The Board cites a dictionary for the proposition that tampering means "interference," but the complaint does not allege that Defendants interfered with any bar examination. Interference with an examination could occur if an applicant, before he sat for a bar exam, received a copy of the actual exam questions on which

he would be tested; that would distort his score and thereby interfere with the Board's assessment of his fitness to practice law, thus corrupting the process. But the complaint does not plead such facts. It does not plead that access to already-used questions has facilitated cheating. The Board could not plead such facts, because the complaint acknowledges that the Board itself makes already-used exam questions available to applicants; if the availability of already-used exams interfered with bar exams, the Board would not make them available to applicants. The complaint does not even allege that the previously-used exam questions were re-used.

### C. False Designation Of Origin By "Reverse Passing Off"

The Board appears to abandon this aspect of its claim by *acknowledging* it has not pleaded and is unaware of any facts supporting consumer confusion (Board's Br. 14-15, subpart 3), which is an essential element of such a claim.

The Board uses the phrase "false marking" and refers to the complaint's allegation that BAR/BRI copyrighted its books which incorporate essay questions. While the Board obfuscates this point somewhat, it bears emphasizing that this "false marking" allegation is part and parcel of the Board's allegation of false designation of origin by "reverse passing off." It is simply a claim that Defendants identified themselves as the source of the publications without attributing creation or ownership to the Board for essay questions allegedly incorporated as component parts of the publications. *See* note 8, *supra*. As explained in the opening brief, such a claim is foreclosed by *Dastar*'s reasoning. In *Dastar* the defendant copied the original television series which plaintiff created, made slight changes, used it to produce its own videotape series, and marketed the series as its own product without acknowledging its nearly wholesale reliance on plaintiff's work. The Supreme Court held that the defendant was the "origin" of the videotapes, and therefore there was no actionable claim based on false designation of origin ("reverse

passing off"). *Dastar*, 539 U.S. at 38. Likewise here: Defendants are the "origin" of the books bearing their copyright notices, irrespective of whether those books contain as a component part any essay questions created by the Board. The Board's response fails to address *Dastar*.

This the 31st day of October, 2007.

/s/ John F. Morrow, Jr.
John F. Morrow, Jr. (NCSB No. 23382)
WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*
One West Fourth St.
Winston-Salem, NC 27101
Telephone Number: 336-7212-3584
Facsimile Number: 336-733-8429
jmorrow@wcsr.com

/s/ Sean E. Andrussier
Sean E. Andrussier (NCSB No. 25790)
/s/ Hampton Dellinger
Hampton Dellinger (NCSB No. 19903)
WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*
Post Office Box 831
Raleigh, NC 27601
Telephone Number: 919-755-2100
Facsimile Number: 919-755-2150
sandrussier@wcsr.com
hdellinger@wcsr.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS** was filed electronically with the Clerk of Court using CM/ECF system with notice of case activity to be generated and sent electronically by the Clerk of Court to the following parties registered to receive such service:

This the 31st day of October, 2007.

    James R. Van Camp
    VAN CAMP, MEACHAM & NEWMAN, PLLC
    2 Regional Circle
    Post Office Box 1389
    Pinehurst, NC 28374
    jamesv@vancamplaw.com

    Susan Freya Olive
    OLIVE & OLIVE, P.A.
    500 Memorial Street
    Post Office Box 2049
    Durham, NC 27702-2049
    EmailboxEDNC@oliveandolive.com


    By: /s/ Sean E. Andrussier
    Sean E. Andrussier
    WOMBLE CARLYLE SANDRIDGE & RICE
    *A Professional Limited Liability Company*
    Post Office Box 831
    Raleigh, NC  27601
    Telephone Number: 919-755-2100
    Facsimile Number: 919-755-2150
    sandrussier@wcsr.com

WCSR 3758533v2