# ATTACHMENT

*Progressive Corp. v. Integon P & C Corp.,*
1991 WL 218010 (4th Cir. 1991) (unpublished)

Dockets.Justia.com

Westlaw.

947 F.2d 942                                                                                                              Page 1

947 F.2d 942, 1991 WL 218010 (C.A.4 (Va.)), 1991 Copr.L.Dec. P 26,812, 20 U.S.P.Q.2d 1682
**(Cite as: 947 F.2d 942, 947 F.2d 942 (Table))**

▷
Progressive Corp. v. Integon P & C Corp.
C.A.4 (Va.),1991.
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a " Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Fourth Circuit.
The PROGRESSIVE CORPORATION;
Progressive Casualty Insurance Corporation;
Progressive Specialty Insurance Company,
Plaintiffs-Appellants,
v.
INTEGON P & C CORPORATION; New South Insurance Company, Defendants-Appellees.
No. 90-2230.

Argued May 8, 1991.
Decided Oct. 29, 1991.
As Amended Dec. 9, 1991.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Court Judge. (CA-90-488-A)

Louis A. Colombo, Baker & Hostetler, Cleveland, Ohio, for appellants.
Mark Nixon Poovey, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C., for appellee. On Brief: Deborah A. Schaff, Baker & Hostetler, Cleveland, Ohio, for appellants.
Jeffrey R. McFadden, Womble, Carlyle, Sandridge & Rice, Winston-Salem, North Carolina, for appellees.
E.D.Va.

AFFIRMED.

Before WIDENER and MURNAGHAN, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Court Judge for the District of Maryland, Sitting by Designation.

OPINION
PER CURIAM:
*1 The Progressive Corporation ("Progressive") appeals the district court's dismissal of its state law counts and its entry of summary judgment in favor of Integon P & C Corporation ("Integon") on Progressive's copyright infringement and Lanham Act claims. Finding that Progressive's work is not copyrightable, we affirm.

I

The Progressive Corporation, through its subsidiaries, Progressive Casualty Insurance Company and its subsidiary, Progressive Specialty Insurance Company, ("Progressive") is an underwriter of high risk automobile insurance in Virginia through 900 independent agents. Progressive developed a "relative damageability" index for individual vehicle makes and models, and used this information to make an independent determination of the relative damage any particular make and model of vehicle is likely to incur in an accident. Progressive also developed a unique way of refining subclassifications of risk characteristics, consisting of variables including age, sex, marital status, vehicle type, vehicle age, geographic description of garaging location and driving record. Based on its analysis and research, Progressive weights the variables in relation to one another to determine a rate figure most appropriate for any particular customer.

Progressive first introduced manuals incorporating its methodology in 1957. In 1977, Progressive distributed Progressive Casualty Manuals addressing high risk drivers and vehicles.

Effective February 4, 1988, Progressive's Virginia specialty insurance company, Progressive Casualty,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

947 F.2d 942                                                                                                                           Page 2
947 F.2d 942, 1991 WL 218010 (C.A.4 (Va.)), 1991 Copr.L.Dec. P 26,812, 20 U.S.P.Q.2d 1682
**(Cite as: 947 F.2d 942, 947 F.2d 942 (Table))**

published its 1988 rate manual entitled "Virginia Non-Standard Automobile Program" describing which risks Progressive would accept and at what price. The 1988 Casualty Manual, like all of Progressive's previous manuals, was published without a copyright notice and distributed to hundreds of independent insurance agents throughout Virginia.

Effective January 9, 1989, Progressive Casualty introduced an update of the 1988 Casualty Manual (the "1989 Progressive Casualty Manual" or the " 1989 Casualty Manual"). The 1989 Casualty Manual described the same method for determining which insurance risks to accept and at what price, as that contained in the 1988 Casualty Manual. The 1989 Casualty Manual was also published.

In September 1989, Progressive instituted a new program featuring lower "auto-saver" rates. This Progressive Specialty program was a "clone" of its previous insurance product, the 1989 Casualty program. The only substantive difference was that the Specialty program featured approximately 10% lower rates to consumers and 10% sales commissions to agents, compared to Casualty's 15% sales commissions.

The rates for the new Specialty insurance were set forth in the "1989 Specialty Manual." Progressive placed a copyright notice on the back cover of the Speciality Manual. Prior to the publication of the 1989 Specialty Manual, Progressive filed substantial portions of that Manual, without a copyright notice, with the Virginia Bureau of Insurance, as required by Va.Code 38.2-1900 -.2-1928 (1985 & Supp.1990).

*2 Integon P & C Corporation ("Integon") is the parent corporation of New South Insurance Company, an underwriter of high risk automobile insurance sold in Virginia through its network of approximately 470 independent insurance agents.
In 1989, Integon resolved to compete with Progressive by utilizing Progressive's pricing method, but sold its insurance to consumers at prices that were approximately 10% lower than Progressive Casualty's and paid a commission of 15% to its independent agents.

In September 1989, Rick Pierce, an Integon Marketing Representative, obtained an uncopyrighted copy of Progressive's rating formula from Progressive's filing at the Virginia Bureau of Insurance. The formula was the key and Pierce was then able to closely approximate Progressive's method for calculating rates. By October 1989, Integon was successful in its efforts to approximate Progressive's method.

The rates for Integon's non-standard automobile insurance program introduced in Virginia on January 1, 1990 were set forth in a manual entitled " New South Insurance Company Virginia Specialty Auto Program" (the "First Integon Specialty Manual "). Integon admittedly utilized and, in some portions, directly copied the 1989 Progressive Specialty Manual, in developing the First Integon Specialty Manual. Integon mailed the First Integon Specialty Manual to independent agents in Virginia who sold Integon insurance.

Integon first learned that Progressive claimed a copyright in the 1989 Progressive Specialty Manual when it received a letter dated March 13, 1990, from Progressive's counsel notifying Integon that the 1989 Progressive Specialty Manual was copyrighted.[FN1] After receiving notice of the copyright, Integon, without admitting any legal accountability, voluntarily revised the First Integon Specialty Manual by changing the wording, order, structure and format to make it as different as possible from the 1989 Progressive Specialty Manual. Integon changed the language and the form, but not the rates or the pricing method upon which the rates were based, all of which were described in the manual. The Current Integon Specialty Manual became effective April 23, 1990 and since that time, the First Integon Specialty Manual has not been used by Integon or its agents.

Progressive filed a five count complaint on April 11, 1990, asserting claims against Integon for copyright infringement (Count I), violation of section 43(a) of the Lanham Act (Count II), Virginia common law unfair competition (Count III), false advertising under Va.Code section 18,2-216 (Count IV), and tortious interference with present and prospective business relations (Count

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

947 F.2d 942    Page 3

947 F.2d 942, 1991 WL 218010 (C.A.4 (Va.)), 1991 Copr.L.Dec. P 26,812, 20 U.S.P.Q.2d 1682
**(Cite as: 947 F.2d 942, 947 F.2d 942 (Table))**

V). The parties' agreed that there were no issues of material fact in dispute and each moved for summary judgment under an agreement with the district court that its ruling would resolve this case at the trial level.

By Order date June 18, 1990, the district court dismissed Progressive's state law claims and on October 23, 1990, granted Integon summary judgment on Progressive's copyright infringement and Lanham Act claims (Counts I and II). Progressive appeals the court's Order granting Integon's motion to dismiss the state law claims and the Order granting summary judgment to Integon on the copyright infringement and Lanham Act claims.

II

*3 Progressive disputes the court's finding that the materials were published when they were filed pursuant to a statutory requirement. It argues that filing materials pursuant to a statutory requirement, even if those materials do not bear a copyright notice, does not affect the copyrightability of those materials, since the copyright notice is not required on such materials because their filing does not constitute a "publication" within the meaning of the Copyright Act. *WPOW, Inc. v. MRLJ Enterprises,* 584 F.Supp. 132, 136 (D.D.C.1984); *East/West Venture v. Wurmfeld Assoc., P.C.,* 722 F.Supp. 1064, 1066 (S.D.N.Y.1989).

Insurers conducting business in Virginia are required as a condition of doing business to file with the Bureau of Insurance certain "rate and supplementary rate" information. Va.Code § 38.2-1906. That information becomes public upon filing. Va.Code § 38.2-1907 ("Each filing and all supplementary rate information filed under this chapter shall be open to public inspection. Copies may be obtained by any person on request and upon payment of the reasonable charge for the copies.").

It is undisputed that the 1989 Casualty Filing did not contain any copyright notice. Pursuant to the above cited provisions of the Virginia Code, Progressive filed substantial portions of the 1989 Casualty Manual with the Bureau of Insurance.

Therefore, once filed, such materials become a matter of public record and are subject to inspection and unlimited copying by the public at large. *See DeSilva Constr. Corp. v. Herrald,* 213 F.Supp. 184, 194 (M.D.Fla.1962) ("the filing of architectural plans in a public office, even though it is required by statute or ordinance, is tantamount to publication of said plans and amounts to a dedication to the public"). In *DeSilva,* the court stated

[i]n a statutory copyright case, the proprietor of the set of the copyrighted plans can protect himself by inserting the required copyright notice on the plans prior to filing said set of plans with the building department. It is no hardship to require architects to comply with the notice requirements of the copyright statute, and there is no excuse for the failure to have a copyright notice on said plans.

*Id.*

Contrary to Progressive's argument, publication occurs when the public obtains a possessory right in copies of the work and the unlimited copying permitted by the Virginia Code. 1*Nimmer* § 4.07 at 439-40 ("no publication should be held to occur unless the public obtain a possessory right in tangible copies of the work"). The Virginia Code gives to the public, including competitors, the right to obtain possession of tangible copies of materials filed with the Virginia Bureau of Insurance.

The cases cited by Progressive are inapposite. The court in *East/West* relied upon *WPOW*. However, in *WPOW,* the copyright infringement was premised on the court's finding that the Federal Communications Commission ("FCC") had expressly disapproved copying of the engineering reports by the plaintiff. 584 F.Supp. at 137 ("the FCC itself has expressed its disapproval of unauthorized and uncompensated appropriation of another engineer's work product"). In contrast, the Virginia legislature has expressly authorized the copying of Bureau of Insurance filings in order to promote competition in the insurance industry. Va.Code § 38.2-1900(B).

*4 Furthermore, the 1989 Progressive Specialty Manual is a duplicate of the 1988 Casualty Manual,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

947 F.2d 942 Page 4

947 F.2d 942, 1991 WL 218010 (C.A.4 (Va.)), 1991 Copr.L.Dec. P 26,812, 20 U.S.P.Q.2d 1682
**(Cite as: 947 F.2d 942, 947 F.2d 942 (Table))**

consisting almost entirely of the same information as that in the 1988 Casualty Manual. It is undisputed that the 1988 Casualty Manual was published in 1988 without a copyright notice and distributed to hundreds of independent insurance agents.

Progressive disputes the court's conclusion that the 1989 Specialty Manual contained only "trivial amounts of new material" and argues that it is a "derivative work." FN2

It is a "well-established doctrine that a derivative copyright protects only the new material contained in the derivative work, not the matter derived from the underlying work." *Russell v. Price,* 612 F.2d 1123, 1128 (9th Cir.1979), *cert. denied,* 446 U.S. 952 (1980). Moreover, the new material in derivative work must be sufficiently nontrivial to warrant copyright protection, i.e., it "must contain some substantial, and not merely trivial, originality." *Sherry Mfg. Co., Inc. v. Towel King of Florida, Inc.,* 753 F.2d 1565, 1568 (11th Cir.1985).

In the proceedings below, Progressive conceded that the Progressive Specialty program was a "clone" of the 1989 Casualty program, stating the only substantive difference was that the Specialty program highlighted lower rates to consumers and higher sales commissions to agents. It also admitted that the 1989 Casualty Manual described the same method for determining which insurance risks to accept and at what price, as that contained in the 1988 Casualty Manual. A review of the 1989 Specialty Manual, taken as a whole, indicates that the district court correctly concluded that only trivial portions of the Specialty program were not published in the 1988 Casualty Manual.

Progressive suggests that new sections in the 1989 Specialty Manual entitled "Time Restraints" and "Call for Quote/Binding" are new expressions of the old 1988 Casualty Manual. In determining whether the new and original material is "substantial, and not merely trivial" and "more than a minimal contribution," "the work must be reviewed a whole, not just reviewed or analyzed part by part." *See* 1 Nimmer § 3.03 at 3-10 (footnote omitted) ("in order to qualify for a separate copyright as a derivative or collective work the additional matter injected in a prior work or the manner of rearranging or otherwise transforming a prior work must constitute more than a minimal contribution").

Accordingly, the district court correctly found that the filed materials were in the public domain and were not copyrightable.

III

Progressive maintains the district court's decision that "the requested copyright protection could not be granted because to do so would interfere with Virginia's regulation of insurance and therefore violate the McCarran-Ferguson Insurance Regulation Act [citation omitted] [hereinafter 'the Act']" is contrary to the dictates of the Act. The McCarran-Ferguson Act applies only if Integon's commercial copying was related to the "business of insurance" and Progressive maintains that the copying of the Progressive Specialty Manual does not fall within the "business of insurance."

*5 Section 1012 of the McCarran-Ferguson Act provides:

(A) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(B) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance ...

15 U.S.C. § 1012(A) & (B). Thus, the Act clearly yields the regulation of the business of insurance to the state of Virginia. However, Progressive argues that the Act should be read in conjunction with the Copyright Act which "govern[s] exclusively" all rights "that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(b)(3). Thus, Progressive argues that the Copyright Act voids the McCarran-Ferguson

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

947 F.2d 942                                                                                                                                      Page 5
947 F.2d 942, 1991 WL 218010 (C.A.4 (Va.)), 1991 Copr.L.Dec. P 26,812, 20 U.S.P.Q.2d 1682
**(Cite as: 947 F.2d 942, 947 F.2d 942 (Table))**

Act.

Section (d) specifically provides that the Copyright Act does not supersede the McCarran-Ferguson Act. It states:

Nothing in this title annuls or limits any rights or remedies under any other Federal statute.

17 U.S.C. § 301(d). Thus, although the intention of § 301 is to preempt any rights under the statute of a State that are equivalent to copyright and that extend to works that fall within the scope of the Federal Copyright law, it does not supersede the McCarran-Ferguson Act, a federal statute which applies directly to the issue *sub judice*-the regulation of insurance.

The McCarran-Ferguson Act empowers Virginia to enact a statute requiring the filing of insurance programs with the Commission and expressly permitting unlimited copying of material, pursuant to provision (A). Furthermore, as required under (B), the Copyright Act must relate specifically to the business of insurance. It does not. Thus, Virginia's statute controls Virginia's insurance business, as directed by the Act.

Progressive misconstrues subsection (B). The Act specifies that *legislation* which "relates to the business of insurance" supersedes state laws. The Act does not contemplate a particular use, i.e., Integon's commercial copying, as being the determinant in delineating whether or not the Act applies. Consequently, insurance rate information is governed by Virginia Code § 38.2-1900-.2-1928, permitting copying "by any person on request and upon payment of a reasonable charge...." Va.Code § 38.2-1907.

IV

The district court correctly dismissed Progressive's unfair competition and tortious interference claims on the basis of the Copyright Act preemption.

The Copyright Act provides for federal preemption of "equivalent" state law claims:

[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103....

*6 17 U.S.C. § 301(a). To avoid preemption by the Copyright Act, the state law claim must have an " 'extra element' ... which changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *Mayer v. Josiah Wedgewood and Sons Ltd,* 601 F.Supp. 1523, 1535 (S.D.N.Y.1985) (emphasis in original).

Courts have consistently held that state unfair competition claims based on misappropriation protect the same rights as Congress sought to protect by the Copyright Act and are therefore preempted. In *Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973 (9th Cir.1987), the plaintiff alleged that the developers misappropriated its time and effort, and used a copyrighted map to develop property previously owned by plaintiff. The court rejected the plaintiff's argument that its unfair competition claim contained an "extra element" which was a breach of fiduciary duty induced by the defendants. *Id.* at 977. See also *Walker v. Time Life Films, Inc.* 784 F.2d 44, 53 (2d Cir.), *cert. denied,* 476 U.S. 1159 (1986). *Ehat v. Tanner,* 780 F.2d 876, 877 (10th Cir.1985), *cert. denied,* 479 U.S. 820 (1986).

Here, the misappropriation claim is part and parcel of the copyright claim and is preempted.

Progressive argues the district court incorrectly dismissed its tortious interference claim because it adequately alleged the four elements of intentional interference with business relationships. *See La Rouche v. Nat'l Broadcasting Co.,* 780 F.2d 1134, 1138 (4th Cir.), *cert. denied,* 479 U.S. 818 (1986) ((1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

947 F.2d 942 Page 6

947 F.2d 942, 1991 WL 218010 (C.A.4 (Va.)), 1991 Copr.L.Dec. P 26,812, 20 U.S.P.Q.2d 1682
**(Cite as: 947 F.2d 942, 947 F.2d 942 (Table))**

damage to plaintiff). Nevertheless, case law supports dismissal of the tortious interference claim on preemption grounds. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds,* 471 U.S. 539 (1985) ("the fact that cross-appellants pleaded additional elements of awareness and intentional interference, not a part of the copyright claim, goes merely to the scope of that right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated"); *Pacific & Southern Co., Inc. v. Satellite Broadcast Networks, Inc.,* 694 F.Supp. 1565, 1573 (N.D.Ga.1988) (tortious interference with contractual relations claim preempted by Copyright Act).

Progressive's argument that it alleged tortious interference with business relationships, and not tortious interference with contracts terminable at will, is meritless. Although the elements of the two torts differ, the nature of them does not. *See Motown Record Corp. v. George A. Hormel & Co.,* 657 F.Supp. 1236, 1240 (C.D.Cal.1987) (claim for tortious interference with prospective business advantage, as compared to interference with contractual relations, preempted by Copyright Act).

*7 Accordingly, tortious interference with business relations is preempted by federal law.

V

Contrary to Progressive's contention, injunctive relief and damages are both unobtainable in this case.

In intellectual property and unfair competition cases, "[w]hen a defendant has ceased its infringing conduct and shows no inclination to repeat the offense, a court may not issue an injunction ..." *Reader's Digest Ass'n, Inc. v. Conservative Digest Inc.,* 821 F.2d 800, 807 (D.C.Cir.1987), citing *Schutt Mfg. v. Riddell, Inc.,* 673 F.2d 202, 207 (7th Cir.1982) ("because [defendant] clearly did not threaten to persist in or resume the allegedly infringing or unfair conduct, equitable relief would be inappropriate"). For an injunction to be proper, there must be a cognizable danger of recurrence of the violation. *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953).

Integon clearly did not persist in copying the 1989 Specialty Manual. It was unaware of the Specialty Manual copyright notice and, as soon as it was informed, promptly and voluntarily revised its manual.

Statutory damages are provided under the Copyright Act only if the copyright was registered within three months of the work's original publication. 17 U.S.C. § 412(2). Since Progressive's application for registration was filed seven months after its publication, Progressive would be entitled to actual damages only. 17 U.S.C. §§ 504(a)(1) & (b).

Progressive alleged a twenty percent decrease in new business, which it contends is a result of Integon's copying. The evidence shows, however, that Progressive's loss of business was a result of Integon's lower rates to customers and higher commission rates to its agents.

Accordingly, this case is

*AFFIRMED.*

>   FN1. Integon was unaware of the copyright notice on the back cover of the 1989 Specialty Manual, nor had it looked for such a notice because it was not customary for an insurance company to attempt to copyright its rate manual.
>
>   FN2. A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

947 F.2d 942 Page 7

947 F.2d 942, 1991 WL 218010 (C.A.4 (Va.)), 1991 Copr.L.Dec. P 26,812, 20 U.S.P.Q.2d 1682
**(Cite as: 947 F.2d 942, 947 F.2d 942 (Table))**

    modifications which, as a whole, represent an original work of authorship, is a " derivative work."
    17 U.S.C. § 101.

C.A.4 (Va.),1991.
Progressive Corp. v. Integon P & C Corp.
947 F.2d 942, 1991 WL 218010 (C.A.4 (Va.)), 1991 Copr.L.Dec. P 26,812, 20 U.S.P.Q.2d 1682

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.